**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

UNITED STATES OF AMERICA,

        Plaintiff,

    v.

RICHARD ZEITLIN,

        Defendant.

23-cr-419 (LAK)

---

**DEFENDANT'S MEMORANDUM IN SUPPORT OF HIS MOTION FOR AN**
**ORDER PROHIBITING DISCLOSURE OF THE DEFENSE PRIVILEGE LIST**
**AND REQUIRING DISCLOSURE OF FILTER TEAM PROTOCOLS**

Through undersigned counsel, Defendant Richard Zeitlin hereby submits the following memorandum in support of his motion. As discussed below, Mr. Zeitlin respectfully requests this Court prohibit the government's filter team from disclosing the defense privilege list to the prosecution team. Moreover, Mr. Zeitlin respectfully requests this Court require the government to disclose additional information about the filter team's composition and protocols.

**BACKGROUND**

1.      Pursuant to a warrant, Mr. Zeitlin understands agents of the government intend to search twenty-nine electronic devices seized in Las Vegas on or about August 17, 2023. At the outset, the government intends to employ a filter team to review the material for potentially privileged communications.

2.      In this regard, on September 28, 2023, an AUSA on the prosecution team ("the prosecution team AUSA") emailed and asked if the undersigned would like to provide a list with

the names and emails of Mr. Zeitlin's attorneys for purposes of segregating potentially privileged material.

3.      Additional correspondence ensued. Among other things, the prosecution team AUSA informed the undersigned that the filter team would consist of attorneys and agents not on the investigative team, who would segregate potentially privileged material, release unsegregated material to the investigative team, and then "typically communicate" with the defense team about potentially privileged material. The prosecution team AUSA also identified one specific member of the filter team, *i.e.*, the AUSA who serves as the District's Privilege Review and eLit Coordinator ("the privilege review AUSA").

4.      On October 5, 2023, by email, the undersigned sent a letter and privilege list to the privilege review AUSA. The list included lawyers and others having privileged, confidential, or otherwise protected communications with Mr. Zeitlin. In his email, the undersigned communicated his understanding that this information should not be provided to any of the prosecutors or investigators on the "investigative/indictment" team.

5.      In subsequent communications, the undersigned learned the prosecution team intended to review the privilege list. Cordial discussions ensued. The undersigned repeatedly asserted that the privilege list should not be disclosed to the prosecution team, while the prosecution team AUSA disagreed.

6.      In a letter emailed to the prosecution team AUSA on October 31, 2023, the undersigned (among other things) formally reiterated his position that the privilege list should not be disclosed to the prosecution team. Also, consistent with a prior communication, the undersigned reiterated that the filter team should not provide a detailed "privilege log" to the prosecution team.

7.    In a letter emailed to the privilege review AUSA on October 31, 2023, the undersigned formally requested specific information about the filter team's composition and protocols.

8.    The prosecution team AUSA responded in a letter email on November 3, 2023. In her letter, the prosecution team AUSA reiterated her intent for the prosecution team to review the privilege list. The prosecution team AUSA also provided some general information about the use of filter teams in this District, reiterating that the privilege review AUSA is a member of the filter team in this case, but without providing additional specific details.

9.    On November 9, 2023, this Court granted Mr. Zeitlin's request for a briefing schedule to address the unresolved issues related to the privilege list and the government's contemplated filter process.

## ARGUMENT

### I.    This Court should Prohibit the Government's Filter Team from Disclosing Mr. Zeitlin's Privilege List to the Prosecution Team.

#### a.    Applicable Law

"The attorney–client privilege is the oldest of the privileges for confidential communications known to the common law. Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) (citation omitted). In criminal cases, although the privilege "has not been elevated to the level of a constitutional right, [it] is key to the constitutional guarantees of the right to effective assistance of counsel and a fair trial." *United States v. Neill*, 952 F. Supp. 834, 839 (D.D.C. 1997) (citation omitted); *accord United States v. Ginsberg*, 758 F.2d 823, 833 (2d Cir. 1985) ("Unquestionably, government interference in the relationship between attorney and defendant

may violate the latter's right to effective assistance of counsel."). Even before the commencement of a criminal proceeding, "the right to a fair trial could be crippled by government interference with the attorney-client privilege." *Neill*, 952 F. Supp. at 839

Unlike the subpoena context, where recipients may claim privilege and decline to produce material in their possession (at least initially), the landscape is different when the government acts under a search warrant. Depending on the circumstances, *e.g.*, whether the investigation is overt or covert, privilege holders may not even realize the government has seized their potentially protected material. Hence the need for independent filter processes, which promise to safeguard privilege holders' rights while permitting government investigations to proceed. Such processes typically involve initial review by an independent filter entity to segregate potentially privileged material from the overall cache of material to be reviewed under the warrant. In overt cases, privilege holders may then have an opportunity to assert and litigate privilege claims. Ultimately, an independent entity will make privilege determinations and release unprivileged material to the investigators.

Independent filter processes generally fall into three categories. The two "more traditional alternatives" utilize "*in camera* review by a neutral and detached magistrate or by court-appointed special masters." *Neill*, 952 F. Supp. at 841. The third alternative utilizes review by a government filter team.

As a general matter, courts have expressed differing views of government filter teams, with some views decidedly negative. *E.g.*, *In re Grand Jury Subpoenas*, 454 F.3d 511, 523 (6th Cir. 2006) ("[T]aint teams present inevitable, and reasonably foreseeable, risks to privilege, for they have been implicated in the past in leaks of confidential information to prosecutors."); *Neill*, 952 F. Supp. at 841 ("Where the government chooses to [utilize a filter team] . . . it bears the burden

to rebut the presumption that tainted material was provided to the prosecution team."); *In re Search Warrant for L. Offs. Executed on Mar. 19, 1992*, 153 F.R.D. 55, 59 (S.D.N.Y. 1994) ("It is a great leap of faith to expect that members of the general public would believe any such . . . wall would be impenetrable . . . ."). Indeed, at least in some circumstances, the Fourth Circuit has held a judge or special master must perform a privilege review, not a taint team of the executive branch. *In re Search Warrant Issued June 13, 2019*, 942 F.3d 159, 181 (4th Cir. 2019), *as amended* (Oct. 31, 2019).

In this District, courts have approved the use of filter teams for privilege reviews, but they also "have exercised their discretion to appoint a special master in situations in which it is necessary to ensure 'the perception of fairness.'" *In re Search Warrant dated Nov. 5, 2021*, No. 21 MISC. 813 (AT), 2021 WL 5845146, at *1 (S.D.N.Y. Dec. 8, 2021). "[I]t is important that the procedure adopted . . . not only be fair but also appear to be fair. The appearance of fairness helps to protect the public's confidence in the administration of justice and the willingness of clients to consult with their attorneys." *United States v. Stewart*, No. 02 CR. 395 JGK, 2002 WL 1300059, at *8 (S.D.N.Y. June 11, 2002). *See also Neill*, 952 F. Supp. at 841 ("[T]here is no doubt that, at the very least, the 'taint team' procedures create an appearance of unfairness."); *In re Search Warrant for L. Offs.*, 153 F.R.D. at 59 ("The appearance of Justice must be served, as well as the interests of Justice.").

In other words, although a government filter team *may* be an acceptable alternative to privilege review by a court or special master, its process should offer commensurate guarantees of actual and perceived neutrality and independence. Otherwise "the perception of fairness" would be compromised, if not fairness itself.

At the outset of the filter process in overt cases (as here), the defendant may supply a list of attorneys and others with whom the defendant may have had privileged, confidential, or otherwise protected communications. Unlike a subpoena recipient who withholds material, a defendant who provides such a list is not yet asserting any claim of privilege. Rather, a defendant's object in providing a privilege list – and presumably the government's object when requesting one – is to aid the filter entity in casting as wide a net as reasonably possible, preserving potential future privilege claims and minimizing the risk of protected material slipping through the filter. Later in the process, after the filter entity has segregated potentially privileged material, the defendant may review the material and assert any privilege claims, with litigation following as necessary.

### b.  Discussion

Here, the question is whether the government's filter team should be allowed to share Mr. Zeitlin's privilege list with the prosecution team over his objection. Mr. Zeitlin is unaware of case law addressing this precise question, although as a general matter, privilege lists are provided for use by a filter team or special master, not by the prosecution team. *E.g.*, *Healthcare Sys., L.P. v. United States*, 5 F.4th 593, 596 (5th Cir. 2021); *United States v. DeLuca*, 663 F. App'x 875, 877 (11th Cir. 2016); *In re Grand Jury Subpoenas*, 454 F.3d 511, 524 (6th Cir. 2006); *United States v. Sharma*, No. 18 CR. 340 (LGS), 2019 WL 3802223, at *1 (S.D.N.Y. Aug. 13, 2019). As discussed below, however, this Court should prohibit the filter team from sharing the list, because it would undermine the independence and neutrality that are essential to an appropriate privilege review process.

First, and most importantly, the prosecution team is seeking to involve itself in the privilege review by defining the universe of potentially privileged communications at the outset. In

discussions preceding Mr. Zeitlin's request for this Court's intervention, the prosecution team AUSA asserted that the "case team" would not expect the filter team to rely on Mr. Zeitlin's privilege list until the case team had reviewed it, and similarly, that the case team would need to look at the list to see if it should be used for the privilege screen. From these assertions, the prosecution team apparently believes it may exercise some sort of veto authority over the names on Mr. Zeitlin's privilege list, thereby diminishing the universe of potentially privileged communications the filter team would seek to segregate. In other words, the prosecution team apparently believes it may decide for itself whether individuals interacting with Mr. Zeitlin might involve privileged communications, exempting disfavored relationships from the filter process at the outset.

Such involvement by the prosecution team would be manifestly inappropriate, however, because it would destroy the independence and neutrality of the filter process. Taking a cautious view of filter teams, the Sixth Circuit reasoned, "the government taint team may have an interest in preserving privilege, but it also possesses a conflicting interest in pursuing the investigation, and, human nature being what it is, occasionally some taint-team attorneys will make mistakes or violate their ethical obligations." *In re Grand Jury Subpoenas*, 454 F.3d at 523. In such a circumstance, "the government's fox is left in charge of the . . . henhouse, and may err by neglect or malice, as well as by honest differences of opinion." *Id.*

Here, if the prosecution team were permitted to veto names on Mr. Zeitlin's privilege list, these same concerns would be present. To its credit, the government has been candid and cautious to date, and Mr. Zeitlin has no reason to believe any member of the prosecution team would intentionally engage in unethical conduct. However, in vetoing names from Mr. Zeitlin's privilege list and thereby defining the universe of potentially privileged communications for the filter team,

the prosecution team necessarily would have a conflict of interest. Ultimately, unless the taint team determines the universe of potentially privileged communications for itself, the taint team is not neutral or independent.

This point becomes even more apparent in view of the other options for conducting a neutral privilege review. Instead of a taint team, suppose the government were employing a "more traditional" alternative of *in camera* review or review by a special master. *See Neill*, 952 F. Supp. at 841. If Mr. Zeitlin had supplied a privilege list to the judge or special master, would the prosecution team claim any right to obtain and review the list and exercise some sort of veto authority? Surely not. Accordingly, because the government's filter-team alternative should offer commensurate guarantees of neutrality and independence, the prosecution team should claim no such right or veto authority here.

To be clear, Mr. Zeitlin is not suggesting the filter team should rely *exclusively* on his privilege list in conducting its review. Nothing would prevent the prosecution team from supplying its own privilege list to the filter team, along with any other information that might facilitate a more thorough and careful review. In doing so, however, the prosecution team would have no reason to review Mr. Zeitlin's list. With separate input from both parties, the filter team could consider any discrepancies and make its own determinations in the first instance.

In her letter preceding Mr. Zeitlin's request for court intervention, the prosecution team AUSA cited the legal principle "that a person claiming . . . privilege has the burden of establishing all the essential elements thereof." *von Bulow by Auersperg v. von Bulow*, 811 F.2d 136, 146 (2d Cir. 1987). The AUSA then intimated Mr. Zeitlin should have supplied justifications for the names on its privilege list and concluded the prosecution team would therefore confer with the filter team as to the basis for Mr. Zeitlin's assertions of privilege.

But again, at this stage of the process, Mr. Zeitlin has not yet asserted claims of privilege. Therefore, he has no burden to establish the essential elements of privilege for the seized communications. (Indeed, because Mr. Zeitlin does not have possession of the seized devices, it would be very difficult for him to make privilege claims.) Neither has the government any need to make elemental determinations at this stage. Rather, as discussed above, the filter team should be segregating all *potentially* privileged communications, casting as wide a net as reasonably possible, with resolution of any privilege claims to follow in due course.

Apart from the prosecution team's improper involvement in defining the universe of potentially privileged communications for the filter team, sharing the list would be inappropriate for another reason. Mr. Zeitlin supplied the list exclusively for use by the filter team. He would have had no reason to supply the list for any other purpose, and he would not have done so under any other circumstance. However, if disclosed, the prosecution team might use the list for reasons unrelated to the privilege review, *i.e.*, to conduct further investigation or trial preparation. This would be an unfair and unjustified windfall for the prosecution team.

Like any privilege review, the filter process in this case should ensure both the *fact* and the *perception* of fairness and justice. *See In re Search Warrant dated Nov. 5, 2021*, 2021 WL 5845146 at *1; *In re Search Warrant for L. Offs.*, 153 F.R.D. at 59. Even if no violations of privilege ultimately were to occur, it would offend the appearance of fairness and justice for the prosecution team to define the universe of potentially privileged communications at the outset of the privilege review. Furthermore, even if the prosecution team did not use the filter list for further investigation or trial preparation, the mere possibility the prosecution team might derive such fringe benefits from the filter process would offend the appearance of fairness and justice.

Preceding Mr. Zeitlin's request for court intervention, the government asserted its belief that a privilege list is not itself privileged. Assuming *arguendo* the government is correct, it nevertheless misses the point entirely. Mr. Zeitlin is not claiming the government would violate privilege by sharing the list. Rather, as outlined above, sharing the list with the prosecution team would independently harm Mr. Zeitlin and the public by compromising the actual or perceived independence and neutrality of the filter process.

In the final analysis, the prosecution team has no principled justification to review Mr. Zeitlin's privilege list. Accordingly, this Court should prohibit the government's filter team from sharing the list with the prosecution team.

## II.  To Enable Mr. Zeitlin to Raise Timely and Appropriate Objections (if any), this Court Should Require the Government to Disclose Additional Information about the Filter Team's Composition and Protocols.

In responding to Mr. Zeitlin's request for specific information about its contemplated filter process, the government indicated its belief that such information is not discoverable. The government cited a case from this District in which defendants apparently moved to compel production of filter protocols under Rule 16, and the court held that "[u]nder these circumstances, a 'taint protocol' is not 'material to preparing the defense' and so does not fall within the scope of Rule 16(a)(1)(E)." *United States v. Weigand*, 482 F. Supp. 3d 224, 246 (S.D.N.Y. 2020), *as corrected* (Sept. 2, 2020). The government may be correct that it has no legal obligation to reveal its filter protocols to a defendant, at least at this stage. After all, in covert cases, the government conducts filter reviews without the knowledge of potential privilege holders, let alone disclosure of its filter protocols.

However, cases from this District have also established that a defendant must raise timely objections to any issues with the government's privilege review process, or else a court might later hold such objections waived. *E.g.*, *United States v. Avenatti*, 559 F. Supp. 3d 274, 284-85

(S.D.N.Y. 2021) (noting the defendant "had ample opportunity to raise any objections to the review process before any materials were actually disclosed to the prosecution team"); *United States v. Feng Ling Liu*, No. 12 CR. 934 RA, 2014 WL 101672, at *12 (S.D.N.Y. Jan. 10, 2014) (holding the defendant waived her objection to a filter agent rather than a special master, because defense counsel did not object "to the review procedure at . . . any time before the government began its review.").

Here, Mr. Zeitlin is requesting information about the government's filter protocols so he may raise appropriate and timely objections, if any, and seek appropriate relief. In this regard, counsel for Mr. Zeitlin have a duty to assert and protect any applicable privilege he may hold. This includes seeking to prevent any inappropriate review of privileged material by the government. Moreover, apart from the privilege-list issue outlined above, additional aspects of the government's filter process might implicate "the perception of fairness," which courts in this District have sometimes preserved by appointing special masters. *In re Search Warrant dated Nov. 5, 2021*, 2021 WL 5845146, at *1. However, without information about the protocols the government intends to follow, Mr. Zeitlin cannot evaluate whether to seek such relief here.

Accordingly, Mr. Zeitlin respectfully requests this Court require the government to disclose specific information about the filter team and protocols it intends to employ in this case, so that Zeitlin may raise any timely and appropriate objections. Such information should include:

1. Whether the filter process will involve communications obtained otherwise than from the seized electronic devices identified above;

2. The identities, duty stations, and employment responsibilities of each member of the filter team, *e.g.*, whether they are lawyers, paralegals, special agents, or other staff;

3.  Whether any member of the filter team serves in the same office or under the same supervisor as any member of the prosecution team;

4.  What process the filter team will employ to identify and "flag" potentially privileged documents in the first instance, *e.g.*, whether the team will rely entirely on keyword searches;

5.  Who will make the filter team's initial determinations as to whether "flagged" documents are potentially privileged;

6.  What will happen to documents deemed unprivileged after the initial privilege determinations, *e.g.*, whether Mr. Zeitlin will have any opportunity to assert privilege over documents the filter team deems unprivileged;

7.  What will happen to documents deemed *potentially* privileged after the initial privilege determinations, *e.g.*, whether they will be submitted to Mr. Zeitlin to make any assertions of privilege;

8.  What will happen to documents deemed privileged after the initial privilege determinations, *e.g.*, how they will be isolated or quarantined from any further review (if at all); and

9.  What information the filter team would intend to share with the prosecution team during the process, whether or not with the ostensible purpose of furthering the filter team's review, *e.g.*, information tantamount to a "privilege log" from the filter team to the prosecution team.

In this regard, Mr. Zeitlin would object to the filter team providing the prosecution team with a detailed "privilege log" or equivalent information during the review process. This does not mean the filter team should not consult with the prosecution team as necessary during the process.

For instance, if the filter team were to encounter an unknown name involved in communications that might be privileged, the filter team (without more) might ask if the prosecution team is familiar with the name and whether the person is a lawyer, religious counselor, or spouse. However, if the filter team were to provide a detailed "privilege log" or equivalent information to the prosecution team as part of the review process, this would raise concerns about the filter team's neutrality and independence. As in the context of Mr. Zeitlin's privilege list, the filter process should not provide the prosecution team with any case-related advantage or opportunity for advantage.

### III.     Conclusion

For the foregoing reasons, Mr. Zeitlin respectfully prays the Court grant his motion to prohibit the government's filter team from sharing his privilege list with the prosecution team, and to require the government to provide additional specific information about the filter team's composition and protocols.

Dated: November 14, 2023.

THE BERNHOFT LAW FIRM, S.C.
Attorneys for Defendant Richard Zeitlin


/s/ Robert G. Bernhoft
Robert G. Bernhoft, Esq.
Appearing *pro hac vice*
1402 E. Cesar Chavez Street
Austin, Texas 78702
Telephone: (512) 582-2100
Facsimile: (512) 373-3159
rgbernhoft@bernhoftlaw.com