**THE BERNHOFT LAW FIRM, S.C.**

The Honorable Lewis A. Kaplan  
United States District Judge  
Southern District of New York  
500 Pearl Street  
New York, NY 10007

November 22, 2023

**Via ECF and Hand Delivery**

Re: United States v. Zeitlin, 23 Cr. 419 (LAK)
      Reply to Government's Opposition to Defendant's Motion

To the Honorable Judge Kaplan:

    Mr. Zeitlin, through his counsel, respectfully submits this letter in reply to the Government's letter in opposition (Doc. 31) to the Defendant's Motion for an Order Prohibiting Disclosure of the Defense Privilege List and Requiring Disclosure of Filter Team Protocols (Doc. 29). A defense memorandum (Doc. 30) accompanied the defense's main motion.

    The parties are litigating whether the government's Prosecution Team may review Mr. Zeitlin's privilege list, which the defense submitted exclusively to the government's Filter Team for its sole use in conducting a privilege review of communications contained on seized electronic devices. The parties also dispute whether the government should reveal additional specific information about its pending filter process.

    In his opening memorandum Mr. Zeitlin explained how the Prosecution Team's review of his privilege list would undermine the independence and neutrality of the filter process, including the perception of fairness and justice. (Doc. 30, pp. 6-10). In its opposition, the government accuses the defense of having "attempted to impede the Filter Team's – and ultimately, the Case Team's – ability to use the Defendant's List in an effective manner." (Doc. 31).

    As discussed at greater length below, this accusation reveals the heart of the parties' dispute and the weakness of the government's position. But as a predicate matter, the defense has never attempted to impede the Filter Team's use of its privilege list. On the contrary, the defense provided its list specifically for the Filter Team's use. The defense has been, and remains, willing and available to work with the Filter Team to facilitate a thorough and expeditious privilege review.

    The Prosecution Team, however, neither has any entitlement nor any viable need to review or use the defense privilege list, whether "in an effective manner" or otherwise. For one thing, for the Prosecution Team to review the list would be tantamount to receiving unauthorized

1

post-indictment discovery. This would be improper regardless of how the Prosecution Team might intend to use the list, but it is especially concerning given Mr. Zeitlin's unanswered concern that the Prosecution Team might use the privilege list for further investigation or trial preparation. This would be an unfair and unjustified windfall in derogation of Mr. Zeitlin's fundamental rights. Furthermore, even if the Prosecution Team were to confine its use of the privilege list exclusively to the privilege review, it has no viable need to review the list. On the contrary, as revealed by the government's response, the Prosecution Team apparently is seeking to review the defense privilege list so it can impermissibly involve itself directly in the privilege review.

In seeking to prevent the Prosecution Team from reviewing his privilege list, Mr. Zeitlin accepts at face value the government's assertion that case teams routinely review defense privilege lists without objection in this District. (Doc. 31, p. 5.) But whatever the government's routine practice, it is no substitute for court-adjudicated precedent, and the government's "custom" certainly does not bind this Court in the face of Mr. Zeitlin's objections here.

### I. Prosecution Team Review of the Defense Privilege List Would Unfairly Prejudice Mr. Zeitlin.

If the Prosecution Team were to obtain and review the defense privilege list, this would be tantamount to obtaining post-indictment discovery, which it could not otherwise obtain through any lawful mechanism. For instance, the Prosecution Team would have no mechanism to serve Mr. Zeitlin with an interrogatory requiring him to identify every person with whom he had privileged, confidential, or otherwise protected communications, including contact information for such persons. Yet if the Prosecution Team were to review Mr. Zeitlin's privilege list, this would be tantamount to obtaining his response to just such an interrogatory. It is axiomatic that the government cannot conduct this sort of post-indictment discovery, so it should not be allowed to do the functional equivalent here.

Moreover, the Prosecution Team's access to the defense's privilege list could provide an impermissible window into defense trial strategy. To be sure, Zeitlin has been involved in extensive litigation on the underlying issues for many years – including the validity of telemarketing scripts, fundraising processes, and client practices – and it directly follows that knowing the identities and types of lawyers and experts he has consulted in these core areas would give the government an unfair advantage. Indeed, certain avenues explored by Zeitlin might give the government ideas on avenues it might wish to pursue to impermissibly enhance its case.

The government's Prosecution Team, therefore, should not be allowed to review Mr. Zeitlin's privilege list, regardless of the government's representations about how it might use the list.

Of particular concern, the Prosecution Team might use the privilege list to conduct further investigation or trial preparation, to Mr. Zeitlin's impermissible detriment. To be sure, the Prosecution Team is undoubtedly aware of many of Mr. Zeitlin's professional advisors already, and that team may gain additional information from any communications it may seize from the

electronic devices. However, the Prosecution Team might glean still *further* information from Mr. Zeitlin's privilege list. In assembling the list, the defense did not know what communications might exist on the seized devices, so it did not (and could not) limit its disclosures accordingly. Thus, in reviewing the list, the Prosecution Team might become aware of information about Mr. Zeitlin's professional relationships not previously known through its investigation and not otherwise identified on the seized electronic devices. And the Prosecution Team might use that information for reasons unrelated to the privilege review. Indeed, Mr. Zeitlin raised this concern in his opening memorandum, but the government did not address the issue in its opposition at all. So far as Mr. Zeitlin knows, the Prosecution Team intends to use his privilege list for any purpose it chooses.

This would be an unfair and unjustified windfall for the Prosecution Team. The only purpose and effect of the privilege review should be to screen privileged communications. The Prosecution Team should not derive any tangential benefit from the process, including access to a defense privilege list that might supply further information for investigative purposes or prematurely reveal defense trial strategies. Nor would the defense have provided the list for such purposes. Rather, to borrow the government's own language, the defense provided the privilege list solely "to facilitate the Filter Team's ability to identify potentially privileged materials." (Doc. 31, p. 4 n.4.)

The government gratuitously suggests in opposition that Mr. Zeitlin may withdraw the privilege list altogether, rather than permitting the case team to review it. (Doc. 31, p. 4 n.4.) The government also suggests Mr. Zeitlin's motion is moot, because even if Mr. Zeitlin declines to provide a list to the Prosecution Team, "the Filter Team may proceed with its privilege review process, which may or may not incorporate the Defendant's List, and will take reasonable measures to protect the attorney-client privilege." (Doc. 31, p. 5 n.7.)

These suggestions present a defendant like Mr. Zeitlin with a proverbial Hobson's Choice. On the one hand, he may protect his privileged communications to the greatest extent possible only by supplying a privilege list, but unbeknownst to him he must risk the Prosecution Team reviewing his list and using it for reasons unrelated to the privilege review. On the other hand, he may decline to supply a privilege list or withdraw a list previously supplied, but this may increase the risk of potentially privileged communications slipping through the filter and compromising Mr. Zeitlin's rights to privileged, confidential, or otherwise protected communications.

The solution to this dilemma is straightforward. Review of the defense privilege list should be limited to the Filter Team, for whom it was exclusively intended. Of course, consistent with the government's assertion, the Filter Team may use or disregard the defense list in its discretion. (Doc. 31, p. 5 n.7.) In this respect, having assumed responsibility for the filter process, the government also bears the risk of allowing privileged communications to slip through the filter and any consequences flowing therefrom. But regardless of how the Filter Team may use the defense privilege list, the Prosecution Team has no entitlement to the list, and the Filter Team should therefore be prohibited from providing the list to the prosecutors.

## II. Prosecution Team Review of the Defense Privilege List Would be Inconsistent with an Independent Filter Process.

As discussed above, because the Prosecution Team has no entitlement to the defense privilege list and could not otherwise obtain such a list, that team should not be allowed to review the list regardless of its stated justifications for doing so. But furthermore, as discussed in the defense's opening memorandum, any Prosecution Team review of the defense privilege list would be inappropriate, because it would compromise the perception that the filter review process is fair, if not actual fairness. (Doc. 30, pp. 5-10.)

The government opposes with various justifications for the Prosecution Team to review the list, but none is the least bit viable.

### a. A neutral filter process need not include prosecution team review of a defense privilege list.

Before discussing the Prosecution Team's stated justifications for reviewing Mr. Zeitlin's privilege list, it may be helpful to consider how a neutral filter process would operate without that team reviewing the defense privilege list. Contrasting *this* process with the government's *contemplated* process will illustrate why the Prosecution Team does not need to review the defense privilege list for any legitimate reason.

First, the Filter Team would determine a preliminary roster of persons who might have had privileged, confidential, or otherwise protected communications with the defendant. In other words, the Filter Team would determine the universe of potentially privileged relationships involved in the review. In making this determination, the Filter Team would consider any information supplied by the Prosecution Team and the defense, respectively. As here, this might include a defense privilege list. Meanwhile, the Prosecution Team might supply its own list, accompanied by any additional information it believes might aid the Filter Team's review, including case summaries and materials at its sole discretion.

For its part, the Filter Team would consider these submissions, note any discrepancies, and seek additional information as appropriate. For instance, if the Filter Team were confused or concerned about one or more names on the defense privilege list it certainly could and would communicate those concerns to the defense and request additional information – information the defense would promptly and comprehensively provide. The Filter Team also might communicate with the defense about additional search terms or keywords that might facilitate its review, and if the Filter Team were to conclude the defense list is unreliable, it would be free to disregard the list in whole or in part.

Second, the Filter Team would segregate all potentially privileged material from the overall cache of seized communications. Using keyword searches or other techniques, that team would begin by flagging those communications involving names on the preliminary roster. Subsequently, lawyers on the Filter Team would review the flagged material and make preliminary privilege determinations, segregating any potentially privileged communications. As before, if members of the Filter Team were to require additional information to make these

4

preliminary determinations, they could and would seek the information from the Prosecution Team and/or the defense.

Third, except for the segregated subset of potentially privileged communications, the Filter Team would release the remaining communications to the Prosecution Team, which would review them for responsiveness to the search warrant.

Fourth, the Filter Team would share the segregated subset of potentially privileged communications with the defense. The defense would review the communications and assert any privilege claims. Any remaining material would be released to the Prosecution Team for responsiveness review.

Fifth, the parties would litigate any defense privilege claims before the Court. At this stage, the defendant would bear the burden to substantiate any claim of privilege, including the existence of a privileged relationship. *See von Bulow by Auersperg v. von Bulow*, 811 F.2d 136, 146 (2d Cir. 1987). The Court, not the government, would make the final privilege determinations. *See generally United States v. Kovel*, 296 F.2d 918, 924 (2d Cir. 1961) ("[A] witness claiming the attorney-client privilege may not refuse to disclose to the judge the circumstances into which the judge must inquire in order to rule on the claim."). Any privileged communications would remain segregated, with any remaining material released to the Prosecution Team for responsiveness review.

### b. The government's contemplated process would involve the prosecution team without justification.

Here, the government offers various justifications for the Prosecution Team to review his privilege list. Based on these justifications, the government intends to involve its Prosecution Team in the privilege review process.

According to the government, the Prosecution Team needs to review the list "so that the parties can meaningfully confer with the defense about their basis for asserting privilege over materials involving the non-attorneys." (Doc. 31, p. 3.) According to the government, without review for "potential overbreadth" by a case team, "defendants . . . [might] submit, unchecked, a sweeping list of individuals to a filter team, including non-attorneys and perhaps even witnesses, victims, associates, and co-conspirators," thereby obstructing the case team's access to evidence. (Doc. 31, p. 6-7.) Thus, according to the government, the case team "has the responsibility and the right to request a basis for the defendant's assertions of attorney-client privilege . . . and to challenge such bases where appropriate." (Doc. 31, p. 6.)

In other words, rather than the Filter Team determining the universe of potentially privileged relationships at the outset (step one of the neutral process surveyed above), the government apparently is proposing some sort of "pre-litigation" involving the Filter Team, the Prosecution Team, and the defense. In addition to other defects, this position certainly sells the Filter Team's competency short.

5

This pre-litigation process apparently would begin with the Prosecution Team assessing and possibly challenging the factual basis for any privileged relationship the defense might later claim. In proposing to "meaningfully confer," the government means the defense would be expected to proffer facts underlying each potentially privileged relationship for the government's consideration. In this regard, the government previously suggested Mr. Zeitlin's defense has the burden to provide it with "a basis for your assertion that there exists an attorney-client relationship between the defendant and the attorneys and non-attorneys on your attorney list." (Doc. 31-3, pp. 3-4.) Similarly, in its opposition, the government notes its prior request for *Kovel* letters, which the defense declined to provide. (Doc. 31, pp. 3-4.) The government apparently believes that by submitting a privilege list the defense assumed the burden to substantiate any privileged relationship it might assert in the future.

The government is wrong. As noted above, the defense has no burden to establish privileged relationships to the government's satisfaction at the outset of a filter review. Later, if the defense were to assert any claim of privilege, the defense would have the burden of substantiating that claim before this Court, including any *Kovel* claim. But at the outset, the Filter Team is only seeking to determine the preliminary universe of potentially privileged relationships, not to make conclusive determinations about such relationships. The defense has no obligation to pre-litigate its potential future claims of privilege by proffering the factual bases for its privileged relationships at the outset – particularly to the Prosecution Team. Accordingly, the Prosecution Team has no need to review the defense privilege list over the defendant's objection.

And practically speaking, even if the defense were to engage in the government's contemplated pre-litigation, it is unclear how the Prosecution Team would "challenge" disfavored names or how such challenges would be resolved. Would the Prosecution Team make its preliminary assessments and simply strike disfavored names from the defense list unilaterally? Would the Prosecution Team submit disfavored names to the Filter Team? What level of awareness or involvement would the defense have in these decisions and discussions?

For its part, the government cavalierly dismisses Mr. Zeitlin's concern that the Prosecution Team may exercise some sort of veto authority over the names on his privilege list. According to the government, Mr. Zeitlin's concern is "drawn from thin air," because "[a] filter team, by its very nature, determines on its own what is to be segregated as potentially privileged. The Government's Case Team does not make these determinations." (Doc. 31, p. 6.)

The government, however, blithely ignores the distinction between defining the universe of potentially privileged communications in a filter review (step one of the neutral process above) and deciding whether to segregate potentially privileged communications themselves (step two of the neutral process). As the government indicates, the Prosecution Team would not be involved in deciding whether to segregate particular communications. If the Prosecution Team were to challenge or veto the inclusion of potentially privileged relationships at the outset, however, this would potentially remove any associated communications from the filter process altogether. In other words, the Filter Team would not segregate any such communications, because that team would not be flagging them as potentially privileged in the first place. Therefore, although the Prosecution Team would not decide whether to segregate individual

6

communications, it nevertheless would involve itself in the privilege review by defining the universe of potentially privileged communications at the outset.

According to the government, "[i]t would be unreasonable for the Filter Team to blindly adopt the Defendant's List, without any ability for the Case Team to assess the list's potential overbreadth." (Doc. 31, p. 6.) But regardless of any involvement by the Prosecution Team, the Filter Team need not "blindly adopt" the defense privilege list. Rather, as discussed above, the Filter Team should receive and consider respective input from the defense and the Prosecution Team. Ultimately, the Filter Team should make its own determination as to the apparent universe of potentially privileged communications. And as discussed above, the Filter Team has no obligation to rely on the defense list at all. (Doc. 31, p. 5 n.7.) If the Filter Team were to conclude the defense list is unreliable or unhelpful, in whole or in part, it would be free to disregard it.

Similarly, the government suggests prosecution teams must review defense privilege lists to prevent defendants from submitting "sweeping list[s]" that would obstruct the government's timely and complete access to seized evidence, (Doc. 31, pp. 6-7), but this suggestion rings far less than hollow. There is no reason to believe a government filter team – presumably led by one or more experienced lawyers who are reasonably familiar with the case – would be overwhelmed or misled by a "sweeping" defense privilege list containing names submitted in bad faith, even assuming a defendant were to submit such a list. Instead, the Filter Team presumably would triage the names on the defense list or disregard the list entirely.

As another potential justification, the government claims privilege lists "are routinely provided by the defense to the Government's Case Team without objection in order to enable the parties to engage in a meaningful dialogue concerning the search terms to be used in the filter process." (Doc. 31, p. 5.) But this claim is unavailing for two reasons. First, even if defendants have not objected to this practice in other cases, the Prosecution Team is not thereby entitled to review the defense privilege list over Mr. Zeitlin's objection here. Second, the defense certainly would be willing to have "a meaningful dialogue" with the Filter Team about keywords and search terms for the filter process. Indeed, elsewhere in its opposition, the government predicts "the Filter Team and the defense will continue to confer as the review progresses." (Doc. 31, p. 7.) Mr. Zeitlin takes no issue with this prediction. The Prosecution Team, however, need not be involved in any discussions between the Filter Team and the defense relating to search keywords or the contents of the defense privilege list.

### c. Mr. Zeitlin cannot raise specific objections to the filter process without additional specific information.

The government argues the defense is not entitled to additional specific information about the filter process, claiming the defense request is "little more than a fishing expedition" and "there is no basis to believe that the privilege review process will be improper." (Doc. 31, p. 7.)

The parties' ongoing dispute over the defense privilege list, however, demonstrates why additional specific information about the filter process would be beneficial to Mr. Zeitlin and the Court. Indeed, in responding to Mr. Zeitlin's claim that the Prosecution Team will improperly

7

exercise veto authority over the privilege list, the government claims, "The defense's argument is based on incorrect assumptions about the Filter Team's process." (Doc. 31, p. 6.) Without conceding the government's claim, if the defense has made incorrect assumptions about the filter process, the remedy would be for the government to supply additional information about the process in order to cure any such misapprehensions.

For instance, the government claims the Filter Team would not share a traditional privilege log with the case team. "In fact," the government continues, "should the defense intend to assert privilege over the materials segregated as potentially privileged by the Filter Team, it is the defense itself (not the Filter Team) that would be obligated to provide a privilege log setting forth information sufficient for the Government to evaluate each privilege claim." (Doc. 31, p. 2.) Presumably this is because the Prosecution Team would intend to litigate any such privilege claims before this Court. But it is unclear why the defense would be obliged to provide privilege logs to the Prosecution Team or litigate privilege issues with that team, rather than dealing exclusively with the Filter Team in such matters.

Ultimately, unless the defense has information about specific aspects of the government's filter process, it cannot raise specific related objections. Although the government may have no obligation to supply such information, Mr. Zeitlin accordingly must retain his right to object to any undisclosed aspects of the filter process in the future.

For all these reasons, as additionally set forth in Defendant Zeitlin's main motion, the Filter Team should be prohibited from disclosing the defense's privilege list to the Prosecution Team; and the government should be ordered to provide additional information regarding the Filter Team's process, as requested and detailed in Zeitlin's main motion.

Respectfully submitted,

**THE BERNHOFT LAW FIRM, S.C.**
Attorneys for Defendant Richard Zeitlin

_____
Robert G. Bernhoft, Esq.
Appearing *pro hac vice*
1402 E. Cesar Chavez Street
Austin, Texas 78702
Telephone:   (512) 582-2100
Facsimile:    (512) 373-3159
rgbernhoft@bernhoftlaw.com

cc: All counsel of record (via ECF)