**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

UNITED STATES OF AMERICA,

       Plaintiff,

  v.

RICHARD ZEITLIN,

       Defendant.

23-cr-419 (LAK)

---

## DEFENDANT'S MEMORANDUM IN SUPPORT OF HIS MOTION TO SUPPRESS EVIDENCE SEIZED UNDER SEARCH WARRANTS FOR A RESIDENCE AND OFFICE IN THE DISTRICT OF NEVADA

Through undersigned counsel, Defendant Richard Zeitlin hereby submits the following memorandum in support of his motion. As discussed below, Mr. Zeitlin respectfully requests the Court suppress all evidence seized under premises search warrants issued in the District of Nevada.

i

# TABLE OF CONTENTS

TABLE OF CONTENTS ......................................................................................................... ii

TABLE OF AUTHORITIES ................................................................................................... iii

BACKGROUND ..................................................................................................................... 1

ARGUMENT ........................................................................................................................... 2

    I.    Probable Cause ................................................................................................................ 2

        A.    General Rules ............................................................................................................ 2

        B.    SA Palermo's affidavit did not supply a substantial basis to find probable cause for the requested search warrants. ............................................................................ 4

    II.    Particularity ................................................................................................................... 14

        A.    General Rules .......................................................................................................... 14

        B.    The search warrants for the La Madre residence and Charleston office violate the Fourth Amendment's particularity requirement. ................................................... 15

    III.    Overbreadth ................................................................................................................. 20

        A.    General Rules .......................................................................................................... 20

        B.    The search warrants for the La Madre residence and Charleston office are overbroad. ............................................................................................................... 20

    IV.    Good Faith. ................................................................................................................. 21

CONCLUSION ...................................................................................................................... 22

## TABLE OF AUTHORITIES

**Cases**

*Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022 (1971) ........................................ 15, 18

*United States v. Beltempo*, 675 F.2d 472 (2d Cir. 1982) ................................................... 3

*United States v. Buck*, 813 F.2d 588 (2d Cir. 1987) ....................................................... 15

*United States v. Donald*, 417 F. App'x 41 (2d Cir. 2011) ............................................ 2, 7

*United States v. Fama*, 758 F.2d 834 (2d Cir. 1985) ................................................... 4, 12

*United States v. Gagnon*, 373 F.3d 230 (2d Cir. 2004) ............................................... 4, 8

*United States v. Galpin*, 720 F.3d 436 (2d Cir. 2013) .............................................. 15, 16

*United States v. Guzman*, No. S5 97 CR 786 (SAS), 1998 WL 61850
  (S.D.N.Y. Feb. 13, 1998) ........................................................................ 4, 13

*United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405 (1984)........................................ 21

*United States v. Lustyik*, 57 F.Supp.3d 213 (S.D.N.Y. 2014)....................................... 20

*United States v. Ortiz*, 143 F.3d 728 (2d Cir. 1998) ................................................. 3, 9

*United States v. Raymonda*, 780 F.3d 105 (2d Cir. 2015) ......................................... 2, 22

*United States v. Rosa*, 626 F.3d 56 (2d Cir. 2010) ................................................... 15, 18

*United States v. Singh*, 390 F.3d 168 (2d Cir. 2004) ................................................. 3, 12

*United States v. Vilar*, No. S305CR621KMK, 2007 WL 1075041 (S.D.N.Y. Apr. 4, 2007) ...... 14

*United States v. Weber*, 923 F.2d 1338 (9th Cir. 1990)............................................... 4, 12

*United States v. Wey*, 256 F.Supp.3d 355 (S.D.N.Y. 2017) ................................... passim

*United States v. Williams*, 350 F.Supp.3d 261 (W.D.N.Y. 2018)............................... 3, 4

*United States v. Zemlyansky*, 945 F.Supp.2d 438 (S.D.N.Y. 2013) ....................... passim

*Zurcher v. Stanford Daily*, 436 U.S. 547, 98 S.Ct. 1970 (1978) ..................................................... 3

**Constitutional Provisions**

U.S. Const. amend. IV .............................................................................................................. 14

## BACKGROUND

In a four-count indictment filed on August 15, 2023, a federal grand jury in this District charged Richard Zeitlin with conspiracy to commit telemarketing wire fraud (Count One), telemarketing wire fraud (Count Two), conspiracy to obstruct justice (Count Three), and obstruction of justice (Count Four). (Doc. 1). The gravamen of Counts One and Two is that Mr. Zeitlin allegedly "defrauded donors and potential donors by directing employees of the Zeitlin Call Centers to make fundraising calls containing false and/or misleading statements that misled donors and potential donors into believing that they were donating money (a) to a charity or direct-services organization rather than to a PAC; (b) that would go to an organization (rather than to the telemarketers); and/or (c) to support a 'new' or 'special' drive that was underway." (Doc. 1, ¶ 7.) This allegedly occurred "[f]rom at least in or about 2017 through at least in or about 2020." (Doc. 1, ¶¶ 17, 20.) Meanwhile, the gravamen of Counts Three and Four is that Mr. Zeitlin allegedly directed the deletion of certain electronic messages in May of 2022 after service of federal grand jury subpoenas. (Doc. 1, ¶ 15.)

The day after the indictment's filing, on August 16, 2023, FBI Special Agent Kelsey Palermo ("SA Palermo") applied for warrants to search Mr. Zeitlin's residence on La Madre Way and an office on East Charleston Boulevard, both in Las Vegas, Nevada. The applications relied on a common affidavit by SA Palermo, which incorporated and included the indictment as an exhibit. (Affidavit, ¶ 2.)[1] A magistrate judge in the District of Nevada issued the warrants that

---

[1] The Affidavit is identical as to each of the Two Exhibits, and are found at the following Bates numbers: USAO_00106714-USAO_00106742 and also USAO_00106775-USAO_00106803. The Affidavit is referred to as "Affidavit" throughout this brief.

same day.[2] The following day, August 17, 2023, officers executed the warrants at the La Madre residence and Charleston office.

In his current motion and this memorandum, Mr. Zeitlin seeks suppression of all evidence seized in execution of these warrants, including any seizures of electronic devices. FED R. CRIM. P. 12(b)(3)(C). As discussed below, SA Palermo's affidavit did not establish probable cause for the issuance of either warrant. Moreover, both warrants were insufficiently particular and overbroad, in violation of the Fourth Amendment.

## ARGUMENT

### I.   Probable Cause.

#### A.   General Rules.

"In evaluating probable cause in any given case, a judge must make a practical common-sense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Raymonda*, 780 F.3d 105, 113 (2d Cir. 2015) (quotation marks and ellipsis omitted). "Although the existence of probable cause is a question of law," *United States v. Donald*, 417 F. App'x 41, 43 (2d Cir. 2011) (quotation marks omitted), "a reviewing court generally accords substantial deference to the finding of an issuing judicial officer . . . , limiting [its] inquiry to whether the officer had a substantial basis for his determination," *Raymonda*, 780 F.3d at 113. Nevertheless, a reviewing court "may conclude that a warrant is invalid where the magistrate's probable-cause determination reflects an improper analysis of the totality of circumstances." *Id.* (quotation marks and brackets omitted).

---

[2] Copies of the affidavit and warrants are included as attachments to this memorandum. As cited in this memorandum, Attachment B-1 is part of the La Madre residence warrant, while Attachment B-2 is part of the Charleston office warrant.

"The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific things to be searched for and seized are located on the property to which entry is sought." *Zurcher v. Stanford Daily*, 436 U.S. 547, 556, 98 S.Ct. 1970 (1978) (quotation marks omitted). Showing such a "nexus does not require direct evidence and may be based on reasonable inference from the facts presented based on common sense and experience." *United States v. Singh*, 390 F.3d 168, 182 (2d Cir. 2004) (quotation marks omitted). However, the facts of a particular investigation are significant. For instance, "where there is a lack of evidence directly connecting a residence to drug trafficking activity, information that the drug trafficking perpetrated by the defendant is large-scale in nature can support a probable cause finding to search the defendant's residence." *United States v. Williams*, 350 F.Supp.3d 261, 268 (W.D.N.Y. 2018).

The concept of "staleness" is important to the probable cause inquiry. "To justify a present search probable cause must be current and not rest on facts which existed in the past, unless there is reason to believe those facts are still in existence." *United States v. Beltempo*, 675 F.2d 472, 477 (2d Cir. 1982). The "proof of probable cause . . . must be of facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time. Whether the proof meets this test must be determined by the circumstances of each case." *Id.* "[W]hen the supporting facts present a picture of continuing conduct or an ongoing activity, the passage of time between the last described act and the presentation of the application becomes less significant." *United States v. Ortiz*, 143 F.3d 728, 732 (2d Cir. 1998) (quotation marks and ellipsis omitted). For instance, "in investigations of ongoing narcotics operations, intervals of weeks or months between the last described act and the application for a warrant did not necessarily make the information stale." *Id.* at 732-33 (quotation marks omitted).

3

Information from third-party informants may support a finding of probable cause. Courts make this assessment under the totality of the circumstances and may consider the "informant's veracity, reliability and basis of knowledge," along with "whether the information an informant provides is corroborated by independent police investigation." *United States v. Gagnon*, 373 F.3d 230, 236 (2d Cir. 2004).

"[A]n agent's expert opinion is an important factor to be considered by the judge reviewing a warrant application." *United States v. Fama*, 758 F.2d 834, 838 (2d Cir. 1985). However, if an affiant "presents expert opinion about the behavior of a particular class of persons, for the opinion to have any relevance, the affidavit must lay a foundation which shows that the person subject to the search is a member of the class." *United States v. Weber*, 923 F.2d 1338, 1345 (9th Cir. 1990). Moreover, such opinions should rely on case-specific facts. *See Fama*, 758 F.2d at 837-38 (noting the "huge scale" of a drug-trafficking operation and an agent's opinion that "major drug traffickers frequently maintain at their homes large amounts of cash, drugs, books, ledgers and other documents evidencing their criminal activities"); *Williams*, 350 F.Supp.3d at 268. "Permitting a search warrant based solely on the self-avowed expertise of a law-enforcement agent, without any other factual nexus to the subject property, would be an open invitation to vague warrants authorizing virtually automatic searches of any property used by a criminal suspect." *United States v. Guzman*, No. S5 97 CR 786 (SAS), 1998 WL 61850, at *4 (S.D.N.Y. Feb. 13, 1998) (quotation marks omitted).

### B.   SA Palermo's affidavit did not supply a substantial basis to find probable cause for the requested search warrants.

Here, by incorporating the indictment, SA Palermo's affidavit establishes probable cause to conclude Mr. Zeitlin committed the offenses alleged by the grand jury. (Affidavit, ¶ 2.) Similarly, SA Palermo's affidavit establishes probable cause to believe Mr. Zeitlin resided – at

4

least sometimes – at the La Madre residence between 2018 and 2023. (Affidavit, ¶ 15.) And the affidavit establishes probable cause to believe employees of the Zeitlin Call Centers sometimes worked at the Charleston office.

However, although the affidavit establishes a nexus between the premises and Mr. Zeitlin or his telemarking operation, respectively, it does not establish a nexus between the premises and Mr. Zeitlin's alleged offenses. Accordingly, the magistrate had no substantial basis to find probable cause for the requested search warrants, and all resulting seizures should be suppressed.

        **1.**       **SA Palermo's affidavit does not include facts establishing probable cause to search the La Madre residence.**

SA Palermo's affidavit offers no direct factual evidence to connect Mr. Zeitlin's alleged offenses with the La Madre residence. (Affidavit ¶¶ 10-22). And the affidavit's circumstantial evidence is wafer-thin:

- The affidavit mentions "several Apple electronic devices" associated with Mr. Zeitlin's phone number that "were activated between in or about May 2010 through in or about March 2023," including "iPhones, iPads, iPods, TVs, iMac desktop computers, and Macbook laptops," (Affidavit, ¶ 18);

- The affidavit asserts Mr. Zeitlin "communicated with his employees through Signal and occasionally through email," (Affidavit ,¶ 12(g));

- The affidavit asserts Mr. Zeitlin "regularly conducted business by phone," (Affidavit, ¶ 19);

- The affidavit includes a photograph copied from the real estate website Zillow.com, apparently taken in 2022, which appears to show a home office with a computer and printer (or other device), with separate undated photographs of Mr. Zeitlin apparently in the same room, (Affidavit, ¶ 20 & n.8); and

- The affidavit offers examples of Mr. Zeitlin's online activity in 2023, which included visiting FEC webpages related to PACs and fundraising, (Affidavit, ¶ 21).

These circumstantial assertions are negligible in the probable cause analysis. Their relevance relies on a tenuous chain of inferences: that because Mr. Zeitlin might have worked remotely, he might have worked remotely from the La Madre residence; that such work at the La Madre residence might have included some criminal (or related) activity as alleged in the indictment; that Mr. Zeitlin might have maintained a home office or other electronic devices at the La Madre residence while engaged in work related to criminal activity there; that such devices might remain at the La Madre residence in August of 2023; and that such devices might contain evidence of Mr. Zeitlin's alleged crimes.

These inferences amount to little more than blind speculation. For one thing, the affidavit supplies no alleged timeframe during which Mr. Zeitlin might have worked at home. For that matter, although the affidavit establishes probable cause to believe Mr. Zeitlin used the La Madre residence as an address in 2018 and resided there in 2023, (Affidavit, ¶ 15), the extent to which Mr. Zeitlin was actually present at the La Madre residence during the timeframe of his alleged offenses is unclear. Furthermore, apart from the Zillow.com photograph showing a computer and printer (or comparable device), the affidavit offers no tangible evidence of any electronic device within the La Madre evidence. And to the extent the Zillow.com photograph was reliable, it was also stale, apparently predating the search by at least 7 months if not longer. Furthermore, the affidavit offers no evidence of non-electronic business records existing at the La Madre residence at all. In sum, the affidavit's circumstantial factual assertions contribute almost nothing to probable cause for a search of the La Madre residence.

Nor did the circumstances of Mr. Zeitlin's alleged offenses otherwise support probable cause to search the La Madre residence in August of 2023. For instance, in *Donald*, 417 F. App'x at 43, the Second Circuit upheld a finding of probable cause to search a residence based on the "scale of Donald's [drug] distribution activities" and officers having observed Donald's wife (who was involved in the distribution scheme) traveling from the residence to a drug transaction. But no such circumstances exist here. There was no substantial basis to find probable cause based on the facts asserted in the affidavit.

> **2.      SA Palermo's affidavit does not include facts establishing probable cause to search the Charleston office.**

Unlike the La Madre residence, SA Palermo's affidavit establishes a connection between the Charleston office and Mr. Zeitlin's telemarketing operation. (Affidavit, ¶¶ 23-24). Nevertheless, the affidavit does not supply factual evidence of any wrongdoing associated with the Charleston office.

On the contrary, to the extent they are reliable at all, the affidavit's proffered facts merely establish the Charleston office was sometimes used for telemarketing business, not that it was used for illegal telemarketing business. ███████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████

  ████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████. Thus, even

to the extent such factual assertions otherwise might be significant, a reviewer cannot meaningfully

assess the proponent's "veracity, reliability and basis of knowledge." *Gagnon*, 373 .F.3d at 236.

Furthermore, the affidavit's factual assertions do not establish any nexus between the

Charleston office and any alleged criminal conduct.  ████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████



Thus, the affidavit offers no timely information to indicate evidence related to fraudulent call scripts would be found at the Charleston office in August of 2023.

And significantly, although "continuing conduct or an ongoing activity" may reduce the significance of staleness, *Ortiz*, 143 F.3d at 732, the indictment alleged no such conduct here. To the contrary, as discussed above, Mr. Zeitlin's alleged wrongdoing generally occurred between 2017 and 2020, with discrete allegations in 2022. (Doc. 1, ¶¶ 13(d), 15, 17, 20). By the time of the search in August of 2023, any alleged wrongdoing was more than a year old. Thus, there was no substantial basis to find probable cause to search the Charleston office based on the facts asserted in the affidavit.

      **3.**     **SA Palermo's opinions in the affidavit do not create probable cause for the requested search warrants.**

Lacking specific factual assertions that would authorize searches of the La Madre residence or the Charleston office, the affidavit repeatedly proffers SA Palermo's opinions about typical criminal behavior based on her "training and experience." To summarize:

- "[W]hen an individual participates in a criminal scheme, including a scheme to defraud, that individual often maintains documentary evidence of the scheme in their home," (Affidavit, ¶ 10);

- "[S]enior executives, senior managers, and owners of businesses commonly work from home and/or have home offices . . . [and] commonly possess and retain business-related documents within their homes," (Affidavit, ¶ 11);

- Individuals engaged in "fraud" or "criminal schemes" often use electronic equipment and electronic communications, (Affidavit, ¶ 12(a), (b));

- Individuals who participate in a "criminal scheme" often have evidence stored on electronic devices or reflected in their web browser history, (Affidavit, ¶ 12(c), (d));

- "Historical location data . . . can be relevant to establishing [a device' user's] participation in a criminal conspiracy, such as by showing when the relevant actors were together in person," (Affidavit, ¶ 12(e));

- "Individuals who engage in criminal schemes commonly maintain electronic records related to their schemes," electronic communications platforms may be accessed from multiple devices, and electronic files may exist on devices years after their creation, (Affidavit, ¶ 12(f), (g), (h));

- "[C]ellphones are frequently kept at the owner's residence and/or on their owner's person" and are often backed up or synced to other devices, (Affidavit, ¶ 13);

- Even individuals who attempt to destroy evidence or evade detection may not do so effectively, (Affidavit, ¶ 14); and

- "[T]he vast majority of businesses use electronic devices," and "when employees of a business and/or entity . . . continue to use an office space . . . work relating to that business or entity . . . typically remains at that office space," (Affidavit, ¶ 25).

Combined with the factual assertions discussed above, SA Palermo concludes by opining that probable cause exists to search the La Madre residence and Charleston office, respectively. (Affidavit, ¶¶ 22, 26).

However, for at least three reasons, SA Palermo's opinions do not bolster the affidavit's lack of probable cause. *First*, SA Palermo's affidavit does not establish any meaningful expertise to support the opinions she offers. The affidavit merely offers general references to her training and experience, (Affidavit, ¶¶ 3-4), including her participation "in numerous investigations involving public corruption offenses and fraud" and her participation "in the execution of search warrants involving premises and electronic evidence." However, it is unclear how many fraud investigations SA Palermo has "participated" in, what her participation entailed, or what sort of fraud investigations they were. Indeed, SA Palermo's experience in fraud cases appears to be limited; she apparently spent most of her FBI career working in counter-intelligence before being assigned to a public-corruption squad sometime "more than one year" ago. (Affidavit, ¶ 3). SA Palermo's prior experience executing search warrants is similarly vague—for instance, the affidavit says nothing about whether she has previously executed similar warrants and discovered relevant records at the residences or offices of suspects similarly situated to Mr. Zeitlin. And it is unclear how SA Palermo can claim any expertise about the behavior of senior executives or business owners.

As discussed above, expert opinions by agents undeniably may contribute to probable cause. For instance, experienced drug investigators appropriately may opine about the types of

evidence they typically find in drug traffickers' homes. *E.g.*, *Fama*, 758 F.2d at 838. But here, SA Palermo's affidavit establishes no such foundation for her opinions. Given her lack of established expertise, her opinions have minimal value.

*Second*, although SA Palermo opines about the behavior of people engaged in "fraud" or "criminal schemes," she does not lay the necessary foundation to show Mr. Zeitlin is similarly situated to such people. *See Weber*, 923 F.2d at 1345. As just one example, SA Palermo opines that "when an individual participates in a criminal scheme, including a scheme to defraud, that individual often maintains documentary evidence of the scheme in their home." (Affidavit, ¶ 10). But criminal schemes come in many varieties. The behavior of drug-traffickers may be entirely different from the behavior of white-collar criminals. And even when limited to the white-collar context, criminal behavior differs widely from scheme to scheme. For instance, a healthcare fraud scheme might involve numerous billing records stored and prepared at a suspect-physician's home. *Singh*, 390 F.3d at 181-82. But such schemes are factually dissimilar from the telemarketing fraud alleged against Mr. Zeitlin here. Thus, without specific tailoring, SA Palermo's broad opinions about the behavior of people engaged in "fraud" or "criminal schemes" have minimal predictive value in terms of Mr. Zeitlin's behavior in this case.[3]

*Third*, but in a similar vein, SA Palermo's opinions are essentially untethered from material, case-specific facts. For instance, the affidavit opines about criminals maintaining pertinent records at their homes, (Affidavit, ¶ 10), but it says nothing to indicate Mr. Zeitlin was ever observed with such records at the La Madre residence or any other residence. Similarly, the

---

[3] The closest tailoring is where SA Palermo opines (albeit without expert foundation) on the typical behavior of "senior executives, senior managers, and owners of businesses." (Affidavit, ¶ 11). But here, she is not comparing Mr. Zeitlin with typical criminals or fraudsters; she is comparing him to the larger universe of typical business executives.

affidavit opines about the potential relevance of historical location information to establish in-person meetings between "relevant actors," (Affidavit, ¶ 12(e)), but it says nothing to indicate Mr. Zeitlin was observed or involved in any such meeting. As another example, the affidavit opines participants "in criminal schemes . . . commonly use electronic communications to . . . establish and use online financial accounts . . . and keep a record of illegal transactions or criminal proceeds for future reference." (Affidavit, ¶ 12(b)). But the affidavit says nothing to indicate Mr. Zeitlin's telemarketing operation treated or accounted for its purportedly ill-gotten intake—acquired via allegedly fraudulent call scripts—any differently from its legitimate intake. Yet again, SA Palermo's generalized opinions about the behavior of criminals are of minimal relevance, because they are not tailored to Mr. Zeitlin's alleged wrongdoing in this case.

In sum, SA Palermo's opinions are essentially unfounded and unrelated to the investigation of Mr. Zeitlin and the allegations in the indictment. If such opinions were sufficient to establish probable cause, it "would be an open invitation to vague warrants authorizing virtually automatic searches of any property used by a criminal suspect." *Guzman*, 1998 WL 61850 at *4. At minimum, the home and office of any white-collar defendant similarly situated to Mr. Zeitlin would be subject to search in every case, regardless of the facts developed (or not) in the underlying investigation.

### 4.   SA Palermo's affidavit does not establish probable cause for the requested search warrants.

In the final analysis, SA Palermo's affidavit does not establish probable cause to believe evidence of Mr. Zeitlin's alleged wrongdoing would be found at the La Madre residence or the Charleston office in August of 2023. Lacking credible and timely factual observations, the affidavit primarily relies on unfounded boilerplate opinions by SA Palermo about the behavior and characteristics of criminals and fraudsters in general, without meaningful tailoring to Mr. Zeitlin's

circumstances. All told, the information in the affidavit fails to supply a substantial basis to find

probable cause for the requested search warrants.

## II.     Particularity.

### A.     General Rules.

To be valid under the Fourth Amendment, a search warrant must "particularly describe[ ]

the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV.

> The Second Circuit has recognized that, to comport with the Fourth Amendment's
> particularity requirement, a warrant must satisfy three criteria. First, it must identify
> the specific offense for which the police have established probable cause. Second,
> the warrant is required to describe the place to be searched. And third, it must
> specify the items to be seized by their relation to designated crimes.

*United States v. Wey*, 256 F.Supp.3d 355, 380 (S.D.N.Y. 2017) (citations and quotation marks

omitted). In considering particularity, courts in this District have identified two primary factors:

> First, warrants are generally found to be insufficiently particular where nothing on
> the face of the warrant tells the searching officers for what crime the search is being
> undertaken. Second, warrants will frequently lack particularity where they include
> a general, catch-all paragraph or provision, often one authorizing the seizure of any
> or all records of a particular type.

*United States v. Zemlyansky*, 945 F.Supp.2d 438, 453 (S.D.N.Y. 2013) (quoting *United States v.*

*Vilar*, No. S305CR621KMK, 2007 WL 1075041, at *22 (S.D.N.Y. Apr. 4, 2007)).

Apart from these primary factors, other "circumstance-specific considerations . . . may bear

on whether a given warrant lacks particularity." *Wey*, 256 F.Supp.3d at 381 (quotation marks

omitted). "Many courts, for example, have found warrants for the seizure of business records

constitutionally deficient where they imposed too wide a time frame or failed to include one

altogether." *Id.* (quotation marks and brackets omitted).

The Fourth Amendment's particularity requirement bars "agents . . . from executing

warrants that purport to authorize 'a general, exploratory rummaging in a person's belongings.'"

*Zemlyansky*, 945 F.Supp.2d at 452 (quoting *Coolidge v. New Hampshire,* 403 U.S. 443, 467, 91

S.Ct. 2022 (1971)). "[T]he particularity requirement makes general searches impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant." *United States v. Buck*, 813 F.2d 588, 590 (2d Cir. 1987) (quotation marks and ellipsis omitted). In this regard, a warrant is defective if it "fail[s] to link the items to be searched and seized to the suspected criminal activity . . . and thereby lack[s] meaningful parameters on an otherwise limitless search." *United States v. Rosa*, 626 F.3d 56, 62 (2d Cir. 2010). A warrant also must define its own terms of art, such as "Target Subjects," lest the officers be left to supply these definitions and thereby "enjoy[ ] impermissibly broad discretion." *Zemlyansky*, 945 F. Supp. 2d at 459. Expansive and insufficiently particularized warrants "are – in function if not in form – general warrants." *Wey*, 256 F. Supp. 3d at 386.

Warrants to seize documents and electronically stored information deserve particular attention. "There is . . . a serious risk that every warrant for electronic information will become, in effect, a general warrant, rendering the Fourth Amendment irrelevant. This threat demands a heightened sensitivity to the particularity requirement in the context of digital searches." *United States v. Galpin*, 720 F.3d 436, 447 (2d Cir. 2013) (quotation marks and citation omitted). Offense-related limitations are necessary for document warrants, because otherwise, "insofar as any document located within a home or office at least arguably pertains in some way to the occupant or owner of the premises," any such document would be subject to seizure. *Wey*, 256 F.Supp.3d at 386.

**B.    The search warrants for the La Madre residence and Charleston office violate the Fourth Amendment's particularity requirement.**

Here, apart from the question of probable cause in SA Palermo's affidavit, the search warrants for the La Madre residence and Charleston office are facially invalid, because they did

not particularly describe the evidence to be seized. As a predicate matter, in considering particularity, it is worth noting the substantial similarity between the warrant attachments authorizing broad seizures from the La Madre residence and Charleston office. (Attachment B-1, Attachment B-2)[4]. This similarity connotes general warrants, not particularized warrants. And more importantly, as discussed below, pertinent factors recognized by the Second Circuit and courts in this District point to the same conclusion.

*First*, the warrants do not "identify the specific offense for which the [affidavit] . . . established probable cause." *Galpin*, 720 F.3d at 445. In this regard, the Second Circuit has noted holdings from other Circuits "that even warrants that identify catchall statutory provisions, like the mail fraud or conspiracy statutes, may fail to comply with this aspect of the particularization requirement." *Galpin*, 720 F.3d at 445 n.5. Here, the warrants merely cite and cursorily describe the offenses charged in the indictment without further specificity. (Attachment B-1, ¶ 1, Attachment B-2, ¶ 1). For instance, the warrants do not explain or limit their search authority to evidence associated with fraud or obstruction related to scripted fundraising calls on behalf of PACs. Instead, the warrants authorize much broader searches.

*Second*, and in a similar vein, the warrants include no timeframe limitation for any of the listed offenses. (Attachment B-1, ¶ 1, Attachment B-2 ¶ 1). This is especially significant given that the indictment only established probable cause for fraud occurring between about 2017 and 2020 and discrete obstruction occurring in 2022, whereas the search occurred in August of 2023.

---

[4] These two Attachments are identical in the two exhibits and are found in the Application papers at the following Bates Numbers: USAO_00106748-USAO_00106753 and USAO_00106809-USAO_00106814. Each of the two warrants respectively included these attachments with the Warrant. Attachment B-2 relates to the Charleston Boulevard location and is found at Exhibit B, Bates Nos: USAO_00106770-USAO_00106772. Attachment B-1 relates to the La Madre Way location and is found at Exhibit C, Bates Nos: USAO_00106832-USAO_00106834. Throughout this brief, these attachments will be referred to as Attachment B-1 and Attachment B-2.

Combined with its insufficient descriptions of the offenses themselves, the warrant's lack of a timeframe limitation affords inadequate guidance—and therefore overly broad discretion – to the officers executing the warrant.

*Third*, the warrants contain numerous "catch-all paragraph[s] or provision[s] . . . authorizing the seizure of any or all records of a particular type." *Zemlyansky*, 945 F.Supp.2d at 453. Indeed, the warrants primarily consist of such paragraphs, which are too numerous to conveniently summarize here. (Attachment B-1, ¶ 1). However, examples include:

- "Evidence concerning occupancy or ownership of [the La Madre residence] by Richard Zeitlin, including without limitation" various specified items, (Attachment B-1, ¶ 1(a));

- "Evidence concerning occupancy or ownership of [the Charleston office], including without limitation" various specified items, (Attachment B-2, ¶ 1(a));

- "Materials, including documents, records, and communications, concerning potential, former, and current clients of call centers associated with and/or operated by [Mr. Zeitlin]," (Attachment B-1, ¶ 1(c), Attachment B-2, ¶ 1(c));

- "Materials relating to regulations, rules, and state and federal laws, for telemarketers, call centers, solicitations, charities, PACs, and financial transfers," (Attachment B-1, ¶ 1(l), Attachment B-2, ¶ 1(l)); and

- "Any and all electronic devices . . . used by or that appears to have been used by Zeitlin and current or former employees and/or associates of Zeitlin, and/or in connection with call centers and/or entities associated with and/or operated with Zeitlin," (Attachment B-2, ¶ 1(u)).

These descriptions (and others) authorize capacious seizures from both the La Madre residence and the Charleston office, without meaningfully linking "the items to be searched and seized to

the suspected criminal activity." *Rosa*, 626 F.3d at 62. For instance, virtually anything in the La Madre residence or the Charleston office would be evidence of its occupancy or ownership and therefore subject to seizure. *See Wey*, 256 F.Supp.3d at 386. In this regard, the warrants do not adequately limit the discretion of the executing officers.

*Fourth*, the warrants do not define certain pertinent terms, which similarly leaves executing officers to exercise "impermissibly broad discretion." *Zemlyansky*, 945 F.Supp.2d at 459. Specifically, the warrants authorize the seizure of "Materials concerning the identities and roles of those who have committed the Subject Offenses (the "Subjects") and the victims of the Subject Offenses (the "Victims"), and communications with and among Subjects, Victims, and potential witnesses to the Subject Offenses." (Attachment B-1, ¶ 1(f), Attachment B-2, ¶ 1(f)). The warrants also authorize the seizure of "Materials reflecting or relating to the assets, income, liabilities, and/or expenditures of Richard Zeitlin and the Subjects . . . ." (Attachment B-1, ¶ 1(n), Attachment B-2, ¶ 1(n)). Yet the warrants do not otherwise identify these Subjects and Victims. Especially because the warrants' descriptions of the alleged offenses are generalized and not temporally limited, their lack of particular definitions leaves officers to make their own determinations about who may be Subjects or Victims, essentially defining the extent of their own seizure authority.

In sum, under the pertinent factors that apply in this Circuit and this District, the search warrants' descriptions are insufficiently particular under the Fourth Amendment. For practical purposes, they authorize "general, exploratory rummaging." *Coolidge*, 403 U.S. at 467, 91 S.Ct. 2022. Accordingly, they are facially invalid.

Two concluding observations on the issue of particularity are pertinent. First, "a court may construe a warrant with reference to a supporting application or affidavit only if the warrant uses appropriate words of incorporation, and if the supporting document accompanies the warrant."

*Wey*, 256 F.Supp.3d at 381-82 (quotation marks omitted). In this vein, "for an attached affidavit properly to be incorporated into a warrant, the warrant must contain deliberate and unequivocal language of incorporation." *Id.* at 382 (quotation marks omitted). Here, the search warrants for the La Madre residence and Charleston office contain no such language, so they may not be construed with reference to SA Palermo's affidavit as a defense to their lack of particularity.

Second, "[u]nder certain, limited circumstances, a warrant lacking in particularity can be saved by the so-called 'all records exception.' Under that exception, all records of a business may be seized if there is probable cause to believe that the entire operation is permeated with fraud." *Zemlyansky*, 945 F.Supp.2d at 460 (some quotation marks omitted). "[W]hile the probable cause showing necessary to invoke the all-records exception is always substantial, the Government faces an even higher hurdle than usual in attempting to apply it to [a residential search warrant]." *Wey*, 256 F.Supp.3d at 389. For the exception to apply, "the Government must have provided the magistrate judge with sufficient probable cause to believe that the *entire* business operation is a scam." *Zemlyansky*, 945 F. Supp. 2d at 461 (quotation marks and brackets omitted).

Here, if the government should attempt to invoke the all-records exception in its response to Mr. Zeitlin's motion to suppress, the defense would address the issue as necessary in a reply. However, SA Palermo's affidavit and the incorporated indictment do not establish that Mr. Zeitlin's entire telemarketing operation was a scam or permeated with fraud. Accordingly, the all-records exception should not apply to save the search warrants from their lack of particularity.

III.     **Overbreadth.**

A.      **General Rules.**

"In determining whether a warrant is overbroad, courts must focus on whether there exists probable cause to support the breadth of the search that was authorized." *Zemlyansky*, 945 F.Supp.2d at 464.

> Although somewhat similar in focus, particularity and overbreadth are two distinct legal issues. While the particularity analysis concerns whether the warrant enables the executing officer to ascertain and identify with reasonable certainty those items that the magistrate has authorized him to seize, the overbreadth inquiry asks whether the warrant authorized the search and seizure of items as to which there is no probable cause. Thus, a warrant is overbroad if its description of the objects to be seized is broader than can be justified by the probable cause upon which the warrant is based.

*United States v. Lustyik*, 57 F.Supp.3d 213, 228 (S.D.N.Y. 2014) (quotation marks, citations, brackets, and ellipsis omitted).

B.      **The search warrants for the La Madre residence and Charleston office are overbroad.**

Here, assuming *arguendo* SA Palermo's affidavit establishes probable cause to search the La Madre residence or Charleston office, the resulting warrants nevertheless are facially overbroad, because they authorize sweeping seizures well beyond the scope of any alleged criminality. Similar considerations apply here as in the context of particularity, discussed above. For instance, although the indictment's allegations are limited to specific time periods and particularized theories of fundraising wire fraud and obstruction, the warrants authorize seizures based on unspecific statutory references without temporal limitations. Thus, the warrants would authorize evidentiary seizures related to any species of wire fraud, or at minimum, any species of wire fraud related to telemarketing, whereas the affidavit's showing of probable cause is much narrower.

The warrants' treatments of electronic devices are another example of overbreadth. The Charleston office warrant essentially authorizes the seizure of any electronic device found on the premises. (Attachment B-2, ¶ 1(u).) Yet the affidavit only identifies one such device specifically, *i.e.*, "a black and silver computer monitor and tower" used by Employee-3. (Affidavit, ¶ 23(d)(iv).) And even assuming *arguendo* the affidavit establishes probable cause to seize additional devices, *e.g.*, all devices used by ███████████████████ the warrant's description remains much broader. Similarly, the La Madre residence warrant authorizes the seizure of "[a]ny and all electronic devices associated with or that appear to be associated with" a specified phone number of Mr. Zeitlin's. (Attachment B-1, ¶ 1(v),) As a practical matter, it is unclear how executing agents would make this determination when executing the warrant. But in any event, the affidavit generally identifies and describes such devices as being activated over the course of 14 years, between 2010 and 2023, without otherwise linking such devices to Mr. Zeitlin's alleged wrongdoing. (Affidavit, ¶ 18/) By authorizing their blanket seizure, the warrant exceeded any probable cause supplied by the affidavit.

In short, the warrants for the La Madre residence and Charleston office authorize seizures exceeding the scope of any probable cause supplied by SA Palermo's affidavit. This violates the Fourth Amendment.

## IV. Good Faith.

In its response to his motion to suppress, Mr. Zeitlin anticipates the government may invoke the so-called "good faith" exception. *See generally United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405 (1984).

> To claim the benefits of the good faith exception, however, the officer's reliance on the duly issued warrant must be objectively reasonable. Accordingly, the good faith exception cannot shield even an officer who relies on a duly issued warrant in at least four circumstances: (1) where the issuing magistrate has been knowingly

misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable.

*Raymonda*, 780 F.3d at 118 (quotation marks and citation omitted). "The burden is on the government to demonstrate the objective reasonableness of the officers' good faith reliance on an invalidated warrant." *Wey*, 256 F.Supp.3d at 395-96 (quotation marks omitted).

Given this burden, Mr. Zeitlin will wait to address any good-faith arguments by the government in a future reply. However, for reasons otherwise argued above, the good faith exception should apply in this case, because SA Palermo's affidavit was so lacking indicia of probable cause as to reliance upon it unreasonable, and because the warrants were obviously facially deficient.

**CONCLUSION**

The search warrants for Mr. Zeitlin's La Madre residence and the Charleston office should never have been issued. If deemed valid, they essentially would stand for the premise that the government may search the homes and businesses of suspected criminals—or at least suspected criminals who are business executives—based on nothing more than unparticularized opinions about human behavior, much of it noncriminal. Businesses keep records. People use electronic devices. People may work at home. But for the Fourth Amendment to retain its meaning, such circumstances cannot be sufficient grounds for search warrants. Accordingly, and for the reasons argued above, Mr. Zeitlin respectfully prays the Court grant his motion to suppress all evidence seized in execution of the search warrants issued in the District of Nevada for the La Madre residence and the Charleston office.

Dated: November 30, 2023.

**THE BERNHOFT LAW FIRM, S.C.**
Attorneys for Defendant Richard Zeitlin

_____
Robert G. Bernhoft, Esq.
Appearing *pro hac vice*
1402 E. Cesar Chavez Street
Austin, Texas 78702
Telephone: (512) 582-2100
Facsimile: (512) 373-3159
rgbernhoft@bernhoftlaw.com