UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-v.-

RICHARD ZEITLIN,

                    Defendant.

23 Cr. 419 (LAK)

THE GOVERNMENT'S OMNIBUS MEMORANDUM OF LAW
IN OPPOSITION TO THE DEFENDANT'S PRETRIAL MOTIONS TO DISMISS THE
INDICTMENT, FOR A BILL OF PARTICULARS, AND TO SUPPRESS EVIDENCE
SEIZED FROM CERTAIN PREMISES

[REDACTED COPY]

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Jane Kim
Daniel H. Wolf
Rebecca Dell
Assistant United States Attorneys
      *Of Counsel*

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

RELEVANT BACKGROUND ............................................................................................... 1

I.   The Indictment ............................................................................................................. 1

II.  The Government's Discovery Productions and Other Materials Provided to the
     Defendant ..................................................................................................................... 3

III. The Premises Warrants and the Device Warrant ......................................................... 4

DISCUSSION ...................................................................................................................... 10

I.   THE DEFENDANT'S MOTION TO DISMISS COUNTS ONE AND TWO OF THE
     INDICTMENT SHOULD BE DENIED .................................................................... 10

     A.  Applicable Law ................................................................................................... 11

         1.  Sufficiency .................................................................................................. 11

         2.  Duplicity ..................................................................................................... 12

     B.  Discussion ........................................................................................................... 13

         1.  The Indictment Properly Alleges the Elements of Counts One and Two ... 13

         2.  Count Two Is Not Duplicitous and the Defendant Is Not Prejudiced ....... 22

II.  THE DEFENDANT'S MOTION FOR A BILL OF PARTICULARS SHOULD
     BE DENIED .............................................................................................................. 27

     A.  Applicable Law ................................................................................................... 28

     B.  Discussion ........................................................................................................... 30

III. THE DEFENDANT'S MOTION TO SUPPRESS EVIDENCE SEIZED
     FROM HIS RESIDENCE AND BUSINESS PROPERTY SHOULD BE DENIED ....... 33

     A.  Applicable Law ................................................................................................... 33

         1.  Probable Cause ........................................................................................... 33

         2.  Particularity ................................................................................................ 34

         3.  Overbreadth ................................................................................................ 36

         4.  The Good Faith Exception .......................................................................... 37

     B.  Discussion ........................................................................................................... 38

         1.  The Search Warrants Were Supported By Probable Cause ....................... 38

         2.  The Search Warrants Were Sufficiently Particularized ............................. 48

         3.  The Search Warrants Were Not Overbroad ............................................... 50

         4.  The Good Faith Exception Applies ............................................................ 54

CONCLUSION .................................................................................................................... 55

## <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*Andresen v. Maryland*,
   427 U.S. 463 (1976) ...................................................................................... 34

*Boyce Motor Lines v. United States*,
   342 U.S. 337 ................................................................................................... 11

*Ciminelli v. United States*,
   143 S. Ct. 1121 (2023) .................................................................................... 16

*Franks v. Delaware*,
   438 U.S. 154 (1978) ........................................................................................ 53

*Groh v. Ramirez*,
   540 U.S. 551 (2004) ........................................................................................ 35

*Hamling v. United States*,
   418 U.S. 87 (1974) .................................................................................... 22, 26

*Herring v. United States*,
   555 U.S. 135 (2009) ........................................................................................ 37

*Hudson v. Michigan*,
   547 U.S. 586 (2006) .................................................................................. 36, 37

*Illinois v. Gates*,
   462 U.S. 213 (1983) ............................................................................ 33, 43, 52

*Illinois, ex rel. Madigan v. Telemarketing Associates, Inc.*,
   538 U.S. 600 (2003) ........................................................................................ 15

*Neder v. United States*,
   527 U.S. 1 (1999) ............................................................................................ 19

*Rivera v. United States*,
   928 F.2d 592 (2d Cir. 1991) ........................................................................... 34

*United States v. Alacri*,
   968 F.2d 1512 (2d Cir. 1992) ......................................................................... 12

*United States v. Alfonso*,
   143 F.3d 772 (2d Cir. 1998) ...................................................................... 11, 25

*United States v. Avenatti*,
   432 F. Supp. 3d 354 (S.D.N.Y. 2020) ............................................................ 11

*United States v. Bankman-Fried*,
   No. 22 Cr. 673 (LAK), 2023 WL 4194773 (S.D.N.Y. June 27, 2023) ................. 18

*United States v. Bowen*,
   689 F. Supp. 2d 675 (S.D.N.Y. 2010) ............................................................ 42

*United States v. Brewster*,
   No. 19 Cr. 833 (SHS), 2021 WL 3423521 (S.D.N.Y. Aug. 5, 2021) .................. 20

*United States v. Buck*,
   813 F.2d 588 (2d Cir. 1987) ........................................................................... 49

*United States v. Chen*,
    378 F.3d 151 (2d Cir. 2004)..................................................................................... 29

*United States v. Cioffi*,
    668 F. Supp. 2d 385 (E.D.N.Y. 2009) ............................................................... 35, 49

*United States v. Clark*,
    638 F.3d 89 (2d Cir. 2011).................................................................................. 37, 52

*United States v. Cohen*,
    518 F.2d 727 (2d Cir. 1975).................................................................................... 28

*United States v. Culligan*,
    No. 04 Cr. 305A (RJA), 2007 WL 3232484 (W.D.N.Y. Nov. 1, 2007)................... 20

*United States v. D'Amico*,
    734 F. Supp. 2d 321 (S.D.N.Y. 2010) .................................................................... 49

*United States v. Dawkins*,
    999 F.3d 767 (2d Cir. 2021).................................................................................... 11

*United States v. De La Pava*,
    268 F.3d 157 (2d Cir. 2001)............................................................................. 11, 12

*United States v. DiScala*,
    No. 14 Cr. 399, 2018 WL 1187394 (E.D.N.Y. Mar. 6, 2018) ................................ 23

*United States v. Donald*,
    417 F. App'x 41 (2d Cir. 2011) ........................................................................ 42, 45

*United States v. Dupree*,
    781 F. Supp. 2d 116 (E.D.N.Y. 2011) ............................................................... 36, 50

*United States v. Earls*,
    No. 03 CR. 0364 (NRB), 2004 WL 350725 (S.D.N.Y. Feb. 25, 2004).................... 31

*United States v. Elkorany*,
    No. 20 Cr. 437 (NRB), 2021 WL 3668086 (S.D.N.Y. Aug. 17, 2021) ............................ passim

*United States v. Facciolo*,
    753 F. Supp. 449 (S.D.N.Y. 1990)........................................................................... 27

*United States v. Fama*,
    758 F.2d 834 (2d Cir. 1985).................................................................................... 45

*United States v. Farmer*,
    370 F.3d 435 (4th Cir. 2004) .................................................................................. 44

*United States v. Feola*,
    651 F. Supp. 1068 (S.D.N.Y. 1987).......................................................................... 28

*United States v. Ferrarini*,
    9 F. Supp. 2d 284 (S.D.N.Y. 1998).......................................................................... 30

*United States v. Fishbein*,
    No. 21 Cr. 296 (PAC), 2022 WL 1188424 (S.D.N.Y. Apr. 21, 2022) ..................... 18

*United States v. Gagnon*,
    373 F.3d 230 (2d Cir. 2004)..................................................................................... 46

*United States v. Gall*,
    No. 95 Cr.  (AHN), 1996 WL 684404 (D. Conn. Aug. 12, 1996) ......................... 31

*United States v. Galpin*,
    720 F.3d 436 (2d Cir. 2013)................................................................... 35, 36, 37, 53

*United States v. George*,
975 F.2d 72 (2d Cir. 1992) ............................................................................ 48, 49

*United States v. Gatto*,
295 F. Supp. 3d 336 (S.D.N.Y. 2018) ...................................................................... 21

*United States v. Giovanelli*,
No. S1 01 Cr. 749 (JSR), 2003 WL 21878770 (S.D.N.Y. Aug. 8, 2002) ............................... 42

*United States v. Goldberg*,
756 F.2d 949 (2d Cir. 1985) ......................................................................... 11, 21

*United States v. Gottlieb*,
493 F.2d 987 (2d Cir. 1974) ............................................................................... 28

*United States v. Guzman*,
No. S5 97 Cr. (SAS), 1998 WL 61850 (S.D.N.Y. Feb. 13, 1998) ........................................ 46

*United States v. Hadden*,
20 Cr. 468 (RMB) ............................................................................................ 47

*United States v. Henry*,
861 F. Supp. 1190 (S.D.N.Y. 1994) .................................................................... 27, 29

*United States v. Hernandez*,
No. 09 Cr. 625 (HB), 2010 WL 26544 (S.D.N.Y. Jan. 6, 2010) .......................................... 36

*United States v. Hickey*,
16 F. Supp. 2d 223 (E.D.N.Y. 1998) ......................................................................... 49

*United States v. Jacobson*,
4 F. Supp. 3d 515 (E.D.N.Y. 2014) .................................................................... 36, 50

*United States v. Jimenez*,
824 F. Supp. 351 (S.D.N.Y. 1993) ........................................................................... 29

*United Sates v. Klein*,
476 F.3d 111 (2d Cir. 2007) .................................................................................. 19

*United States v. Leon*,
468 U.S. 897 (1984) ................................................................................. 37, 52, 53

*United States v. Levy*,
No. S5 11 Cr. 62 (PAC), 2013 WL 664712 (S.D.N.Y. 2013) .......................................... 36, 49

*United States v. Lustyik*,
57 F. Supp. 3d 213 (S.D.N.Y. 2014) .................................................................. 36, 49

*United States v. Mahabub*,
No. 13 Cr. 908 (AJN), 2014 WL 4243657 (S.D.N.Y. Aug. 26, 2014) .................................... 29

*United States v. Mandell*,
710 F. Supp. 2d 368 (S.D.N.Y. 2010) ....................................................................... 32

*United States v. Mankani*,
738 F.2d 538 (2d Cir. 1984) ................................................................................. 34

*United States v. Margiotta*,
646 F.2d 729 (2d Cir. 1981) ................................................................... 22, 23, 24, 25

*United States v. Margiotta*,
662 F.2d 131 (2d Cir. 1981) ................................................................................. 23

*United States v. Martin*,
426 F.3d 68 (2d Cir. 2005) .................................................................................. 42

iii

*United States v. Moloney,*
   287 F.3d 236 (2d Cir. 2002) ................................................................................ 22

*United States v. Morgan,*
   690 F. Supp. 2d 274 (S.D.N.Y. 2010) ................................................................ 42

*United States v. Motta,*
   No. 15 Cr. 173 (NSR), 2015 WL 4692462 (S.D.N.Y. Aug. 6, 2015) ................... 14

*United States v. Murgio,*
   209 F. Supp. 3d 698 (S.D.N.Y. 2016) ................................................................ 21

*United States v. Muyet,*
   945 F. Supp. 586 (S.D.N.Y. 1996) ..................................................................... 28

*United States v. Olmeda,*
   461 F.3d 271 (2d Cir. 2006) .......................................................................... 22, 26

*United States v. Pacheco,*
   902 F. Supp. 469 (S.D.N.Y. 1995) ..................................................................... 28

*United States v. Percoco,*
   No. 16 Cr. 776 (VEC), 2017 WL 6314146 (S.D.N.Y. Dec. 11, 2017) ................. 32

*United States v. Perez,*
   575 F.3d 164 (2d Cir. 2009) ............................................................................... 22

*United States v. Purcell,*
   No. 18 Cr. 81 (DLC), 2018 WL 4378453 (S.D.N.Y. Sept. 13, 2018) ........ 34, 37, 53

*United States v. Purcell,*
   967 F.3d 159, 179 (2d Cir. 2020) ....................................................................... 37

*United States v. Rajaratnam,*
   No. 13 Cr. 211 (NRB), 2014 WL 1554078 (S.D.N.Y. Apr. 17, 2014) ................. 26

*United States v. Ramirez,*
   609 F.3d 495 (2d Cir. 2010) ............................................................................... 32

*United States v. Raymonda,*
   780 F.3d 105 (2d Cir. 2015) .......................................................................... 33, 34, 44

*United States v. Regan,*
   706 F. Supp. 2d 1102 (S.D.N.Y. 1989) .............................................................. 35

*United States v. Regent Office Supply Co.,*
   421 F.2d 1174 (2d Cir. 1970) ............................................................................. 17

*United States v. Riccio,*
   43 F. Supp. 3d 301 (S.D.N.Y. 2014) .................................................................. 18

*United States v. Rosa,*
   626 F.3d 56 (2d Cir. 2010) .......................................................................... 35, 37, 53

*United States v. Ross,*
   456 U.S. 798 (1982) ........................................................................................... 52

*United States v. Runner,*
   No. 18 Cr. 578 (JS), 2023 WL 3727532 (E.D.N.Y. May 30, 2023) ..................... 18

*United States v. Salazar,*
   485 F.2d 1272 (2d Cir. 1973) ............................................................................. 28

*United States v. Samsonov,*
   No. 07 Cr. 1198 (CM), 2009 WL 176721 (S.D.N.Y. Jan. 23, 2009) ............... 29, 31

*United States v. Scully,*
   108 F. Supp. 3d 59 (E.D.N.Y. 2015) ............................................................... 35

*United States v. Shellef,*
   507 F.3d 82 (2d Cir. 2007)............................................................................... 17

*United States v. Sindone,*
   No. 01 Cr. 517 (MBM), 2002 WL 48604 (S.D.N.Y. Jan. 14, 2002) ................ 30

*United States v. Singh,*
   390 F.3d 168 (2d Cir. 2004).................................................................... 41, 44

*United States v. Stavroulakis,*
   952 F.2d 686 (2d Cir. 1992)..................................................................... 11, 13

*United States v. Stewart,*
   151 F. Supp. 2d 572 (E.D. Pa. 2001) .............................................................. 20

*United States v. Stringer,*
   730 F.3d 120 (2d Cir. 2013)..................................................................... 12, 13

*United States v. Sturdivant,*
   244 F.3d 71 (2d Cir. 2001)....................................................................... 12, 25

*United States v. Torres,*
   901 F.2d 205 (2d Cir. 1990)..................................................................... 29, 31

*United States v. Travisano,*
   724 F.2d 341 (2d Cir. 1983)............................................................................ 33

*United States v. Triana-Mateus,*
   No. 98 Cr.  (SWK), 2002 WL 562649 (S.D.N.Y. Apr. 15, 2002) .................. 27

*United States v. Tutino,*
   883 F.2d 1125 (2d Cir. 1989)................................................................... 12, 22

*United States v. Ulbricht,*
   858 F.3d 71 (2d Cir. 2017).......................................................... 34, 35, 47

*United States v. Ventresca,*
   380 U.S. 102 (1965)......................................................................................... 34

*United States v. Vilar,*
   729 F.3d 62 (2d Cir. 2013).............................................................................. 12

*United States v. Wagner,*
   989 F.2d 69 (2d Cir. 1993)....................................................... 33, 34, 38

*United States v. Walsh,*
   194 F.3d 37 (2d Cir. 1999).............................................................................. 27

*United States v. Weber,*
   923 F.2d 1338 (9th Cir. 1990) ................................................................. 45, 46

*United States v. Wedd,*
   993 F.3d 104 (2d Cir. 2021)............................................................................ 11

*United States v. Wey,*
   No. 15 Cr. 611 (AJN), 2017 WL 237651 (S.D.N.Y. Jan. 18, 2017)................ 18, 32

*United States v. Zandstra,*
   No. 00 Cr. 209 (RWS), 2000 WL 1368050 (S.D.N.Y. Sept. 20, 2000) .................. 14

*United States v. Zemlyansky,*
   945 F. Supp. 2d 438 (S.D.N.Y. 2013)............................................................. 48

v

*Walcyk v. Rio*,
  496 F.3d 139 (2d Cir. 2007)........................................................................................... 33
*Wong Tai v. United States*,
  273 U.S. 77 (1927)...................................................................................................... 28
*United States v. Taylor*,
  707 F. Supp. 696 (S.D.N.Y. 1989)............................................................................ 31

**Statutes**

18 U.S.C. § 1343 ........................................................................................................... 1, 13
18 U.S.C. § 1349 ........................................................................................................... 1, 13
18 U.S.C. § 1512(c) ............................................................................................................ 1

**Rules**

Fed. R. Crim. P 7(c)(1) ............................................................................................... 10, 11
Fed. R. Crim. P. 12(b)(3)(B) ............................................................................................ 10
Fed. R. Crim. P. 41(e)(2)(B) ............................................................................................ 51

## PRELIMINARY STATEMENT

The Government respectfully submits this omnibus memorandum of law in opposition to the defendant's three pretrial motions, which should be denied in their entirety. <u>First</u>, the defendant's motion to dismiss Counts One and Two of Indictment 23 Cr. 419 (LAK) (Dkt. 1 (the "Indictment")) should be denied because the Indictment properly alleges the elements of the charged offenses and Count Two is not duplicitous of Count One. <u>Second</u>, the defendant's motion for a bill of particulars should be denied as neither warranted nor necessary because the Government has already provided the defendant with ample notice of the crimes with which he is charged, including through the 12-page speaking Indictment and several detailed search warrant affidavits. <u>Third</u>, the defendant's motion to suppress evidence seized from his residence and business property pursuant to search warrants (the "Premises Warrants" or the "Warrants") should be denied because two federal judges had a "substantial basis" to conclude that the Warrants were supported by probable cause, sufficiently particular, and not overbroad under the Fourth Amendment. And even if the Warrants had defects, the good faith exception applies.[1]

## RELEVANT BACKGROUND

### I.    The Indictment

On August 15, 2023, a grand jury sitting in the Southern District of New York returned the Indictment, charging the defendant in four counts: (1) conspiracy to commit wire fraud in connection with telemarking, in violation of 18 U.S.C. §§ 1349 and 2326 (Count One); (2) wire

---

[1] The Government respectfully submits two copies of this memorandum of law and its attached Exhibit 1 (described below), and respectfully requests that the unredacted copies be filed under seal and the copies with redactions to witness statements be filed publicly. Witness statements have been redacted herein to protect the identities of witness in light of the defendant's obstructive conduct, including as charged in Counts Three and Four of the Indictment.

fraud in connection with telemarketing, in violation of 18 U.S.C. §§ 1343 and 2326 (Count Two); (3) conspiracy to obstruct justice, in violation of 18 U.S.C. §§ 1512(c) and 1512(k) (Count Three); and (4) obstruction of justice, in violation of 18 U.S.C. § 1512(c) (Count Four).  (Indictment ¶¶ 16-25).  In addition to its statutory allegations, the 12-page Indictment included detailed factual allegations relating to the defendant's fraud and obstruction of justice.

Counts One and Two, which respectively charge the defendant with conspiracy and substantive telemarketing wire fraud, are based on the defendant's operation of a telemarketing call center business (the "Zeitlin Call Centers") that defrauded donors from at least in or about 2017 through at least in or about 2020, while soliciting money for certain political action committees ("PACs").  (*Id*. ¶¶ 16-20).  As alleged, the defendant and others carried out a scheme to defraud donors through at least three kinds of false and misleading representations to donors: that the donors were donating money to (1) a charity or direct-services organization rather than a PAC; (2) an organization, such as a charity or PAC, when 100 percent of their donations went to the Zeitlin Call Centers; and (3) support a "new" or "special" fundraising drive that was not, in fact, underway.  (*Id*. ¶¶ 7-12).  The defendant, moreover, engaged in a variety of efforts to conceal his fraud from detection, including through the use of numerous entities that he controlled; the creation of fraudulent invoices; and the making of false statements in civil litigation.  (*Id*. ¶ 13).

Counts Three and Four, which respectively charge the defendant with conspiracy and substantive obstruction of justice, are based on the defendant's efforts to obstruct the Government's investigation of his telemarking fraud.  (*Id*. ¶¶ 21-25).  Counts Three and Four relate to the defendant's efforts, in or about May 2022, to obstruct a federal grand jury investigation in this District of the defendant's scheme to defraud.  (*Id*. at ¶¶ 14-15, 21-25).  As alleged, after the

defendant learned of certain subpoenas issued as part of the grand jury investigation, he instructed his employee and co-conspirator ("CC-1") to destroy records and to direct others to do the same. (*Id*. at 21-25).

On August 17, 2023, the defendant was arrested in the District of Nevada and ordered detained pending trial.  On the same day, the Indictment was unsealed.  (Dkt. 2).

## II.    The Government's Discovery Productions and Other Materials Provided to the Defendant

Since September 18, 2023, the Government has made ten discovery productions to the defense, comprising more than a million pages, with each production accompanied by indices and organized by topic in electronic folders.  The discovery has included, among other items: search warrants and their corresponding applications, including affidavits setting forth the Government's view of the facts in a detailed narrative; subpoena returns from hundreds of providers, individuals, and entities; call scripts, call recordings, and invoices created by the Zeitlin Call Centers; electronic communications, including emails and Skype messages involving the defendant and/or employees, clients, and associates of the Zeitlin Call Centers; full data extractions and corresponding Cellebrite reports and Axiom cases for 26 devices seized from the defendant's residence and business property (the "Devices"); recorded calls, including calls involving the defendant; the defendant's prison calls; law enforcement reports and records; photographs; PAC websites, mailers, and records; materials from the Federal Election Commission; and the defendant's sworn statements made in connection with two separate federal civil proceedings.

The Government has also produced, as a courtesy to the defendant and to assist with his preparation for trial, excerpts of numerous witness statements on an attorney's eyes only basis.

3

The Government intends to provide the remainder of witness statements, including statements pursuant to the Government's Jencks Act obligations, in advance of trial.

Aside from discovery, the Government filed a detailed written submission in opposition to the defendant's motion for pretrial release.   (Dkt. 15).  That submission contained multiple, single-space pages describing the defendant's fraud schemes and efforts to obstruct justice, and setting forth specific examples of the defendant's lies and obstructive efforts.  (*Id*.).

## III.    The Premises Warrants and the Device Warrant

The day after the Indictment was returned, on or about August 16, 2023, the Honorable Cam Ferenbach, United States Magistrate Judge for the District of Nevada, issued two search warrants: one to search the defendant's residence, located at 7915 West La Madre Way in Las Vegas, Nevada (the "Premises-1 Warrant"); and one to search the defendant's business property, located at 1835 East Charleston Boulevard in Las Vegas, Nevada (the "Premises-2 Warrant, and together with the Premises-1 Warrant, the "Premises Warrants" or the "Warrants").  The Premises Warrants were supported by an affidavit (the "Premises Affidavit" or the "Affidavit") of an experienced FBI Special Agent (the "Agent"), which incorporated and attached the Indictment. (*Id*.).  The Premises Warrants' subject offenses were the same as the offenses charged in the Indictment as described above (the "Subject Offenses").  The next day, on or about August 17, 2023, the FBI arrested the defendant at Premises-1 and executed the Premises Warrants.  Pursuant to the Premises Warrants, the FBI searched the defendant's residence and business property and seized, among other things, documents and records, and various electronic devices such as computers and phones (the "Devices").  Consistent with the Warrants, the FBI transported the Devices to this District and applied for warrants to search them.

On or about September 15, 2023, the Honorable Sarah L. Cave, United States Magistrate Judge for the Southern District of New York, issued a search warrant (the "Device Warrant") authorizing the search of 29 electronic devices (*i.e.*, the Devices) seized pursuant to the Premises Warrants.  (Ex. 1).  The application for the Device Warrant included a second affidavit of the Agent (the "Device Affidavit") and attached and incorporated the Indictment, the Premises Warrants, and the application in support of the Premises Warrants, including the Premises Affidavit.  (*Id.*).[2]

The Premises Affidavit set forth the following facts, among others:

- The defendant participated in a complex fraud scheme involving a multimillion-dollar call center business he had owned and operated since in or about 1994 (*i.e.*, the Zeitlin Call Centers), numerous PACs, numerous entities, various employees, and numerous calls to numerous donors and potential donors.  (Aff. ¶ 8(b); Indictment ¶¶ 1-13).

- The defendant owned and/or controlled various entities in operating the Zeitlin Call Centers, including: Courtesy Call, Donor Relations, Unified Data Services, a/k/a "Cloud Data Services," Compliance Consultants, a/k/a "American PCI," American Technology Services, a/k/a "Unlimited Technical Support," TPFE, Advanced Telephony Consultants, a/k/a "Advanced TCI," a/k/a "ATC," Cloud Data Services, LAV Services, EYP Consultants, Wired4Data, and Standard Data Services.  (Aff. ¶¶ 9(a)-(b); Indictment ¶¶ 4, 13(a), (b)).

- From at least in or about 2017 through at least in or about 2020, the defendant used the Zeitlin Call Centers to defraud numerous donors and potential donors by providing misleading and false information about how the donors' money would be spent and the nature of the organizations to which they were giving.  For example, the defendant directed his employees to make calls on behalf of certain PACs that falsely portrayed the PAC as a charity and/or a direct-services organization rather than as a PAC.  (Aff. ¶ 8(d); Indictment ¶¶ 1, 7-8).

- On or about May 24, 2022, after learning about the Government's investigation, the defendant directed a co-conspirator to delete his communications on a particular electronic messaging

---

[2] References herein are as follows: "Aff." refers to the Premises Affidavit; Attachments refers to the Attachments to the Premises Warrants.  The Device Affidavit and Device Warrant are attached hereto as Exhibit 1.  Exhibit 1 contains two attachments submitted with the Device Affidavit: the Indictment (Exhibit A), and each of the Premises Warrants and their applications (Exhibit B).

application that employees of the Zeitlin Call Centers used to communicate with one another about the call center business.  (Indictment ¶ 15).

Specific to Premises-1:

- The defendant resides at Premises-1, as evidenced by the fact that he listed Premises-1 as his address on business documents; he received mail, including business mail, tax-related documents, bank documents, and utility bills, at Premises-1, including as recently on or about July 12, 2023; and his cellphone was located in the vicinity of Premises-1 a few days before the Premises Warrants were issued (*i.e.*, on August 13, 2023).  (Aff. ¶¶ 15-17)).

- Individuals, like the defendant, who participate in criminal schemes, including schemes to defraud, often maintain documentary evidence of the scheme in their home, and such documentary evidence includes hard-copy and original documents, such as financial records, and are also frequently stored on electronic devices.  (*Id.* ¶ 10).

- The defendant, like many owners, senior executives, and senior managers of businesses, and many of his employees, regularly conducted business relating to the Zeitlin Call Centers remotely and/or from home, including by communicating with co-conspirators and current and former employees by phone.  (*Id.* ¶ 19; Indictment ¶ 14).

- Senior executives and owners of businesses, like the defendant, commonly work from home for a variety of reasons, and commonly possess and retain business-related documents within their home.  In addition, after the height of the COVID-19 pandemic in or about early 2020, many Americans began working more frequently from home or remotely.  (Aff. ¶ 11).

- The defendant has a home office at Premises-1, as evidenced by a photograph created in or about 2022 of the inside of Premises-1 that was posted publicly in connection with a real estate listing for Premises-1 on Zillow.com that is depicted below.  (*Id.* ¶ 20).  The home office appears to have built-in office shelving and a large wooden desk with a computer.



- Grand jury subpoena returns for a financial account controlled by the defendant included two photographs of the defendant appearing to sit in his same home office in Premises-1, depicted below.  (*Id.* ¶ 20 & n.8).





- Individuals who participate in criminal schemes, including schemes to defraud and to destroy evidence, like the defendant, typically utilize electronic devices to further their schemes and to, among other things, communicate with co-conspirators, establish and use of online financial accounts, keep track of co-conspirator information; and keep a record of illegal transactions or criminal proceeds for future reference.  (*Id.* ¶ 12).

- The defendant's employees used one particular messaging application to communicate with one another and to carry out the work of the Zeitlin Call Centers, including the defendant's directives and tasks for the defendant.  (Indictment ¶ 15; Aff. ¶ 23(c)-(d)).

- The defendant used email accounts, encrypted messaging accounts like Signal, and phone calls to run the Zeitlin Call Centers and/or in furtherance of the conspiracy.  The defendant's employees, including at least one co-conspirator, used electronic messages to communicate with other employees of the Zeitlin Call Centers.  (Aff. ¶¶ 8(f), 12(g), 15(b)(i)-(ii), 16, 19; Indictment ¶¶ 2, 14).

- As of in or about August 2023, the defendant's cellphone was associated with several Apple electronic devices, including iPhones, iPads, iPods, TVs, iMAC desktop computers, and Macbook laptops.  (Aff. ¶ 18).

- Cellphones are frequently kept at their owner's residence or on their person.  (*Id.* ¶ 12(h)).

- In or about March 2023, the defendant accessed various websites relating to the offense conduct at issue, including banking websites, a webpage titled "Leaving the US While Indicted," "FEC hotline number," and FEC pages relating to PACs.  (*Id.* ¶ 21).

Specific to Premises-2:

- Up until in or about 2018, the Zeitlin Call Centers, which the defendant created in or about 1994, were headquartered at Premises-2. Premises-2 is commonly referred to as the "Charleston" office by current and former Zeitlin employees. Premises-2 and another property at 1009 Whitney Ranch Drive in Henderson, Nevada, the second headquarters for the Zeitlin Call Centers, are both managed by a real estate company owned by the defendant. As of in or about 2020, a separate company that the defendant partially owns, Chrome Builders Construction, formally operated out of Premises-2. (Aff. ¶¶ 23(a), (b)).

- Since 2018, the Zeitlin Call Centers have continued to use Premises-2 to conduct business. For example, in or about June 2022, certain employees of the Zeitlin Call Centers discussed (referenced in the Affidavit as "Employee-1" and "Employee-2"), via Skype, the need to set up workspaces for at least two other employees at Premises-2 (referenced in the Affidavit as "Employee-3" and "Employee-4"). Employee-3 and Employee-4 needed space at Premises-2 so that they could work on call scripting for the Zeitlin Call Centers. Employee-2 communicated that the plan had been to put four work spaces (*i.e.*, desks) at Premises-2, including for two additional employees ("Employee-5" and "Employee-6"). Employee-1 and Employee-2 discussed setting up computers at Premises-2 for Employee-3 and Employee-4. (*Id.* ¶ 23(c)).



- Since 2018, the Zeitlin Call Centers continued to use Premises-2 to store documents, data, and records relating to the Zeitlin Call Centers. As of in or about September 2022, no one had cleared or cleaned out (or appeared interested in clearing or cleaning out) Premises-2 to remove documents, data, and information relating to the Zeitlin Call Centers. (*Id.* ¶ 23(d)(vii)).

- As of in or about July 20, 2023 (*i.e.*, approximately one month before the Premises Warrants were issued), at least one employee of the Zeitlin Call Centers ████████████ still worked from Premises-2. (*Id.* ¶ 23(d)(vi)).



- When employees of a business or entity, such as the Zeitlin Call Centers, continue to use an office space, desk, or workspace, work product relating to that business or entity, including the work of those employees, typically remains at that office space. (*Id.* ¶ 25).

- The Zeitlin Call Centers regularly used electronic devices to conduct business, and call center scripts and recordings were created, edited, shared, and circulated electronically. (*Id.* ¶ 25).

- Employees of the Zeitlin Call Centers regularly communicate through electronic means, including via Skype, to discuss business, call scripts, and call recordings. (*Id.* ¶¶ 12(f), 19 & n.6, 23(c)-(d))(iv); Indictment ¶¶ 14, 15).

- In or about May 2022, the defendant directed employees to delete their Skype messages. (Aff. ¶ 19; Indictment ¶ 15).

Specific to Electronic Devices seized from both of the Premises:

- There are numerous kinds of relevant electronic evidence that may be found on an electronic device. (*Id.* ¶¶ 12-14, 21, 12(d)(iv), 25, 29).

- Electronic evidence can be found months or years after the crime has occurred, and even if evidence has been deleted. (*Id.* ¶¶ 12(f)-(h), 29).

- Users of electronic devices typically transfer files from old to new computers, and keep backups of their data on electronic storage media such as thumb drives, flash memory cards, or portable hard drives. (*Id.* ¶ 29).

- As summarized above, the defendant and his employees, including CC-1, utilized electronic communications to commit the Subject Offenses.

## **DISCUSSION**

### I.     **THE DEFENDANT'S MOTION TO DISMISS COUNTS ONE AND TWO OF THE INDICTMENT SHOULD BE DENIED**

The Indictment satisfies Rule 7(c)(1) of the Federal Rules of Criminal Procedure by

providing "a plain, concise, and definite written statement of the essential facts constituting the

offense charged," Fed. R. Crim. P 7(c)(1), it provides a reasonably detailed description of the defendant's fraud, and it is not impermissibly duplicitous.[3]

## A.    Applicable Law

### 1.    Sufficiency

Federal Rule of Criminal Procedure 12(b)(3)(B) allows a defendant to move before trial "that the indictment . . . fails to invoke the court's jurisdiction or to state an offense."  Fed. R. Crim. P. 12(b)(3)(B).  "A defendant faces a high standard in seeking to dismiss an indictment, because an indictment need provide only a plain, concise, and definite written statement of the essential facts constituting the offense charged."  *United States v. Post*, 950 F. Spp. 2d 519, 527 (S.D.N.Y. 2013) (internal quotation marks and citations omitted) (citing Fed. R. Crim. P. 7(c)(1)).

Before trial, "the allegations of [an] indictment must be taken as true," *Boyce Motor Lines v. United States*, 342 U.S. 337, 343 n. 16 (1952), as "[t]he sufficiency of the evidence" is not a matter that may be "appropriately addressed on a pretrial motion to dismiss an indictment," *United States v. Alfonso*, 143 F.3d 772, 777 (2d Cir. 1998); *see also United States v. Goldberg*, 756 F.2d 949, 950 (2d Cir. 1985) (in reviewing the facial sufficiency of an indictment, "[c]ontrary assertions of fact by the defendants will not be considered").  To satisfy Rule 7(c)(1), "an indictment need do little more than . . . track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime."  *United States v. Dawkins*, 999 F.3d 767, 779 (2d Cir. 2021) (citation and internal quotation marks omitted); *see also United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir. 1992) (same). "An indictment is sufficient as long as it (1) 'contains the elements of the offense charged and fairly informs a defendant of the charge against which he must

---

[3] The defendant does not move to dismiss Counts Three and Four of the Indictment.

defend,' and (2) 'enables the defendant to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" *Dawkins*, 999 F.3d at 779 (quoting *United States v. Wedd*, 993 F.3d 104, 120 (2d Cir. 2021)).

"The dismissal of an indictment is an 'extraordinary remedy' reserved only for extremely limited circumstances implicating fundamental rights." *United States v. Avenatti*, 432 F. Supp. 3d 354, 360 (S.D.N.Y. 2020) (quoting *United States v. De La Pava*, 268 F.3d 157, 165 (2d Cir. 2001); *see id.* at 360-361 ("[D]ismissal of charges is an 'extreme sanction,' . . . that has been upheld 'only in very limited and extreme circumstances,' and should be 'reserved for the truly extreme cases,' 'especially where serious criminal conduct is involved.'" (internal citations omitted)). Even in cases involving very bare-bones charges, courts will not dismiss and indictment absent a showing of prejudice. *United States v. Stringer*, 730 F.3d 120, 124 (2d Cir. 2013). Where a defendant has been given sufficient notice of the charges against him by means of, for example, discovery materials, there will be no prejudice, and the indictment should stand. *See*, *e.g.*, *De La Pava*, 268 F.3d at 162-63.

## 2.    Duplicity

An indictment is impermissibly duplicitous if (1) the indictment combines two or more distinct crimes into one count, in contravention of Rule 8 of the Federal Rules of Criminal Procedure; and (2) the defendant is thereby prejudiced. *See United States v. Sturdivant*, 244 F.3d 71, 75 (2d Cir. 2001). Duplicitous indictments can present three types of prejudice: (1) lack of notice of the crime charged and its maximum penalty; (2) the possibility that a second trial on the same charge would not be barred by the Double Jeopardy Clause; and (3) the potential uncertainty with respect to the jury's verdict and the sentencing implications of that verdict. *See id.* at 77-78.

12

An indictment, however, is not prejudicial merely because it charges in one count what it could have charged in several. The Second Circuit "has long held that acts that could be charged as separate counts of an indictment may instead be charged in a single count if those acts could be characterized as part of a single continuing scheme." *United States v. Vilar*, 729 F.3d 62, 79 (2d Cir. 2013) (alteration and internal quotation marks omitted). "As long as the essence of the alleged crime is carrying out a single scheme to defraud, then aggregation is permissible." *United States v. Tutino*, 883 F.2d 1125, 1141 (2d Cir. 1989); *see also United States v. Alacri*, 968 F.2d 1512, 1518 (2d Cir. 1992).

**B.    Discussion**

**1.    The Indictment Properly Alleges the Elements of Counts One and Two**

The defendant's motion to dismiss Counts One and Two for failure to state a claim fails because both sets of allegations track the statutes they charge (18 U.S.C. § 1349 and 18 U.S.C. § 1343, respectively). Nevertheless, the defendant maintains that the Indictment is insufficient for several reasons, none of which has merit. The motion to dismiss, therefore, should be denied.

**a.    Counts One and Two Track the Relevant Statutory Language**

Dismissal of Counts One and Two is unwarranted for the simple reason that, as required under Rule 7(c), both counts track the relevant statutory language and state the approximate time and place of the crime. These counts thus provide adequate notice to the defendant of the charges against him. *See Stavroulakis*, 952 F.2d at 693. The statutory allegations for Counts One and Two, moreover, incorporate by reference several preceding paragraphs that describe the scheme with detail sufficient to allow the defendant to respond to the charges and protect his rights under the Double Jeopardy Clause. *See Stringer*, 730 F.3d at 124-25. In particular, Counts One and Two

13

allege a scheme that sought to "obtain[] money and property by means of false and fraudulent pretenses." (Indictment ¶¶ 18, 20). They allege the defendant schemed to "defraud donors of certain PACs through false and misleading statements, made during telemarking calls soliciting donations, about what donations to the PACs would be used for and the nature of the PACs." (Indictment ¶¶ 18, 20).

Although the defendant states otherwise, it is not necessary under Rule 7(c) for an indictment charging wire fraud to identify the specific wires at issue, and the omission of a list of specific wire transmissions from Counts One and Two does not render the pleading of those counts insufficient. *See, e.g., United States v. Zandstra*, No. 00 Cr. 209 (RWS), 2000 WL 1368050, at *4 (S.D.N.Y. Sept. 20, 2000) (collecting cases); *United States v. Motta*, No. 15 Cr. 173 (NSR), 2015 WL 4692462, at *2 (S.D.N.Y. Aug. 6, 2015) ("A mail fraud indictment does not need to contain a detailed accounting of individual mailings.").

Accordingly, the Indictment sufficiently alleges in Counts One and Two a scheme to defraud, an object of which was obtaining through false pretenses contributions from donors, which plainly constitutes "money" within the meaning of the wire fraud statute. On this basis alone, the defendant's motion to dismiss Counts One and Two should be denied.

  **b.**  **Counts One and Two Properly Allege Intentionally Misleading Statements**

Rather than attack the Indictment's actual allegations, the defendant conjures his own "true theory of criminality"—separate from the Indictment—that is neither charged nor found in the actual Indictment, and argues that this imagined "theory of criminality" should be dismissed for failure to state a claim. (Dkt. 46 "Def. MTD" at 8, 10). The defendant contends that the "true theory of criminality" is that he deprived donors of an intangible right to know "what percentage

14

of [donated] funds are retained by a fundraiser" (*i.e.*, the Zeitlin Call Centers) rather than retained for the stated purpose of the organization on whose behalf funds are being raised (*i.e.*, the PACs). (*Id.*).  But the object of a motion to dismiss an *indictment* must be dismissal of an *indictment*—and not dismissal of some unpled theory.  Having aimed beyond the Indictment, the defendant's motion is entirely misplaced.

The defendant apparently believes that Counts One and Two actually allege that the defendant failed to disclose to donors his financial relationships with certain PACs—that is, the fact that the Zeitlin Entities retained approximately 90 percent of funds raised on behalf of PACs. (*Id.* at 18).  Such allegations, the defendant argues (*id.* at 10), would run afoul of *Illinois, ex rel. Madigan v. Telemarketing Associates, Inc.*, 538 U.S. 600 (2003), which held that "bare failure to disclose information [regarding the percentage of charitable donations retained by fundraisers] directly to potential donors does not suffice to establish fraud" *unless* that nondisclosure "is accompanied by intentionally misleading statements designed to deceive the listener."  *Madigan*, 538 U.S. at 606.  This argument is based on an inaccurate and partial reading of the Indictment.

Counts One and Two do not allege a "bare failure" of disclosure.  *Id.*  Rather, they allege that the defendant and others made affirmative misrepresentations "designed to deceive the listener," thereby "suffic[ing] to establish fraud," consistent with *Madigan*.  Specifically, Counts One and Two allege that during relevant time periods the defendant:

> defrauded donors and potential donors by directing employees of the Zeitlin Call Centers to make fundraising calls containing false and/or misleading statements that misled donors and potential donors into believing that they were donating money (a) to a charity or direct-services organization rather than to a PAC; (b) that would go to an organization [*i.e.*, a PAC] (rather than to the telemarketers [*i.e.*, the Zeitlin Call Centers]; and/or (c) to support a 'new' or 'special' drive that was underway.

(Indictment ¶ 7).  As to the second category of false and misleading representations listed above, pursuant to "100% Agreements," as referenced in the Indictment, the defendant's fraud included solicitation calls "to potential donors on behalf of certain PACs" that "falsely represent[ed] that donations would be used by those PACs, when in fact <u>all of the money raised</u> during [certain time periods] went to [one of the Zeitlin Entities] rather than to [the PAC, drive, or direct services referenced in the call]."  (*Id.* ¶ 11 (emphasis added)).  To be clear, as background, the Indictment does reference the fact that "[t]he Zeitlin Entities kept a substantial percentage of the funds raised by the Zeitlin Call Centers—typically approximately 90 percent."  (Indictment ¶ 6).  This pay structure is relevant as to defendant's motive (*id.* ("the more funds the Zeitlin Call Centers raised for PACs and charities, the more money the Zeitlin Entities, and thus [the defendant] ultimately made") and as to the defendant's concealment (*id.* ¶ 13(b) (describing invoices reflecting "PAC payments made to multiple Zeitlin Entities rather than one entity" so that "the PACs therefore appeared to pay different business[es] rather than one business.").  The Indictment, however, makes clear that the defendant is charged with defrauding donors through false and misleading representations separate and apart from the above pay structure, including false representations that at times the call centers retained 100 percent of the funds raised.  These allegations of "intentionally misleading statements" set forth in the Indictment—as opposed to the defendant's imagined "true theory of criminality"—is what matters on a motion to dismiss.  Because these allegations are sufficient to state a violation of the charged criminal offenses, the defendant's argument on this issue should be rejected.

c.      **Counts One and Two Properly Allege the Deprivation of Money or Property**

The defendant fares no better in arguing that Counts One and Two do not adequately allege a "'benefit of the bargain' theory of wire fraud" or a "theory of intent to defraud."  (Def. MTD at 16, 20).  This argument, too, misses the mark because the defendant again centers his argument on imagined allegations not contained in the Indictment.  His argument conflates the fraud charges against him in this matter with fraud charges premised on the "right to control" theory of wire fraud, which the Supreme Court recently invalidated, *see Ciminelli v. United States*, 143 S. Ct. 1121 (2023).  But the "right to control" theory is not at issue, because Counts One and Two allege that the objective of the charged scheme to defraud was to employ false and misleading misrepresentations to donors so that they would donate money to the defendant's business.

Apparently believing otherwise, the defendant argues the Indictment pleads a form of fraud that is non-actionable under *United States v. Shellef*, 507 F.3d 82 (2d Cir. 2007), and related cases, which concern buyer-seller relationships where the alleged victim (the buyer) still received the benefit of his or her bargain, despite any arguably fraudulent misrepresentations made by the defendant (the seller).  The alleged fraud in *Shellef*, for example, was that the defendants, who purchased certain controlled chemicals, defrauded the sellers of the chemicals by misrepresenting they planned to resell the chemicals domestically.  *Id.* at 107.  The indictment in that case did not allege "that there was a 'discrepancy between the benefits reasonably anticipated' and actual benefits received" by the suppliers as a result of the misrepresentations.  *Id*. (citation omitted).  In dicta, the Second Circuit expressed skepticism that the indictment adequately stated a claim based on an allegation that the defendant "induced [the victim] to sell additional amounts of [controlled chemicals] to [the buyer] would not have sold had it known that [the defendant] in fact intended

to sell the product domestically." *Id*. at 109.  As the Second Circuit reasoned, "[t]he jury . . . might have erroneously convicted [the defendants] even though it concluded that the defendants did not misrepresent an 'essential element' of the bargain . . . ." *Id*.[4]

    *Shellef* and the right to control theory have no application here, where the Indictment does not allege the "right to control" theory of property or deception in contract negotiations.  The Indictment instead alleges a straightforward scheme to deprive victims—here, donors—of money based on material misrepresentations and omissions about why telemarketers were soliciting donations and how their donations would be spent.  The Indictment does not allege—or even suggest—that the fraud is based on a contractual relationship, an alleged deprivation of a donor's right to control his or her assets, or the mere deprivation of information relevant to the donor's decision-making.    Rather, the Indictment alleges that the scheme involved affirmative misrepresentations of fact to donors in an effort to convince them to donate money as a result of those false and fraudulent representations.  The defendant's challenge to a theory not present on the face of the Indictment, thus, fails.[5]  *See United States v. Bankman-Fried*, No. 22 Cr. 673 (LAK),

---

[4] *See also United States v. Regent Office Supply Co.*, 421 F.2d 1174, 1182 (2d Cir. 1970) (("[Defendant] did not attempt to deceive their prospective customers with respect to the bargain they were offering; rather, they gave a false reason for being able to offer the bargain. There was no substitution of merchandise contrary to the customer's understanding of the offer, and no 'quid pro quo of equal value' exchanged for the customer's money which did not meet his reasonable expectations").

[5] Despite the straightforward nature of the Indictment's theory of fraud, the defendant repeatedly (and puzzlingly) argues the Indictment does not allege a "theory of intent to defraud."  (Def. MTS at 16).  For the reasons set forth above, the Indictment adequately alleges a recognized theory of wire fraud that is focused on a scheme to fraudulently deprive others of money.  Insofar as the defendant contends the Indictment was required to allege the scheme intended to harm or injure particular separately donors, that contention is without merit.  *See, e.g.*, *United States v. Fishbein*, No. 21 Cr. 296 (PAC), 2022 WL 1188424, at *3 (S.D.N.Y. Apr. 21, 2022) (rejecting argument that Indictment was deficient for failing to allege intent to harm because "Indictment need not

2023 WL 4194773, at *7 (S.D.N.Y. June 27, 2023) (rejecting motion to dismiss premised on argument that indictment alleged "right to control" theory "because each of those counts tracks the relevant statutory language and sufficiently alleges a scheme to obtain money or property"); *United States v. Runner*, No. 18 Cr. 578 (JS), 2023 WL 3727532, at *2 (E.D.N.Y. May 30, 2023) ("Defendant cannot use *Ciminelli* as a shield to prevent the Government from introducing the misrepresentations or omissions underlying the alleged scheme to defraud under the guise of construing those same deceptions as exclusively relevant to a victim's property interest [in] 'mere information' to render them unactionable.").

### d.     Counts One and Two Adequately Allege Materiality

The defendant separately claims Counts One and Two fail to allege materiality.  In so doing, the defendant misreads *Neder v. United States*, 527 U.S. 1 (1999), to stand for the proposition that "the element of materiality . . . must be alleged in an indictment" and, from that premise, argues Counts One and Two do not sufficiently allege that certain misrepresentations were material.  (Def. MTD at 16).  Although *Neder* held that "materiality of falsehood" is an element of the bank, mail, and wire fraud statutes, it did not similarly hold that materiality must be expressly alleged in an indictment.  *Neder*, 527 U.S. at 25.  To the contrary, in *Neder*, the

---

allege [defendant] had an intent to harm"); *United States v. Wey*, No. 15 Cr. 611 (AJN), 2017 WL 237651, at *9 (S.D.N.Y. Jan. 18, 2017) ("The Court is aware of no authority suggesting that the Government is required to specifically allege contemplated harm in an indictment to sufficiently *state* a violation of [an analogous fraud statute, 18 U.S.C. § 1348], and it will impose no such requirement here.") (emphasis in original); *United States v. Riccio*, 43 F. Supp. 3d 301, 308 (S.D.N.Y. 2014) (rejecting argument that indictment "failed to properly allege the requisite specific intent to defraud . . . . because the Indictment tracks the language of the relevant statutes").

Supreme Court found that the concept of materiality is essentially subsumed within the definition of fraud, and can be inferred as a required element when fraud is charged.

Consistent with *Nedar*, the Second Circuit has recognized that "[i]f materiality can be inferred to be an element of criminal fraud because of the well-understood meaning of 'fraud' as a legal term, an allegation of materiality can be inferred from the use of the word fraud in the indictment." *United Sates v. Klein*, 476 F.3d 111, 113 (2d Cir. 2007). That conclusion follows from the logic that "[c]onduct or speech that is immaterial—irrelevant—to a putative victim cannot be fraud." *Id*. at 114. An indictment, therefore, sufficiently alleges materiality by alleging the existence of a scheme to defraud. *Id*. at 113-14.

Counts One and Two satisfy this standard. Each count alleges a "scheme . . . to defraud," which necessarily encompasses allegations of materiality. (Indictment ¶¶ 18, 20). In addition, the background allegations, which are incorporated by reference into the statutory allegations for Counts One and Two, contain multiple uses of variations of the term "fraud" that further provide sufficient notice that fraudulent—*i.e.*, material—pretenses and representations were used in the course of the scheme. They refer to the defendant using his call centers "to defraud numerous donors and potential donors by providing misleading and false information" and further detail that misleading and false information in thirteen numbered paragraphs under a standalone section titled "Zeitlin's Scheme to Defraud Donors." (Indictment ¶¶ 1, 7-14). That section in particular describes "fundraising calls containing false and/or misleading statements that mislead donors and potential donors were donating money (a) to a charity or direct-services organization rather than to a PAC; (b) that would go to an organization (rather than to the telemarketers); and/or (c) to support a 'new' or 'special' drive that was underway." (Indictment ¶ 7).

The Indictment's repeated descriptions of the defendant's conduct as perpetrating a fraud encompass the concept of materiality and satisfy any potential requirement to plead such an element in the Indictment.  *See*, *e.g.*, *United States v. Brewster*, No. 19 Cr. 833 (SHS), 2021 WL 3423521, at *5 (S.D.N.Y. Aug. 5, 2021) (denying "argument that the indictment is deficient for failure to specifically allege that the misrepresentations made to the victims . . . were material" where "the alleged scheme to defraud necessarily involves material misrepresentations"); *United States v. Culligan*, No. 04 Cr. 305A (RJA), 2007 WL 3232484, at *2 (W.D.N.Y. Nov. 1, 2007) (denying motion to dismiss indictment and adopting magistrate judge's holding that "[t]he lack of an expressed allegation of 'materiality' does not cause the indictment to be defective" because "the use of the words 'scheme or artifice to defraud' in the statute 'incorporate materiality'"); *United States v. Stewart*, 151 F. Supp. 2d 572, 584 (E.D. Pa. 2001) (denying motion to dismiss indictment and rejecting argument that materiality had to be explicitly pled in mail and wire fraud indictment because "fraud" is understood at common-law to "clearly encompass[] the notion of materiality.").

### e.  Counts One and Two Are Legally Sufficient

The defendant's remaining principal arguments to dismiss Counts One and Two "amount essentially to a sufficiency of the evidence challenge, which is inappropriate at this stage of a criminal case." *United States v. Gatto*, 295 F. Supp. 3d 336, 350 (S.D.N.Y. 2018).

In making this argument, the defendant relies on a skeptical reading of the allegations coupled with questions about what proof the Government will offer at trial to prove those allegations.  The defendant asks the Court, for example, to weigh the allegations against an "[a]cclaimed philanthropist['s]" view that "the Government's proposed theory of criminality . . . actually hurt charitable giving and important social causes."  (Def. MTD at 9-10).  He similarly

contends that the Indictment must be dismissed unless the Government can answer a number of "threshold" and "foundational" questions the defendant poses about his alleged misconduct. (Def. MTD at 13). But a motion to dismiss an indictment is decided on the face of the charging instrument and its allegations—not on questions the defendant would like a philanthropist to address or proposed interrogatories the defendant wishes he could interpose upon the Government. *See*, *e.g.*, *United States v. Murgio*, 209 F. Supp. 3d 698, 706 (S.D.N.Y. 2016) ("In evaluating a motion to dismiss, the Court 'accept[s] as true all of the allegations of the indictment.'" (quoting *United States v. Goldberg*, 756 F.2d 949, 950 (2d Cir. 1985))).

In short, the defendant is not entitled to dismissal of a properly returned Indictment because he disagrees with its allegations or believes it should answer a series of questions that go to issues of factual guilt or innocence. Rule 7, not the defendant, sets forth the requirements for what must be contained in an Indictment. Counts One and Two satisfy those requirements by alleging "the elements of the offense[s] charged[.]"[6] *Hamling v. United States*, 418 U.S. 87, 117 (1974).

### 2.     Count Two Is Not Duplicitous and the Defendant Is Not Prejudiced

The defendant argues that Count Two is impermissibly duplicitous on the theory that it actually alleges many separate counts of the same crime, each based on a separate wire, rather than

---

[6] The defendant states that "[i]t isn't even clear that the Government has met its burden to prove that New York is a proper venue for this case" but does not actually move to dismiss the Indictment for failing to adequately allege venue. (Def. MTD at 15). Any such motion would be meritless. Dismissal of an indictment for lack of venue based on insufficient allegations can only be proper if "the government has made what can fairly be described as a full proffer of the evidence it intends to present at trial." *United States v. Perez*, 575 F.3d 164, 166-67 (2d Cir. 2009). The Government has made no such proffer, so dismissal cannot be based on the legal sufficiency of venue allegations. In any event, the Indictment alleges that the charged crimes occurred in the Southern District of New York and elsewhere, which sufficiently alleges venue at this stage. (Indictment ¶¶ 17, 20, 22, 25).

one crime. (Def. MTD at 23). This argument is foreclosed because Count Two alleges a single scheme and the defendant can point to no cognizable prejudice from Count Two's form.

The defendant concedes that the wire fraud charged in Count Two relies on a single scheme and "core" set of facts.  (Def. MTD at 8 ("In Mr. Zeitlin's case, the conspiracy and wire fraud charges in Counts One and Two of the indictment rely on the same alleged scheme and core facts.").  As such, under the settled law of the Second Circuit, Count Two is not duplicitous.  *See*, *e.g.*, *United States v. Olmeda*, 461 F.3d 271, 281 (2d Cir. 2006) ("[T]his court has long held that 'acts that could be charged as separate counts of an indictment may instead be charged in a single count if those acts could be characterized as part of a single continuing scheme.'" (quoting *United States v. Tutino*, 883 F.2d 1125, 1141 (2d Cir. 1989)); *United States v. Moloney*, 287 F.3d 236, 241 (2d Cir. 2002) (one count of money laundering alleging a series of financial acts); *United States v. Margiotta*, 646 F.2d 729, 733 (2d Cir. 1981) (combining 50 mailings into one count of mail fraud); *United States v. DiScala*, No. 14 Cr. 399, 2018 WL 1187394, at *27 (E.D.N.Y. Mar. 6, 2018) (rejecting the argument "that each single transaction of securities fraud must be charged separately," and emphasizing that "the approved practice in the Second Circuit, where indictments will charge both securities fraud and a conspiracy to commit said fraud, allege a starting and ending date in the securities fraud count, and allege the means of committing the fraud").

The Second Circuit's decision in *Margiotta*, discussed at length by the defendant (Def. MTD at 26-27), supports denial of the defendant's motion.  In *Margiotta*, the defendant was charged with committing mail fraud over a nine-year period based on separate mailings made as part of a scheme to defraud three entities through an insurance broker kickback scheme.  *See Margiotta*, 646 F.2d at 730.  The defendant filed a pretrial motion to dismiss the mail fraud charge,

arguing (among other points) that the mail fraud charge was duplicitous.  *Id.* at 731.  In response to the motion, the Government furnished the defendant with a bill of particulars enumerating the mailings at issue and agreed to limit its proof at trial to 50 of the mailings.  *Id*.  The district judge denied the motion to dismiss but ordered the Government to choose a single mailing to offer to the jury to satisfy the mail fraud charge rather than to proceed on all particularized mailings.  *Id*; *see also United States v. Margiotta*, 662 F.2d 131, 135 (2d Cir. 1981) (setting forth chronology of pretrial motion practice).  The Government filed a petition for a writ of mandamus with the Second Circuit, and prior to trial, the Second Circuit reversed the district judge's order.  *Margiotta*, 646 F.2d at 730.  After examining the policy considerations that underlie the duplicity doctrine, the Second Circuit held that the risks of unfairness to the defendant were "slight in a case like this where the essence of the alleged wrong is a single scheme to defraud."  *Id*. at 733 (emphasis added). Accordingly, the Second Circuit found that the 50 mailings that the Government agreed to aggregate into the mail fraud count over the course of the nine-year period charged in the indictment were not impermissibly duplicitous.  *Id*. at 732-33.

The defendant's takeaway from *Margiotta* is that a mail or wire fraud charge may aggregate mailings or wires into a single count provided the Government supplies a bill of particulars and agrees to limit the number of mailings at issue.  (Def. MTD at 26).  And because the Government has not supplied a bill of particulars or agreed to limit its proof in this case, according to the defendant Count Two must be dismissed as duplicitous.  That argument is unpersuasive for two reasons.  <u>First</u>, although *Margiotta* recounts when describing the case's procedural history the filing of a bill of particulars and the Government's concession, those events are not necessary to *Margiotta*'s holding that a single count of fraud is not duplicitous merely because it encompasses

multiple mailings.  Second, unlike the instant motion, the motion in *Margiotta* was filed shortly before trial and accounted for facts beyond the four corners of the indictment.  *Margiotta*, 646 F.2d at 732.  Here, where the Indictment indisputably alleges a single scheme in one count and the case is at an early stage, that count cannot be read to combine impermissibly two or more distinct crimes.

In any event, the defendant's argument independently fails because he has not explained how the Indictment has prejudiced his ability to protect any of the policy goals that underlying the duplicity doctrine.  *See Margiotta*, 646 F.2d at 732-33.  He instead recites in conclusory fashion a laundry list of harms that he expects will result from Count One's supposed duplicity.  None of those harms sufficiently establishes prejudice.

The defendant complains, for example, that "Count Two's lack of specificity threatens to deny Mr. Zeitlin a unanimous jury verdict" (Def. MTD at 24), but that complaint is easily redressed at trial through a jury instruction on unanimity.  *See Sturdivant*, 244 F.3d at 80 ("Nor is there a threat of a completely non-unanimous verdict that would undermine the validity of defendant's conviction, to the extent such conviction is premised on defendant's participation in only one of the two transactions, because we may assume that the jury followed the court's unanimity instructions.").  The defendant also predicts he will suffer prejudice because he may be convicted for time-barred conduct: Count Two alleges the scheme to have begun in 2017, but by operation of the statute of limitations the defendant can only be convicted for mail fraud in this case for conduct extending back to August 15, 2018.  (Def. MTD at 24-25).  But here, too, a jury instruction

can remedy any potential prejudice by making clear that the Government must prove beyond a reasonable doubt that any wire in furtherance of the scheme is within the limitations period.[7]

The defendant's prediction he will face "double jeopardy concerns" if Count Two remains is similarly unsupported. (*Id.* at 25). As noted, Count Two charges only a single count of wire fraud, so there can be no ambiguity at all on this score: every wire within the statute of limitations "supports" the sole charge of wire fraud. *See Margiotta*, 646 F.2d at 732-733 (multiple mailings properly charged under single count); *United States v. Alfonso*, 143 F.3d 772, 777 (2d Cir. 1998) ("It is well settled that 'an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)).

The defendant simply has not established any prejudice he will suffer from Count Two in its current form. In fact, if anything, the single count of wire fraud against the defendant may well benefit him when compared to the multiple counts of wire fraud that he now contends are appropriate. As the Second Circuit has observed, "duplicity may actually inure to a defendant's benefit by 'limiting the maximum penalties' he might face if he were charged and convicted on separate counts for what amounts to a single scheme." *Olmeda*, 461 F.3d at 281. Being charged with a single count of wire fraud also provides the defendant with the benefit of avoiding "the portrayal to the jury as the perpetrator of [multiple] crimes." *Id.* (citation omitted). In sum,

---

[7] For similar reasons, the defendant cannot succeed in his argument that Count One, which alleges a conspiracy dating back to 2017, should be dismissed on the basis that "the jury might convict Mr. Zeitlin of a conspiracy that terminated more than five years before the indictment's return." (Def. MTD at 27).

because the defendant has suffered no prejudice, his motion to dismiss Count Two as duplicitous should be denied.

The defendant also fails in his related argument that Count One, which alleges a conspiracy, is insufficiently specific because it "incorporates a conglomeration of fraud theories" and will result in unfair prejudice. (Def. MTD at 27). The defendant's argument that allowing Count One to allege a single conspiracy "erroneously assumes that no single conspiracy existed" by ignoring the Indictment's allegations, which is not permitted at this stage of the case. *See United States v. Rajaratnam*, No. 13 Cr. 211 NRB, 2014 WL 1554078, at *5 (S.D.N.Y. Apr. 17, 2014) (denying motion to dismiss). And "[i]f such prejudice does arise, it can be addressed through a jury charge on multiple conspiracies and, if warranted, by other charges and instructions as well." *Id*.

## II.   THE DEFENDANT'S MOTION FOR A BILL OF PARTICULARS SHOULD BE DENIED

As an alternative to his motion to dismiss Counts One and Two of the Indictment, the defendant moves for a bill of particulars with respect to these counts. The defendant's motion should be denied because a bill of particulars is neither warranted nor necessary. The Government has already provided the defendant with ample notice of the crimes with which he is charged, including through the 12-page Indictment, various search warrant affidavits, and a letter opposing the defendant's bail. (Dkt. 15). The defendant has not, and cannot, establish that he is entitled to a bill of particulars or that the various forms of detailed notice that the Government has provided are insufficient. His motion should be denied.

### A.      Applicable Law

In certain cases, if necessary and at the Court's discretion, Rule 7(f) of the Federal Rules of Criminal Procedure permits the Court to direct the Government to file a bill of particulars.   A bill of particulars, however, is <u>not necessary</u> where the government has made sufficient disclosures concerning its evidence and witnesses by other means." *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999) (emphasis added) (affirming denial of request for a bill of particulars where the Government adequately informed the defendant of the nature of the charges against him through discovery).  That is, "if the defendant has been given adequate notice of the charges against [him] and can prepare fully for trial with reasonably diligent efforts, the Government cannot be required to disclose additional details about its case." ." *United States v. Henry*, 861 F. Supp. 1190, 1197 (S.D.N.Y. 1994).

Ultimately, "[i]n deciding a motion for a bill of particulars, '[t]he important question is whether the information sought is necessary, not whether it is helpful.'" *United States v. Triana-Mateus*, No. 98 Cr. 958 (SWK), 2002 WL 562649, at *5 (S.D.N.Y. Apr. 15, 2002) (quoting *United States v. Facciolo*, 753 F. Supp. 449, 451 (S.D.N.Y. 1990)).  A bill of particulars is not a general investigatory tool for the defense.  *See United States v. Salazar*, 485 F.2d 1272, 1277-78 (2d Cir. 1973).  Nor is it a device to compel disclosure of the Government's evidence or legal theory prior to trial.  *United States v. Gottlieb*, 493 F.2d 987, 994 (2d Cir. 1974).  Rather, the sole purpose of a bill of particulars is to furnish facts that are necessary to apprise a defendant of the charges against him with sufficient precision to (1) enable him to prepare his defense; (2) avoid unfair surprise at trial; and (3) preclude a second prosecution for the same offense.  *See Wong Tai v. United States*, 273 U.S. 77, 80-82 (1927).

Where, as here, the defendant is charged with criminal conspiracy, the defendant "is not entitled to a bill of particulars" setting forth in detail the scope of the conspiracy. *United States v. Muyet*, 945 F. Supp. 586, 599 (S.D.N.Y. 1996) (holding that a defendant in a conspiracy case is "not entitled to a bill of particulars setting forth the 'whens,' 'wheres,' and 'with whoms' regarding the . . . enterprise and conspiracy"). "It is well settled that defendants need not know the means by which it is claimed they performed acts in furtherance of the conspiracy nor the evidence which the Government intends to adduce to prove their criminal acts." *United States v. Feola*, 651 F. Supp. 1068, 1132 (S.D.N.Y. 1987), *aff'd*, 875 F.2d 857 (2d Cir. 1989)). As the Second Circuit has held, "[t]he Government need not, when charging conspiracy, set out with precision each and every act committed by the conspirators in the furtherance of the conspiracy." *United States v. Cohen*, 518 F.2d 727, 733 (2d Cir. 1975). A defendant likewise is not entitled to a bill of particulars setting forth "how or when the conspiracy was formed or how or when defendants joined the conspiracy." *United States v. Pacheco*, 902 F. Supp. 469, 474 (S.D.N.Y. 1995). A bill of particulars is similarly unwarranted where a defendant seeks information regarding all of the overt acts in furtherance of the conspiracy or an accounting of the particular acts that a specific defendant participated in, had knowledge of, or for which he is being held responsible. *See United States v. Jimenez*, 824 F. Supp. 351, 363 (S.D.N.Y. 1993) (denying a motion for a bill of particulars in which defendants sought "further specifics of the particular acts they are alleged to have participated in or for which they are being held responsible").

There are several important reasons why "[a] bill of particulars should be required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." *United States v. Torres*, 901 F.2d 205, 234 (2d Cir. 1990)

(internal quotation marks omitted); *accord United States v. Chen*, 378 F.3d 151, 163 (2d Cir. 2004).  Because "a bill of particulars confines the Government's proof to particulars furnished," it can "restrict unduly the Government's ability to present its case."  *Henry*, 861 F. Supp. at 1197. *See also United States v. Mahabub*, No. 13 Cr. 908 (AJN), 2014 WL 4243657, at *2 (S.D.N.Y. Aug. 26, 2014) (recognizing that "care must be taken" because "[t]he government's presentation of evidence at trial is limited to the particulars contained in the bill"); *United States v. Samsonov*, No. 07 Cr. 1198 (CM), 2009 WL 176721, at *3 (S.D.N.Y. Jan. 23, 2009) ("The vehicle of a bill of particulars serves to inform a defendant of the nature of the charge, when he is otherwise insufficiently informed, and must not be misused to compel disclosure of how much the Government can prove, nor to foreclose the Government from using proof it may develop as the trial approaches.").  The Government's provision of particulars separately creates the very real danger that a defendant will "tailor [his] testimony to explain away the Government's case." *Henry*, 861 F. Supp. at 1197.  For this reason, "the government is not required to turn over information that will permit a defendant to preview the government's case and tempt him to tailor proof to explain it away, or see to it that the government's proof is not presented."  *United States v. Sindone*, No. 01 Cr. 517 (MBM), 2002 WL 48604, at *1 (S.D.N.Y. Jan. 14, 2002).

**B.    Discussion**

The Court should reject the defendant's request for a bill of particulars because it is neither warranted nor necessary.    As described above, the charges against the defendant are straightforward and well-pled: the defendant controlled and operated telemarking call centers and used those call centers to engage in a scheme to defraud donors through at least three categories of false statements.  (Indictment ¶¶ 7-12).  The Indictment sets forth, in far more detail than

required, the defendant's participation in the scheme and the manner through which donors were defrauded.    The Indictment articulates, among other things, the false and misleading representations to donors at issue (*id.* ¶ 7), the time period during which those false and misleading misrepresentations were made (*id.* ¶¶ 7-13), and the steps the defendant took to conceal the fraud in an attempt to ensure its success (*id.* ¶¶ 13-15).  In addition, through search warrant affidavits and a publicly filed letter (Dkt. 15), the Government has provided further detail relating to the defendant's offense conduct.  In these circumstances, the defendant cannot plausibly claim that the Indictment, supplemented by the Government's discovery and additional disclosures as detailed above, *see supra* at 3-4, lacks sufficient detail to allow him to plead double jeopardy against a subsequent prosecution for the same acts, or to understand the acts of which he is accused, as is required in order to be entitled to a bill of particulars.  *See*, *e.g.*, *United States v. Ferrarini*, 9 F. Supp. 2d 284, 299 (S.D.N.Y. 1998) (denying bill of particulars where "indictment alone . . . discloses sufficient information to inform the defendants adequately of the charges against them").

Given the fulsome discovery and disclosures the Government has already provided, the defendant effectively seeks to impermissibly use a bill of particulars not because it is necessary to prepare a defense, but rather to compel the Government to provide "a preview of the evidence" and "the theory of the government's case."  *United States v. Taylor*, 707 F. Supp. 696, 699 (S.D.N.Y. 1989).  More specifically, the defendant requests broad categories of information concerning "the specific acts of which [the defendant] is accused," "which wire communications the government may seek to substantiate at trial," and "what evidence the government may offer" at trial.  (Def. MTD at 28).  The defendant's request amounts to an "ill-disguised attempt[] at general pre-trial discovery" that is not the function of a bill of particulars.  *Torres*, 901 F.2d at 234.

In addition, given the details already provided concerning the allegations in the Indictment, at this stage, the broad categories of information the defendant seeks are not actually necessary for the defendant to prepare a defense.   Indeed, in this Circuit, motions like the defendant's are routinely denied.   *See, e.g.*, *Samsonov*, 2009 WL 176721, at *2 (in fraud case charging both conspiracy and substantive offenses, denying motion for bill of particulars seeking "the specific false information and material omissions used to procure the mortgages and other loans at issue in [the] case"); *United States v. Earls*, No. 03 CR. 0364(NRB), 2004 WL 350725, at *4 (S.D.N.Y. Feb. 25, 2004) (in fraud case, denying request for bill of particulars specifying, *inter alia*, "the precise nature of certain allegedly materially false representations and misleading omissions"); *United States v. Gall*, No. 95 Cr. 98 (AHN), 1996 WL 684404, at *7 (D. Conn. Aug. 12, 1996) (denying bill of particulars request demanding "the manner in which the financial statements [the defendant] submitted to insurance companies and state agencies were false").

Tellingly, the defendant concedes that he does not currently know if a bill of particulars is necessary (or would even be beneficial) because he "does not currently know whether the government's discovery productions may elucidate its potential trial evidence." (Def. MTD at 29). In other words, the defendant admits that he can provide himself with the relief requested by simply reviewing the information he possesses.   To support his position, the defendant states that in "a case involving voluminous discovery, a bill of particulars may be beneficial to apprise the defendant of what the government will seek to prove at trial.   (Def. MTD at 29 (emphasis added) (citing *United States v. Ramirez*, 609 F.3d 495, 503 (2d Cir. 2010)).   In this case, however, the defendant has ample time to review discovery, such that "the discovery volume alone simply does not necessitate a bill of particulars."   *Wey*, 2017 WL 237651, at *21 (citing cases); *see also United*

*States v. Percoco*, No. 16 Cr. 776 (VEC), 2017 WL 6314146, at *21 (S.D.N.Y. Dec. 11, 2017)

(rejecting request for bill of particulars premised on volume of discovery because discovery was

"accompanied by additional guidance that, in conjunction with the detail in the Indictment and

Complaint, allows the Defendants to conduct a focused review of the production"); *United States*

*v. Mandell*, 710 F. Supp. 2d 368, 385 (S.D.N.Y. 2010) (denying request for particularization of

alleged misrepresentations where the indictment was 34 pages long and Government had provided

voluminous, organized discovery and noting that the "mere existence of 'mountains of documents'

does not entitle" a defendant to a bill of particulars).   Under these circumstances, a bill of

particulars is neither necessary nor warranted, and the defendant's motion should be denied.

## III.   THE DEFENDANT'S MOTION TO SUPPRESS EVIDENCE SEIZED FROM HIS RESIDENCE AND BUSINESS PROPERTY SHOULD BE DENIED

The defendant's motion to suppress should be denied because, in accordance with the

Fourth Amendment, the warrants for these premises (the "Premises Warrants") were supported by

probable cause, sufficiently particularized, and not overbroad, as set forth below.   And even if,

assuming *arguendo*, they were not, the good faith exception applies and suppression is not

warranted.

### A.   Applicable Law

#### 1.   Probable Cause

The Fourth Amendment mandates that "no Warrants shall issue, but upon probable cause,

supported by Oath or affirmation, and particularly describing the place to be searched, and the

persons or things to be seized."   U.S. Const. Amend. IV.   "While 'probable cause is a fluid

concept—turning on the assessment of probabilities in particular factual contexts—not readily, or

even usefully, reduced to a neat set of legal rules,' it is generally understood that 'probable cause

to search is demonstrated where the totality of circumstances indicates a 'fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Elkorany*, No. 20 Cr. 437 (NRB), 2021 WL 3668086, at *2 (S.D.N.Y. Aug. 17, 2021) (quoting *Illinois v. Gates*, 462 U.S. 213, 232 (1983); *Walcyk v. Rio*, 496 F.3d 139, 156 (2d Cir. 2007)).

Due to the "subjective" nature of probable cause determinations, *id.*, "[a] reviewing court must accord substantial deference to [a magistrate's finding] that probable cause exists," *United States v. Wagner*, 989 F.2d 69, 72 (2d Cir. 1993) (citing cases); *see also United States v. Raymonda*, 780 F.3d 105, 113 (2d Cir. 2015) (same) (citing cases).  Indeed, a "magistrate's finding of probable cause is itself a substantial factor tending to uphold the validity of [a] warrant"— particularly in "close cases where doubts should be resolved in favor of upholding the warrant." *United States v. Travisano*, 724 F.2d 341, 345 (2d Cir. 1983) (citing cases).  "'[W]here [the] circumstances are detailed . . . and when a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner." *Rivera v. United States*, 928 F.2d 592, 602 (2d Cir. 1991) (quoting *United States v. Ventresca*, 380 U.S. 102, 109 (1965)).  Rather, "the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.'" *Id.* (same).  "The reviewing court's determination should be limited to whether the issuing judicial officer had a substantial basis for the finding of probable cause." *Wagner*, 989 F.2d at 72; *see also Raymonda*, 780 F.3d at 113.

### 2.      Particularity

In addition to its probable cause requirement, the Fourth Amendment requires particularity—that is, a description of "the place to be searched, and the persons or things to be

seized." U.S. Const. Amend. IV. The particularity requirement protects against a "general, exploratory rummaging in a person's belongings," *Andresen v. Maryland*, 427 U.S. 463, 480 (1976), and "virtually unfettered discretion to seize anything they see,'" *United States v. Purcell*, No. 18 Cr. 81 (DLC), 2018 WL 4378453, at *2 (S.D.N.Y. Sept. 13, 2018), *aff'd*, 967 F.3d 159 (2d Cir. 2020) (quoting *United States v. Mankani*, 738 F.2d 538, 546 (2d Cir. 1984)). "To be sufficiently particular under the Fourth Amendment, a warrant must": (1) "identify the specific offense" for which probable cause has been established; (2) "describe the place to be searched"; and (3) "specify the items to be seized by their relation to designated crimes." *Purcell*, 2018 WL 4378453, at *2 (quoting *United States v. Ulbricht*, 858 F.3d 71, 99 (2d Cir. 2017)).

"The Fourth Amendment does not require a perfect description of the data to be searched and seized." *Ulbricht*, 858 F.3d at 100. Rather, the particularity requirement is satisfied if the warrant, including its attachments, enables the executing officer to ascertain and identify with reasonable certainty those items that the magistrate judge has authorized him or her to seize. *See Groh v. Ramirez*, 540 U.S. 551, 557-59 (2004); *United States v. Rosa*, 626 F.3d 56, 58 (2d Cir. 2010). "Courts may tolerate some ambiguity in the warrant so long as law enforcement agents have done the best that could reasonably be expected under the circumstances, have acquired all the descriptive facts which a reasonable investigation could be expected to cover, and have insured that all those facts were included in the warrant." *United States v. Galpin*, 720 F.3d 436, 446 (2d Cir. 2013) (internal quotation marks and citation omitted).

Additionally, "[t]he degree to which a warrant must state its terms with particularity varies inversely with the complexity of the criminal activity investigated." *United States v. Cioffi*, 668 F. Supp. 2d 385, 391 (E.D.N.Y. 2009) (quoting *United States v. Regan*, 706 F. Supp. 2d 1102,

1113 (S.D.N.Y. 1989)).  "The type of evidence sought is also relevant; in particular, courts have recognized that documentary evidence may be difficult to describe *ex ante* with the same particularity as a murder weapon or stolen property."  *Id*. (citing cases); *see also United States v. Scully*, 108 F. Supp. 3d 59, 65-66 (E.D.N.Y. 2015) ("The level of specificity required by the Fourth Amendment depends on many factors, including the nature of the crime, and where complex financial crimes are alleged, a warrant properly provides more flexibility to the searching agents." (internal quotation marks and citation omitted)).  Further, "it is important to bear in mind that a search warrant does not necessarily lack particularity simply because it is broad."  *Ulbricht*, 858 F.3d at 100.  In fact, "searches of computers may sometimes need to be as broad as searches of residences pursuant to warrants."  *Id.*  "And, in many cases, the volume of records properly subject to seizure because of their evidentiary value may be vast.  None of these consequences necessarily turns a search warrant into a prohibited general warrant."  *Id.*

### 3.    Overbreadth

The  probable  cause  and  particularity  requirements  intersect  with  the  doctrine  of overbreadth.  "While particularity focuses on whether the warrant provides the necessary guidelines for the search by the executing officers, the requirement that a warrant not be overbroad focuses on whether the government lacked probable cause to search and seize the listed items."  *Elkorany*, 2021 WL 3668086, at *4 (citing *United States v. Hernandez*, No. 09 Cr. 625 (HB), 2010 WL 26544, at *7 (S.D.N.Y. Jan. 6, 2010)).  "[A] warrant is overbroad if its 'description of the objects to be seized . . . is broader than can be justified by the probable cause upon which the warrant is based.'"  *United States v. Lustyik*, 57 F. Supp. 3d 213, 228 (S.D.N.Y. 2014) (quoting *Galpin*, 720 F.3d at 446).  Naturally, the broader the duration or complexity of the crimes under

investigation, the broader the categories of documents and records that may properly be seized. *See, e.g.*, *United States v. Levy*, No. S5 11 Cr. 62 (PAC), 2013 WL 664712, at *8 (S.D.N.Y. 2013) (broad warrant with no timeframe limitation was justified by breadth and complexity of fraud described in underlying affidavit); *United States v. Jacobson*, 4 F. Supp. 3d 515, 522 (E.D.N.Y. 2014) (breadth of warrant was justified because "the crimes under investigation were complex and concerned a long period of time, not simply one or two dates of criminal activity"); *United States v. Dupree*, 781 F. Supp. 2d 116, 149 (E.D.N.Y. 2011) ("The nature of the crime . . . may require a broad search . . . .").

### 4. The Good Faith Exception

Finally, suppression of evidence is a "last resort," not a "first impulse," even if a warrant contains defects. *United States v. Purcell*, 967 F.3d 159, 179 (2d Cir. 2020) (quoting *Hudson v. Michigan*, 547 U.S. 586, 591 (2006)). "'To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system.'" *Id.* (quoting *Herring v. United States*, 555 U.S. 135, 144 (2009)). "The Supreme Court has held that the exclusion of evidence is inappropriate when the Government acts in 'objectively reasonable reliance' on a search warrant, even if that warrant is later deemed invalid. *Purcell*, 2018 WL 4378453, at *3 (quoting *United States v. Leon*, 468 U.S. 897, 922 (1984)). There are four circumstances in which the good faith exception to the exclusionary rule does not apply: (1) when the magistrate has been "knowingly misled"; (2) where the magistrate "wholly abandoned his or her judicial role"; (3) "where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable;" and (4) "where the warrant is so facially deficient that reliance upon it is unreasonable." *Id.*

(quoting *Galpin*, 720 F.3d at 452).  The good faith analysis is an objective analysis of whether "a reasonably well trained officer would have known that the search was illegal in light of all the circumstances." *Rosa*, 626 F.3d at 64 (citation omitted).  "Searches pursuant to a warrant will," however, "rarely require any deep inquiry into reasonableness."  *United States v. Clark*, 638 F.3d 89, 100 (2d Cir. 2011) (citation omitted).  "[A] warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search."  *Id.* (citation omitted).

### B.    Discussion

The defendant contends that the Premises Warrants violated the Fourth Amendment because they were general warrants that lacked probable cause and sufficient particularity.  Each of the defendant's claims is without merit, as discussed below.

### 1.    The Search Warrants Were Supported By Probable Cause

The 54-page application for the Premises Warrants established probable cause, as two federal judges—Judge Ferenbach of the District of Nevada and Judge Cave of this District—have already concluded.  It is well-established that a reviewing court should accord "substantial deference" to Judge Ferenbach and Judge Cave's findings, which were based on the "totality of circumstances."  *Elkorany*, 2021 WL 3668086, at *2 (citing Second Circuit cases); *see also Wagner*, 989 F.2d at 72.  Accordingly, this Court's inquiry "should be limited to whether [Judges Ferenbach and Cave] had a substantial basis" for their probable cause determinations, and here, both Judges clearly did.  *Wagner*, 989 F.3d at 72.

As an initial matter, the defendant does not dispute that the Premises Warrants were based on probable cause that the defendant had committed the Subject Offenses—nor could he, given

that a grand jury had returned an Indictment charging him with these offenses.  The defendant instead challenges whether the Premises Affidavit established probable cause that there was a "fair probability that contraband or evidence of a crime" would be found at the defendant's residence and business property.  As detailed below, that challenge is undercut by the Affidavit's detailed and careful statements linking each location to evidence of the Subject Offenses.

As to the defendant's residence (*i.e.*, Premises-1), the Premises Affidavit established why there was a "fair probability" that evidence of the defendant's scheme to defraud and to destroy evidence would be recovered from his home, including because: (1) the defendant had engaged in a sophisticated and complex fraud scheme through his call center business (*i.e.*, the Zeitlin Call Centers), including by directing his employees, including one particular employee/co-conspirator ("CC-1") to change call scripts and make misrepresentations to donors (Aff. ¶ 8(b); Indictment ¶¶ 1-13); (2) the defendant created his call center business in or about 1994, and has since created and operated numerous business entities in connection with the call centers and his scheme to defraud (Aff. ¶ 8(b)); (3) the defendant communicated with employees of the Zeitlin Call Center, including CC-1, by phone, electronic messages, and emails (*id.* ¶¶ 8(f), 12(g), 15(b), 16 19); (4) business owners and senior executives often work remotely and/or from home given their responsibilities, hours, and role (*id.* ¶ 11); (5) the defendant regularly conducted business remotely, including from his home (*id.* ¶¶ 11, 19, 20); (6) the defendant resided at Premises-1 and received business documents relating to his call center business there (*id.* ¶¶ 15-17); (7) the defendant's residence had a home office (*id.* ¶ 20 & n.8); (8) business owners typically store electronic and hard-copy business-related documents, including contracts and incorporation documents, in their homes (*id.* ¶ 11); (9) individuals who engage in criminal schemes to defraud commonly maintain

39

documentary and electronic evidence in their homes (*id.* ¶ 10); (10) individuals who engage in schemes to defraud often use electronic devices to communicate with co-conspirators and store information relating to the fraud (*id.* ¶ 10); (11) the defendant had longstanding relationships with certain PAC owners, employees, and potential co-conspirators (*id.* ¶¶ 9(c)-(d); (12) the defendant has numerous electronic Apple devices (*id.* ¶ 18); (13) the defendant communicated with CC-1 via Signal, an encrypted electronic messaging application (*id.* ¶¶ 8(f), 12(g); Indictment ¶ 14; (14) individuals typically carry cellphones close to their persons or, when home, within their homes (Aff. ¶ 12(h)); and (15) electronic evidence can be found on electronic devices months or years after it was first created (*id.* ¶¶ 12(f)-(h), 29).

As to the defendant's business property (*i.e.*, Premises-2), the Premises Affidavit established that there was a "fair probability" that evidence of the defendant's scheme to defraud and to destroy evidence would be recovered from Premises-2, including because: (1) Premises-2, which is commonly referred to by current and former Zeitlin employees as the "Charleston" office, based on its location, was the headquarters for the Zeitlin Call Centers, which were created in or about 1994, until in or about 2018 (*id.* ¶¶ 23(a)-(c)); (2) the defendant owns Premises-2, which is managed by a real estate company, "MRZ Management," that managed two properties, Premises-2 and a property on Whitney Ranch Drive (*i.e.*, the Whitney Ranch office), which was more recently the headquarters for the Zeitlin Call Centers (*id.* ¶¶ 23(a)-(b)); (3) another company that the defendant partially owns, Chrome Builders Construction, formally operates out of Premises-2 (*id.*); (4) after in or about 2018, employees of the Zeitlin Call Centers continued to conduct business and work from Premises-2 (*id.* ¶¶ 23(c)-(d)); (5) as of in or about June 2022, employees of the Zeitlin Call Centers discussed using Premises-2 as a workspace for drafting call scripts for

the Zeitlin Call Centers, and setting up at least four workspaces at Premises-2, including at least two computers (*id.* ¶ 23(c)); (6) ███████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████ (*id.* ¶ 23(d));

(7) ████████████████████████████████████████████████████████████████████

█████████████████████████████████████████ (8) Zeitlin employees, including ███████████████████ used computers to store, send, and receive call scripts and call recordings, and to communicate about call scripts and call recordings (*id.* ¶¶ 19, 23(d), 25; Indictment ¶¶ 14-15); (9) Zeitlin employees used email and an electronic messaging application to discuss business, including call scripts and call recordings (*id.* ¶¶ 19, 25; Indictment ¶¶ 14-15); (10) electronic evidence can be found on electronic devices months or years after it was accessed, created, sent, or received (*id.* ¶¶ 12(f)-(h), 29); (11) as of in or about September 2022, Premises-2 continued to store records, documents, data, and devices relating to the Zeitlin Call Centers (*id.* ¶ 23(d)(vii)); and (12) at least one employee of the Zeitlin Call Centers worked from Premises-2 as of approximately July 20, 2023 (*id.* ¶ 23(d)(vi)).

Based on the above, Judges Ferenbach and Cave had (at a minimum) a "substantial basis" to conclude that there was probable cause to search, respectively, the Premises and the contents of the Devices contained therein.  As required to support the issuance of a search warrant, the judges' determinations were based on a "fair probability" that the home and business of the longstanding owner of a call center business—who led a complicated and widespread fraud for approximately three years using his business and his employees, created and controlled various entities in furtherance of his fraud, conducted business from his home and business property, carried out his

fraud and obstruction through electronic devices and electronic platforms, communicated electronically with co-conspirators and employees, and instructed them to destroy evidence—were likely to contain evidence of the defendant's fraud and obstruction, including on devices located in his home and business property.

Both the Second Circuit and Courts in this District routinely uphold probable cause determinations made by magistrate judges based on common sense and agent opinions that, based on the facts, it is reasonable to infer that the defendant maintained evidence of his crimes at certain premises. *See, e.g.*, *United States v. Singh*, 390 F.3d 168, 182 (2d Cir. 2004) (upholding search warrant for defendant's residence based on a "reasonable inference from the facts presented based on common sense and experience" where the agent "opined not only that the materials sought were of the type that would be kept over a period of years but that they could reasonably be found in a residence"); *United States v. Donald*, 417 F. App'x 41, 43 (2d Cir. 2011) (finding that there "was a substantial basis for the issuing judge to find by a fair probability that evidence of this criminal conduct could be located at [the defendant's] residence" in drug trafficking case where defendant's wife and co-conspirator traveled from defendant's residence to consummate narcotics transaction given the scale of the defendant's narcotics distribution activities); *United States v. Morgan*, 690 F. Supp. 2d 274 (S.D.N.Y. 2010) (upholding search warrant of defendant's home where magistrate relied on the "commonsense notion that an individual engaged in a conspiracy may have evidence of that conspiracy, including telephone numbers and other contact information, located in his residence"); *United States v. Bowen*, 689 F. Supp. 2d 675, 680 (S.D.N.Y. 2010) (upholding search warrant for defendant's home that relied on agent's expertise and training that "the home is often used in frauds . . . to maintain documents"); *United States v. Giovanelli*, No. S1 01 Cr. 749 (JSR),

2003 WL 21878770, at *1 (S.D.N.Y. Aug. 8, 2002) (affording "substantial deference" to the "search warrant issued by a neutral and detached magistrate" who made "a practical, common-sense" probable cause determination based on, among other things, "the common-sense understanding that loan sharks usually keep private records of their loans"). "A contrary conclusion would unnecessarily hamper government investigations by fostering too restrictive a view of probable cause, and would conflict with the pragmatic, common-sense probable-cause analysis that the Supreme Court requires." *United States v. Martin*, 426 F.3d 68, 76 (2d Cir. 2005) (upholding search warrant for defendant's home in child pornography case where there was evidence that an occupant of the defendant's house was a member of a child pornography group).

None of the defendant's multiple attempts to undermine the probable cause determinations of Judges Ferenbach and Cave is persuasive.

First, the defendant mistakenly suggests that the Affidavit would only be sufficient if it showed that the Premises themselves were "used for illegal telemarketing business." (Dkt. 43 "Def. MTS" at 7). The defendant does not support this suggestion with any authority—nor could he. The Fourth Amendment inquiry is whether there was a "fair probability . . . that evidence of crime will be found in a particular place." *Elkorany*, 2021 WL 3668086, at *2 (emphasis added) (quoting *Gates*, 462 U.S. at 232). For that reason, the defendant's focus on whether the "affidavit's proffered facts" established that the "Charleston office . . . was used for illegal telemarketing business" is misplaced. (Def. MTS at 7). The Affidavit established probable cause to believe that the Charleston office (*i.e.* Premises-2) contained evidence—such as electronic communications saved on devices, hard copy documents, and call scripts such—generated during the course of the fraud and obstruction schemes charged in the Indictment. No more is required.

43

Second, in arguing that the facts regarding Premises-2 set forth in the Affidavit were "stale by August of 2023," the defendant selectively points to portions of the record that was before Judges Ferenbach and Cave.  (*Id.* at 9).  Focusing on the fact that the Indictment alleges that his scheme to defraud did not proceed past 2020, the defendant contends that there can be no basis to believe that evidence of the scheme could be present at Premises-2 approximately two-and-a-half years later.  The defendant, once again, conflates probable cause that a crime was a committed at a particular location with whether evidence of that crime may be found at the location.  As to the latter, the Affidavit plainly established that as of on or about July 20, 2023, less than one month before the Premises Warrants were issued, at least one employee of the Zeitlin Call Centers was working from Premises-2.  (Aff. ¶ 23(d)(vi)).  The Affidavit also set forth extensive detail concerning the persistence of digital data and the historic use of Premises-2 by the Zeitlin Call Centers and its employees.  The "totality of the circumstances"—which included, among other things, the fact that the Zeitlin Call Centers had been headquartered at Premises-2 up until in or about 2018, Premises-2 had not been cleaned out, employees of the Zeitlin Call Center continued to work at Premises-2 after 2018, at least one employee's files relating to call scripts and call records were left at Premises-2 in or about September 2022, and at least one Zeitlin Call Center employee continuing to work from Premises-2 as of July 20, 2023—established that there was a "fair probability" that evidence of the defendant's crimes, which he committed through his business and his employees for multiple years, would be found at Premises-2.

The staleness doctrine, moreover, simply requires that a warrant must contain facts supporting the existence of probable cause "as of the time of the search."  *Raymonda*, 780 F.3d at 113 (emphasis added).  There is "no bright-line rule for staleness, which must be evaluated on the

basis of the facts of each case." *Id.* (internal quotations marks and citations omitted). "The two critical factors in determining staleness are the age of the facts alleged and the nature of the conduct alleged to have violated the law." *Id.* (internal quotation marks and citation omitted). "[T]he passage of time is not controlling and is but one factor to be considered, along with the kind of property sought and the nature of the criminal activity." *Singh*, 390 F.3d at 181 (citing cases). Where an affidavit "establishes a pattern of continuing criminal activity," such that there is reason to believe that the criminal conduct was not a "one-time occurrence," "the passage of time between the last alleged event and the warrant application is less significant." *Id.* (internal quotation marks and citation omitted). Here, moreover, the defendant is incorrect in claiming that his criminal conduct was not "continuing." (Def. MTS at 9). Continuing criminal activity does not mean present criminal activity, but rather, the "length" or duration of the defendant's crimes. *See Singh*, 390 F.3d at 181-82 (emphasis added) (citing *United States v. Farmer*, 370 F.3d 435, 439 (4th Cir. 2004)). Further, here, the defendant's criminal conduct continued after 2020 through his obstructive conduct in response to learning of the grand jury investigation into his fraud scheme in 2022.

Third, the defendant's attacks on the Agent's background and opinions as allegedly lacking "meaningful expertise" and as "untethered to the facts of the case" are unavailing. (Def. MTS at 7, 12-13). As the defendant concedes, it is well-established that "an agent's expert opinion is an important factor to be considered by the judge reviewing a warrant application." (Def. MTS at 4 (quoting *United States v. Fama*, 758 F.2d 834, 838 (2d Cir. 1985))). Here, the Affidavit established the Agent's expertise by reciting her employment at the FBI of approximately 11 years, which included eight years as a Special Agent, first on a counter-intelligence squad and now on a public

corruption squad.  (Aff. ¶ 3).  The Affidavit further established the Agent's vast experience as developed through her training, education, and participation in numerous fraud investigations, and how the Agent is "familiar with the techniques and methods commonly used by individuals engaged in fraud to communicate, operate their scheme(s), conceal their criminal activities, and avoid detection by law enforcement," as well as the "means and methods commonly used by individuals who obstruct justice, including by destroying or deleting evidence and/or directing others to destroy or delete evidence."  (*Id.*).  The Agent had more than enough experience to offer opinions supporting the probable cause determinations of Judges Ferenbach and Cave.  In fact, the lone case cited by the defendant weighs heavily against him.  There, the Second Circuit made clear that an "agent's expert opinion is an important factor" to be considered, and  the agent-affiant had approximately the same years of experience as the Agent.  (Def. MTS at 12 (citing *Fama*, 758 F.2d at 838   (agent had approximately ten years of experience))).   Judges Ferenbach and Cave reasonably relied on the Agent's opinions, which apply to the facts and to the defendant (*i.e.*, a business owner who engaged in a criminal scheme to defraud), and are entirely consistent with common sense.  *See supra* at 41-42 (citing cases).

The cases cited by the defendant are inapposite and support denial of his suppression motion.  In *United States v. Weber*, 923 F.2d 1338 (9th Cir. 1990), the agent affidavit discussed agent opinions about "child molesters," "pedophiles," and "child pornography collectors," but "there was not a whit of evidence in the affidavit indicating that Weber was a 'child molester.'" *Id.* at 1345.  Here, the Affidavit undeniably set forth probable cause that the defendant had engaged in a scheme to defraud and to destroy evidence.  And unlike in *United States v. Guzman*, No. S5 97 Cr. 786 (SAS), 1998 WL 61850, at *4 (S.D.N.Y. Feb. 13, 1998), where the search warrant was

"based solely on the self-avowed expertise of a law-enforcement agent," here, the warrants were supported by both the agent's opinions and numerous facts that were not based on the Agent's experience and training and independently supported the conclusion that both Premises were likely to contain electronic and documentary evidence of the Subject Offenses.

Finally, the defendant's related contention that "the reliability of some of [the Affidavit's] factual assertions," which are based on the Agent's participation in the investigation, interviews of witnesses, and discussions with other law enforcement officers, "is unknowable" is equally without merit.  (Def. MTS at 8 quoting Affidavit ¶ 23(d)).  The sole authority the defendant cites for this contention is *United States v. Gagnon*, 373 F.3d 230 (2d Cir. 2004), but this case is nothing like *Gagnon*.  (*Id.* (quoting *Gagnon* for the proponent's "veracity, reliability and basis of knowledge")).  *Gagnon* discussed "an informant's veracity, reliability and basis of knowledge," including "independent[] corroborat[ion]" of an informant's tip as one factor a court may consider in examining the "totality of circumstances."  *Gagnon*, 373 F.3d at 235.  *Gagnon* nowhere criticizes an agent's presentation of facts learned from a witness interview and her conversations with other agents.  Nor could it—because such sources are entirely reliable and proper.  The Government is not aware of any cases in which a court has granted a defendant's motion to suppress the fruits of a search warrant because facts set forth in an agent affidavit were based on an interview of a witness and the agent's conversations with other law enforcement officers—nor has the defendant cited any.  The defendant's attacks on the probable cause supporting the Warrants are thus unavailing.

### 2.      The Search Warrants Were Sufficiently Particularized

The Premises Warrants were sufficiently particularized because they: (1) "identif[ied] the specific offense" for which there was probable cause; (2) "describe[d] the place to be searched"; and (3) "specif[ied] the items to be seized by their relation to the designated crimes." *Ulbricht*, 858 F.3d at 99.[8]  The defendant's claim that these warrants were akin to "general warrants"—the "immediate evils that motivated the framing and adoption of the Fourth Amendment"—has no basis in fact. *Id.*  Rather than authorize the type of "indiscriminate searches and seizures" common in general warrants, *id.*, the Premises Warrants were appropriately tailored to evidence of specifically identified subject offenses and specific items to be seized as evidence, fruits, and instrumentalities of those subject offenses.

First, none of the defendant's arguments that the Warrants were general is supported by law.  In particular, the defendant argues that the warrants failed to: (1) further specify and describe the facts of the offense (*e.g.*, wire fraud "related to scripted fundraising calls on behalf of PACs"); (2) describe the time period during which the offenses are believed to have occurred (*e.g.*, wire fraud "occurring between 2017 and 2020" and "discrete obstruction occurring in 2022"); and (3) list the names of victims, witnesses, and subjects.  (Def. MTS at 16, 18).  But the defendant cites no authority to support the notion that any of the foregoing limitations are necessary to comply with the Fourth Amendment, and the Government is only aware of cases that have rejected that notion.  *See, e.g.*, *United States v. Hadden*, 20 Cr. 468 (RMB), Dkt. 162 (S.D.N.Y., May 4, 2022) (denying defendant's motion to suppress search warrants despite defense argument that warrants should have listed victim names); *see also United States v. Zemlyansky*, 945 F. Supp. 2d 438, 453

---

[8] The defendant does not dispute that the Premises Warrants described the places to be searched.

(S.D.N.Y. 2013) ("[W]arrants are generally found to be insufficiently particular where nothing on the face of the warrant tells the searching officers for what crime the search is being undertaken.") (internal quotation marks and citation omitted).  Absent any authority, there is no basis to find insufficient the Warrants' clear list of the Subject Offenses with statutory citations specifying each offense.

Second, the defendant offers no more than selective quotations of the Warrants in attempting to show that they did not properly specify the items to be seized.  For example, the defendant claims that "[e]vidence concerning occupancy or ownership" of the Premises is not sufficiently particular because it authorizes the seizure of "virtually anything."  (Def. MTS at 17-18).  But the defendant omits from his description the "various specified items" within this category (*id.* at 17), which includes "utility and telephone bills, mail envelopes, addressed correspondence" (Attachments A-2, B-2 ¶ 1(a)).  Likewise, the defendant refers to "[m]aterials, including documents, records, and communications, concerning potential, former, and current clients of call centers associated with and/or operated by [the defendant]," but fails to quote the full category, which includes "including political action committees ("PACs") and charities, and their owners, treasurers, boards, and employees."  (*Id.* ¶ 1(c)).  In sum, when properly reviewed in their entirety, the Warrants identify the items to be seized in a manner that goes well beyond "catch-all" phrases or "[m]ere reference to 'evidence' of a violation of a broad criminal statute or general criminal activity provid[ing] no readily ascertainable guidelines for the executing officers as to what items to seize."  *United States v. George*, 975 F.2d 72, 76 (2d Cir. 1992).  The "degree" of particularity provided is entirely commensurate with the "complexity of the criminal activity"

under investigation," and reasonable given the "type of evidence sought." *Cioffi*, 668 F. Supp. 2d at 391.[9]

Finally, while the Court need not decide whether the "all-records exception" applies here because the Warrants were sufficiently particular—the exception does apply. *See, e.g.*, *United States v. D'Amico*, 734 F. Supp. 2d 321, 360-61 (S.D.N.Y. 2010) (holding that "it is not necessary that the affidavit supporting the search warrant set forth specific factual evidence demonstrating that every part of the enterprise in question is engaged in fraud," rather, "the affidavit need contain only sufficient factual evidence of fraudulent activity from which a magistrate could infer that those activities are 'just the tip of the iceberg.'") (citing cases); *see id.* at 361-62 (upholding warrants to seize evidence of illegal and legal business dealings because it was "appropriate to enable the government to examine a complete picture of the funds flowing into and out of the company") (citing cases).

### 3. The Search Warrants Were Not Overbroad

The defendant's arguments of overbreadth based on volume and time limitations also fail. The defendant conflates overbreadth with the quantity of kinds of materials constituting fruits, evidence, and instrumentalities of the Subject Offenses detailed in the Warrants. (Def. MTS at 20-21). The Fourth Amendment does not place a limitation on the number of items that may be seized

---

[9] *See George*, 975 F.2d at 74-75 (finding that the following categories were "catch-all" categories: "Personal Papers of Dawn Wood"; "Misc. photos"; and "Other evidence relating to the commission of a crime"); *United States v. Buck*, 813 F.2d 588, 590 (2d Cir. 1987) (finding that "any papers, things or property of any kind relating to previously described crime" was a "catch-all" description"); *United States v. Hickey*, 16 F. Supp. 2d 223, 238-39 (E.D.N.Y. 1998) (finding that warrants authorizing seizure of "[a]ll business records," including, for example, "[b]ank records of any kind," that had no reference to the "nature of the specific wrongdoing triggering the searches").

so long as there was probable cause to seize them.  *See Lustyik*, 57 F. Supp. 3d at 228 ("[A] warrant is overbroad if its 'description of the objections to be seized . . . is broader than can be justified by the probable cause upon which the warrant is based.'"); *Elkorany*, 2021 WL 3668086, at *4 (overbreadth "focuses on whether the government lacked probable cause to search and seize the listed items").

Here, given the complexity of the defendant's crimes—including the multiple years over which he engaged in a scheme to defraud involving numerous entities, numerous employees, numerous calls made to donors, and numerous PACs—the number of categories of materials to be seized pursuant to the Premises Warrants was justified, including with respect to electronic devices.  *See, e.g.*, *United States v. Levy*, No. S5 11 Cr. 62 (PAC), 2013 WL 664712, at *8 (S.D.N.Y. 2013) (broad warrant with no timeframe limitation was justified by breadth and complexity of fraud described in underlying affidavit); *United States v. Jacobson*, 4 F. Supp. 3d 515, 522 (E.D.N.Y. 2014) (breadth of warrant was justified because "the crimes under investigation were complex and concerned a long period of time, not simply one or two dates of criminal activity"); *United States v. Dupree*, 781 F. Supp. 2d 116, 149 (E.D.N.Y. 2011) ("The nature of the crime . . . may require a broad search . . . .").

Contrary to the defendant's claims, there was also probable cause to seize materials that predated the Indictment period given the following facts, among others: the defendant's creation of the Zeitlin Call Centers in or about 1994; his creation of business entities before in or about 2017; his pre-2017 relationships with potential witnesses, co-conspirators, and employees; his financial and other motives for moving from charity clients to PAC clients before 2017; his history of using encrypted applications and devices; and evidence of his motive, opportunity, intent,

preparation, plan, knowledge, identity, absence of mistake, or lack of accident, as set forth in

Attachments B-1 and B-2.  Likewise, the complexity of the defendant's crimes, the use of

electronic devices by the defendant and by his employees in conducting business for the call center,

including business relating to call scripts and call recordings, and the capabilities of electronic

devices in sharing and storing data across devices, among other factors, justified the seizure of the

Devices from the Premises.

   The defendant's overbreadth arguments with respect to the Devices further conflate the

seizure of the Devices from the Premises and the search and seizure of the electronically stored

information ("ESI") from the Devices.  The FBI seized the Devices pursuant to the Premises

Warrants and are presently searching the Devices pursuant to the Device Warrant.  As the Affidavit

explained, under Federal Rule of Criminal Procedure 41(e)(2)(B), a warrant to search for and seize

property "may authorize the seizure of electronic storage media . . . for later review," because,

among other reasons, "the volume of data on electronic devices is often impractical for law

enforcement personnel to review in its entirety at the search location."  (Aff. ¶ 30).  The Device

Warrant further specifies detailed categories of ESI to be seized from the Devices' data.  (Ex. 1 at

157-58 (Attachment to Device Warrant)).

   Further, with respect to the Devices, the Premises Warrants were sufficiently particular

because they did not call for the seizure of every single device from both of the Premises.  Instead,

the Warrants authorized the seizure of: (1) from Premises-1, "[a]ny and all electronic devices . . .

used by or that appear to have been used by Zeitlin and/or in connection with the call centers and/or

entities associated with and/or operated with Zeitlin, including Apple devices," and devices

associated with the defendant's phone number and email addresses (Attachment A-2 ¶¶ 1(u)-(w));

and (2) from Premises-2, "[a]ny and all electronic devices . . . used by or that appears to have been used by Zeitlin and current and former employees and/or associates of Zeitlin, and/or in connection with call centers and/or entities associated with and/or operated with Zeitlin (Attachment B-2 ¶ 1(u)).

Finally, the defendant argues that the Premises-1 Warrant is overbroad because "it is unclear how executing agents would make th[e] determination [that a device was associated with the defendant's cellphone number] when executing the warrant." (Def. MTS at 21). This argument, however, is about the reasonableness of executing Premises Warrant-1—not about overbreadth. And as described in the Affidavit, the FBI planned to (and did) make reasonable efforts to execute the Premises-1 Warrant in the most reasonable fashion. The Affidavit stated:

> In order to execute the warrant in the most reasonable fashion, law enforcement personnel will attempt to investigate on scene which electronic devices have been and/or are used by [the defendant] and which electronic devices have not been used by [the defendant], for example, based on the location of the device.

(Aff. ¶ 31). Indeed, once at Premises-1, among other things, law enforcement personnel spoke with the defendant's wife in order to identify which devices were not used by the defendant and should not be seized.[10] Accordingly, the Premises Warrants were not overbroad.

---

[10] Similarly, the Affidavit provided:

> In order to execute the warrant in the most reasonable fashion, law enforcement personnel will attempt to investigate on the scene what computers or storage media have been used by [the defendant] and/or associates and/or employees of [the defendant] in connection with the Zeitlin Call Centers and/or the Zeitlin Entities, as well as what electronic devices must be seized or may be copied, based on the location of the electronic devices, materials surrounding the electronic devices, and any markings on the electronic devices. Law enforcement personnel may speak with the Company [the Zeitlin Call Centers] personnel on the scene as may be appropriate to determine the user(s) of the electronic devices.

(Aff. ¶ 32).

### 4.      The Good Faith Exception Applies

Even if the Court were to find some defect in the Premises Warrants—which it should not for the reasons describe above—suppression would not be appropriate under the good faith exception and longstanding Supreme Court precedent.  "'[S]earches pursuant to a warrant will rarely require any deep inquiry into reasonableness, for 'a warrant issued by a magistrate normally suffices to establish' that a law enforcement officer has 'acted in good faith in conducting the search.'"  *United States v. Clark*, 638 F.3d 89, 100 (2d Cir. 2011) (internal citations omitted) (quoting *Leon*, 468 U.S. at 922; *Illinois v. Gates*, 462 U.S. 213, 267 (1983); *United States v. Ross*, 456 U.S. 798, 823 n.32 (1982).  Here, the Government acted in "objectively reasonable reliance" on the Premises Warrants and the determination of two federal judges that the warrants complied with the Fourth Amendment.  *Purcell*, 2018 WL 4378453, at *2-3 (quoting *Leon*, 468 U.S. at 922).  None of the four circumstances negating the good faith exception are applicable: (1) neither Judge Ferenbach nor Judge Cave was knowingly misled; (2) neither Judge Ferenbach nor Judge Cave "wholly abandoned" their judicial role; (3) the applications were not "so lacking in indicia of probable cause as to render reliance upon it unreasonable"; and (4) the warrants were not "so facially deficient that reliance upon [them] was unreasonable."  *Id.* (quoting *Galpin*, 720 F.3d at 452).  A "reasonably well trained officer would [not] have known that the search was illegal in light of all of the circumstances."  *Rosa*, 626 F.3d at 64.  Because a search warrant is presume reliable, *Franks v. Delaware*, 438 U.S. 154, 171 (1978), the Government and the FBI's reliance on the Premises Warrants was objectively reasonable—and the good faith exception applies.

## CONCLUSION

For the foregoing reasons, the defendant's pretrial motions to dismiss the Indictment, for a

bill of particulars, and to suppress evidence seized from his residence and business property should

be denied.

Dated:  New York, New York
        December 14, 2023

                                        Respectfully submitted,

                                        DAMIAN WILLIAMS
                                        United States Attorney for the
                                        Southern District of New York

                        By:     _____
                                        Jane Kim
                                        Daniel H. Wolf
                                        Rebecca Dell
                                        Assistant United States Attorneys
                                        Tel.: 212-637-2038 / 2337 / 2198