LAW OFFICES OF

# DRATEL & LEWIS

29 BROADWAY
Suite 1412
NEW YORK, NEW YORK  10006
—
TELEPHONE (212) 732-0707
FACSIMILE (212) 571-3792
E-MAIL: jdratel@dratellewis.com

JOSHUA L. DRATEL
LINDSAY A. LEWIS
—
AMY E. GREER

ACHARA AMY SCHRODER
*Paralegal*

January 2, 2024

**BY ECF**

The Honorable Lewis A. Kaplan
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007

Re:     *United States v. Richard Zeitlin,*
            23 Cr. 419 (LAK)

Dear Judge Kaplan:

This letter is respectfully submitted on behalf of Richard Zeitlin, defendant in the above-entitled matter, and whom Robert G. Bernhoft, Esq., and I represent therein, and constitutes a renewal of Mr. Zeitlin's motion for pretrial release based on changed circumstances that substantially impair his ability to prepare for trial in this matter.  Counsel are prepared to discuss this matter at the conference this Thursday, January 4, 2024, dedicated to oral argument on Mr. Zeitlin's pretrial motions.

Mr. Zeitlin therefore requests pretrial release pursuant to whatever strict supervision the Court deems necessary:  electronic monitoring, home detention, frequent reporting, living with a family member, and/or any other conditions the Court would impose.

The reasons for this renewed application were previewed during the proceedings conducted Thursday, December 21, 2023, namely the conditions at the Metropolitan Detention Center ("MDC") that preclude adequate preparation for trial.  Those conditions, listed below, implicate not only Mr. Zeitlin's capacity to review essential discovery and other materials, but also his ability to confer with counsel, to maintain his health before and during trial, and to be in a position to testify at trial should he so choose.

LAW OFFICES OF
**DRATEL & LEWIS**

Hon. Lewis A. Kaplan
United States District Judge
Southern District of New York
January 2, 2024
Page 2 of 8

I.      *The Intolerable Conditions at MDC*

As noted during the December 21, 2023, proceedings, MDC has been subject to a lockdown since December 14, 2023, when an inmate assaulted a staff member.  That assault, and the lockdown, are confirmed in a Memorandum from C. Rodriguez, Captain ("Rodriguez Memo"), circulated to MDC inmates December 15, 2023.  A copy of the Rodriguez Memo is attached hereto as Exhibit 1.

As the Rodriguez Memo states, the "the inmate population will remain secure until further notice."  More than two weeks later, very little has changed.  Inmates are afforded precious little time outside their cells.  They have extraordinarily limited time to shower, to use email or phone communication (with long lines for both), and/or to use the computers to review discovery.  Essentially, the ordinary limitations on inmates have been narrowed even further.

While late last week the lockdown was partially relaxed to permit detainees two hours outside their cells each day, within two days another serious assault involving numerous inmates armed with knives resulted in resumption of the strict lockdown.  In addition, in subduing those involved, MDC personnel used mace or pepper spray that spread through the entire unit on which Mr. Zeitlin is housed (as the altercation occurred on that unit).  Mr. Zeitlin, who has asthma, was adversely affected by those fumes, which wafted into his cell.[1]

Moreover, Thursday, December 28, 2023, an email from Sophia Papapetru, Esq., the BoP Supervisory Attorney at MDC ("Papapetru Emal"), informed lawyers that the phone system at MDC was inoperative for a period that day, and that while incoming service had been restored, outgoing service remained unavailable.  A copy of the Papapetru Email is attached hereto as Exhibit 2.

As a result, all phone and video conferences that day were canceled.  It is unclear whether that problem reflects a more systemic problem at MDC.  Of course, such dysfunction has a ripple effect.  I learned from colleagues who visited MDC Thursday, December 28, 2023, that they waited 3-1/2 hours for their clients to be produced for visits.  In addition, cancellations and delays means that more calls, videoconferences, and visits will be compressed into a shorter time frame as defendants and their lawyers attempt to make up for the lost time.

Aside from the lockdown, trial preparation has been impossible for Mr. Zeitlin.  The computer on his unit is shared with other inmates, reducing the available time for him

---

[1]  Mr. Zeitlin has been provided an inhaler by MDC medical staff since his arrival at the facility.

LAW OFFICES OF
**DRATEL & LEWIS**

Hon. Lewis A. Kaplan
United States District Judge
Southern District of New York
January 2, 2024
Page 3 of 8

dramatically.  Even when he does gain access, the age of the equipment and/or software freezes or crashes the operating system before any discovery can be reviewed.

Mr. Zeitlin has not been afforded access to the law library since he was transferred from the Essex County Correctional Facility November 2, 2023, and even when the lockdown ends, that time will be limited to an hour per *week*.  In a case involving between two and three terabytes of discovery that Mr. Zeitlin is anxious to review, these conditions preclude adequate trial preparation.  Also, recently MDC has been opening and copying Mr. Zeitlin's legal mail.

There is simply not any effective way for Mr. Zeitlin to participate in the preparation of his defense under these circumstances.  This is a complex case with extremely voluminous digital discovery, and it is inconceivable how Mr. Zeitlin can, under the circumstances present at MDC, perform his necessary review of the discovery, and provide substantive and meaningful comment to counsel in a timely manner.  Since trial is only three months away, it is respectfully submitted that this situation constitutes a crisis.

The lockdown, and the general, routine problems at MDC – the product of deficient staffing, a decaying physical plant, and historical neglect – also have an impact on Mr. Zeitlin's ability to prepare.  In June 2022, Mr. Zeitlin had back surgery (a diskectomy removing a disk in his lumbar region).  As a result, he still suffers some back pain.  However, recently he has been unable to obtain even Advil from the MDC infirmary.

Nor can he purchase it regularly from the commissary – last week, for the first time since his arrival at MDC, Mr. Zeitlin was able to obtain Advil from the commissary – because the commissary does not function on a regular basis, and/or is more often than not out of stock of basically everything.[2]  As a result, Mr. Zeitlin has been unable to obtain toothpaste, dental floss, underwear, or T-shirts.

Nor is the diet at MDC conducive to continued health.  Often the refrigeration units in the kitchen malfunction, which eliminates the ability to serve hot food.  As a result, more than once for a period of days within the past year, inmates must subsist on a ration of peanut butter sandwiches and an apple.[3]  The frequent violence in the institution also threatens Mr. Zeitlin's

---

[2]  Other clients besides Mr. Zeitlin report the same with respect to the matters set forth in this letter.

[3]  According to a Brown UniversityUndergraduate Journal of Public Health article, almost one in three prisoners have hypertension and 7.2 per cent have diabetes (nearly twice the rate in the general population), which is almost double the rate in the general population.  Parisa

LAW OFFICES OF
**DRATEL & LEWIS**

Hon. Lewis A. Kaplan
United States District Judge
Southern District of New York
January 2, 2024
Page 4 of 8

safety (and is a source of mental distress), and discourages him from seeking more time on the computer or phone.

These conditions represent more than a distraction for an inmate. They constitute a tangible impediment to focusing, and spending sufficient time, on the case. Devising alternatives to the serial problems at MDC is instead a preoccupation, as inmates must continually navigate these obstacles, and certainly not always successfully.

In that context, for Mr. Zeitlin and counsel, a significant part of the problem is not that the issues at MDC are unpredictable; it is instead that the existence *some* problem is entirely predictable, but the specific issue and its timing and impact are cyclical, and defy planning. There is simply not any mechanism for anticipating when, and what, will go wrong until it occurs without notice. That is not only frustrating; it also repeatedly interferes with the necessary and orderly preparation of the defense with a defendant who may well choose to testify at trial.

Indeed, the problems with BoP facilities are systemic, and include decaying facilities and

---

Afsharian, "Beyond the Food: How Prison Nutrition Policy Contributes to Lasting Chronic Disease," *Brown Undergraduate Journal of Public Health*, May 2, 2023, available https://bit.ly/4aEcBl0. In addition, the "daily consumption of nutrient-poor, high-calorie diets leave lasting impacts on cholesterol levels and body fat, as it takes only four weeks for diet to impact these metrics long term." *Id.*

Similarly, a 2017 Prison Policy Initiative survey of public health studies cited the aforementioned study, along with others, confirming that there are "long-term health consequences of forcing incarcerated people to consume unhealthy food." Wendy Sawyer, "Food for thought: Prison food is a public health problem," *The Prison Policy Initiative*, March 3, 2017, available at https://bit.ly/3TFwVfP. *See also* Ernersson A, Nystrom FH, Lindström T., "Long-term increase of fat mass after a four week intervention with fast food based hyper-alimentation and limitation of physical activity," *Nutrition & Metabolism,* August 25, 2010, available at doi:10.1186/1743-7075-7-68.

Likewise, a 2020 Impact Justice publication reported that "[r]esearch shows that just one month of unhealthy meals can result in long-term rises in cholesterol and body fat, increasing the risk of diet-related diseases. . . . A poor diet also suppresses the immune system, making incarcerated people even more vulnerable to viruses such as COVID-19 and other contagions." Leslie Soble, Kathryn Stroud, and Marika Weinstein, *Eating Behind Bars: Ending the Hidden Punishment of Food in Prison*, Impact/Justice, November 2020, at 8, available at https://bit.ly/48gb4Qp.

LAW OFFICES OF
**DRATEL & LEWIS**

Hon. Lewis A. Kaplan
United States District Judge
Southern District of New York
January 2, 2024
Page 5 of 8

maintenance deficits.  *See* Luke Barr, "All 123 US federal prisons need 'maintenance':  Inspector general," *ABC News*, May 25, 2023, available at https://abcn.ws/3vjauDa ("[t]he 123 federal prisons in the United States need roughly $2 billion worth of "maintenance" and most are 'aging and deteriorating,' according to a DOJ inspector general report");  *see also id.* ("'[w]e're seeing crumbling prisons,' DOJ Inspector General Michael Horowitz told Chief Justice Correspondent Pierre Thomas. 'We're seeing buildings that we go into that have actually holes in the ceilings in multiple places, leading to damages to kitchens, to doctor's offices to gymnasiums.  And they're not being fixed'").

Staffing shortages, which plague MDC in particular and BoP generally, also create dangerous and inadequate conditions.  The Department of Justice Inspector General's report, which was based on unannounced visits to specific facilities (one of which was a women's prison discussed in these quotations) "found that ongoing staffing shortages among Correctional Officer positions may result in staff working double shifts, some as long as 16 hours, to cover vacant posts."  *Audit of the Federal Bureau of Prisons' Efforts to Maintain and Construct Institutions*, Audit Division, 23-064, U.S. Department of Justice Office of the Inspector General, May 2023, at 13, available at https://bit.ly/4aCxpJO.[4]  *See also See also Review of Personnel Shortages in Federal Health Care Programs During the COVID-19 Pandemic*, Pandemic Response Accountability Committee, September 2023, available at https://bit.ly/47gp7V0.[5]

All of these factors combine to create and contribute to the intolerable conditions at MDC, and, in the absence of the relief sought herein, the denial of Mr. Zeitlin's right to prepare and participate in his defense, and his right to adequate access to counsel.

**II.**      *Mr. Zeitlin's Sixth Amendment Right to Participate in the Preparation of His Defense*

Decades ago, the Second Circuit recognized that "one of the most serious deprivations suffered by a pretrial detainee is the curtailment of his ability to assist in his own defense." *Wolfish v. Levi*, 573 F.2d 118, 133 (2d Cir. 1978), *rev'd on other issues sub nom. Bell v. Wolfish*, 441 U.S. 520 (1979).

---

[4]  *See also Inspection of the Federal Bureau of Prisons' Federal Correctional Institution Tallahassee*, Evaluation and Inspections Division, 24-005, U.S. Department of Justice Office of the Inspector General, November 2023, at 13, available at https://bit.ly/48usvfW.

[5]  The Pandemic Accountability Response Committee includes representatives from the Inspector Generals' Offices of the Department of Justice, Department of Defense, Department of Veterans Affairs, and Department of Health & Human Services.

LAW OFFICES OF
**DRATEL & LEWIS**

Hon. Lewis A. Kaplan
United States District Judge
Southern District of New York
January 2, 2024
Page 6 of 8

Nor can that be satisfied merely by counsel's preparation.  As the Supreme Court declared in *Faretta v. California*, 422 U.S. 806 (1975)

> [t]he Sixth Amendment does not provide merely that a defense shall be made for the accused;  *it grants to the accused personally the right to make his defense*.  It is the accused, not counsel, who must be 'informed of the nature and cause of the accusation,' who must be 'confronted with the witnesses against him,' and who must be accorded 'compulsory process for obtaining witnesses in his favor.'

*Id*., at 819 (emphasis added).

In addition, in *California v. Trombetta*, 467 U.S. 479 (1984) the Court noted it has "long interpreted [Due Process Clause's] standard of fairness to require that criminal defendants be afforded a meaningful opportunity to present a complete defense." *Id*., at 485.  *See also Arizona v. Youngblood*, 488 U.S. 51, 55 (1988).  As the Court in *Trombetta* explained, "[t]o safeguard that right, the Court has developed 'what might loosely be called the area of constitutionally guaranteed access to evidence." *Id*., *quoting United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982).

Here, MDC's conditions are depriving Mr. Zeitlin of his right to prepare and assist in his own defense, and are effectively denying him access to the evidence he has a right to review personally.  *See United States v. Loera*, 09 Cr. 466 (BMC), 2017 WL 9481022, at *1 (E.D.N.Y. Sept. 27, 2017), *report and recommendation adopted in part*, 2017 WL 4675773 (E.D.N.Y. Oct. 17, 2017) (outlining the Court's thorough fact-based analysis discussing why the defendant's lack of sufficient access to discovery through attorney visits impeded his Sixth Amendment rights).

**III.**     *Mr. Zeitlin's Sixth Amendment Right to Sufficient Access to Counsel*

In the context of a lawsuit instituted against MDC in relation to the 2019 power failure, the Court in that case explained that "[t]here is no question that an inmate's right to attorney visits is protected by the Sixth Amendment to our Constitution." *Fed. Defs. of New York, Inc. on behalf of Metro. Det. Ctr. – Brooklyn v. Fed. Bureau of Prisons*, 416 F. Supp. 3d 249, 251 (E.D.N.Y. 2019).

Consequently, "unreasonable interference with the accused person's ability to consult counsel is itself an impairment of the right." *Benjamin v. Fraser*, 264 F.3d 175, 185-86 (2d Cir. 2001).  Relying on Supreme Court precedent, the Court in *Fraser* confirmed that because

LAW OFFICES OF

**DRATEL & LEWIS**

Hon. Lewis A. Kaplan
United States District Judge
Southern District of New York
January 2, 2024
Page 7 of 8

"pretrial detainees need access to the courts and counsel . . . to defend against the charges brought against them[,]" to "deprive a person of counsel during the period prior to trial may be more damaging than denial of counsel during the trial itself." *Id.* (listing cases) (quoting *Maine v. Moulton*, 474 U.S. 159, 170 (1985)).

Moreover, in *Wolfish v. Levi,* the Court held that "prison regulations restricting pretrial detainees' contact with their attorneys [are] unconstitutional where they 'unreasonably burdened the inmate's opportunity to consult with his attorney and to prepare his defense.'" *Benjamin v. Fraser*, 264 F.3d at 187 (quoting *Wolfish,* 573 F.2d at 133).

In fact, certain procedures the Second Circuit found of doubtful necessity more than 20 years ago in *Fraser* remain in effect at MDC. For example, "[n]o reasons were given why the Department could not begin the process of bringing detainees to counsel rooms when an attorney first checks in to the facility, rather than when the attorney arrives at the visiting area." Also, prison officials failed to "present evidence explaining why a reservation policy could not be used in facilities with limited visiting space." 264 F.3d at 187 (cleaned up).[6]

And 41 years after *Wolfish v. Levi*, the Federal Defenders were compelled to file a lawsuit against BoP because of MDC's consistent failure to afford detainees sufficient access to counsel in the form of legal visits. *Fed. Defs. of New York*, 416 F. Supp.3d at 251. There, the District Court noted that "security concerns are ever present in the prison context. This alone, however, does not permit the wholesale denial of a detainee's Sixth Amendment right." *Id.*[7]

---

[6] When visiting resumed at MDC in late 2020 during the Covid-19 pandemic, the facility did implement a reservation policy for attorney visits.

[7] MDC's problems providing a proper level of access to counsel are apparently emblematic of federal pretrial detention as a whole. *See Report and Recommendations Concerning Access to Counsel at the Federal Bureau of Prisons' Pretrial Facilities*, Advisory Group of DOJ Components (July 20, 2023), available at https://bit.ly/3tviWi7.

LAW OFFICES OF
**DRATEL & LEWIS**

Hon. Lewis A. Kaplan
United States District Judge
Southern District of New York
January 2, 2024
Page 8 of 8

**Conclusion**

Accordingly, for all the reasons set forth above, it is respectfully requested that Mr. Zeitlin be granted pretrial release pursuant to whatever demanding and restrictive conditions the Court deems necessary and appropriate.

Respectfully submitted,

Joshua L. Dratel

JLD/