UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA,


      -against-                                      23-cr-0419 (LAK)


RICHARD ZEITLIN,

                         Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**MEMORANDUM OPINION**


                Appearances:


                                    Jane Kim
                                    Daniel H. Wolf
                                    Rebecca Dell
                                    Assistant United States Attorneys
                                    DAMIAN WILLIAMS
                                    UNITED STATES ATTORNEY


                                    Joshua L. Dratel
                                    LAW OFFICES OF JOSHUA L. DRATEL, P.C.
                                    Robert G. Bernhoft
                                    Thomas A. Szott
                                    THE BERNHOFT LAW FIRM, S.C.
                                    *Attorneys for Defendant*


LEWIS A. KAPLAN, *District Judge.*

            Defendant Richard Zeitlin is charged in a four-count indictment with conspiracy to

commit wire fraud (Count One), wire fraud (Count Two), conspiracy to obstruct justice (Count

2

Three), and obstruction of justice (Count Four).[1]  In the days after the indictment was filed, federal

officers obtained and executed search warrants for defendant's residence and one of his offices, both

of which are located in Las Vegas.[2]  Defendant now moves this Court to suppress all evidence seized

pursuant to those search warrants, including seizures of any electronic devices.[3]  For the reasons set

forth below, defendant's motion is denied.


### *Facts*[4]

The Indictment alleges that defendant operated a telemarketing call center business

in Nevada that defrauded its donors from approximately 2017 through 2020.[5]  He allegedly misled

donors by falsely representing how their donations would be spent, either by claiming that they

would go to charities rather than political action committees ("PACs") or that they would go toward

various organizations or new fund raising drives rather than to the call centers themselves.[6]  In

addition, the Indictment charges that defendant around May 2022 obstructed the government's

investigation by instructing others to destroy records and evidence that the government might seek

---

[1] Dkt 1 ¶¶ 16-25.

[2] Dkt 44-2 at 55-61; Dkt 44-3 at 55-62.

[3] *See generally* Dkt 43 (Def. Mot.).

[4] The Court assumes familiarity with the underlying facts and the procedural history and thus provides the minimal background necessary to decide the motions.

[5] Dkt 1 ¶¶ 7-12, 16-20.

[6] *Id*.

3

to collect.[7]

On August 16, 2023 — the day after the Indictment was filed — an FBI Special Agent submitted a warrant application in the District of Nevada in relation to the same subject offenses as those charged in the Indictment.[8]  The application sought two warrants: one to search defendant's residence on La Madre Way and one to search his business property on East Charleston Boulevard, both located in Las Vegas.[9]  The warrant application was supported by an affidavit from the agent and incorporated the Indictment.[10]  Magistrate Judge Cam Ferenbach issued the two search warrants on August 16.[11]  The FBI executed them the next day.

Defendant was arrested at his residence in Nevada on August 17, 2023.  He now moves to suppress evidence seized in execution of the two search warrants, arguing that (1) the agent's affidavit did not establish probable cause sufficient for the issuance of either warrant; (2) the search warrants violated the particularity requirement of the Fourth Amendment; (3) the search warrants violated the overbreadth limitation of the Fourth Amendment; and (4) the "good faith"

---

[7]

 *Id.* ¶¶ 14-15, 21-25.

[8]

 Dkt 44-2 at 2-54; Dkt 44-3 at 2-54.

 Because the agent submitted one application and affidavit for both search warrants, all future references to the agent's application and affidavit will cite only Dkt 44-2.

[9]

 Dkt 44-2 at 3-4.

[10]

 *Id.* at 3-54.

[11]

 Dkt 44-2 at 55-61; Dkt 44-3 at 55-62.

4

exception does not apply.[12]

### *Discussion*

1.     *Probable Cause*

       Defendant admits, both in briefing and at oral argument, that the warrant application established probable cause to conclude that (1) he committed the subject offenses; (2) he resided at the La Madre residence; and (3) at least some of his employees worked at the Charleston office.[13] He admits also that the agent's affidavit established a nexus between the searched premises and defendant and his business.[14]  Instead, defendant hangs his hat on the argument that the warrant application did not establish a nexus between the searched premises and defendant's alleged *offenses* sufficient to justify a finding of probable cause.[15]  But defendant's argument implicitly both overstates the extent of the protection afforded by the Fourth Amendment and understates the strength of the showing made to Magistrate Judge Ferenbach in the search warrant application.

       In the context of a search warrant, it is well-established that "probable cause is a flexible, common-sense standard."[16]  "The issuing judicial officer must 'make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . including

---

[12]     *See generally* Dkt 43 (Def. Mot.).

[13]     *Id.* at 4-5.

[14]     *Id.* at 5.

[15]     *Id*.

[16]     *Texas v. Brown*, 460 U.S. 730, 742 (1983).

the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.'"[17] Importantly, this inquiry does *not* require proof that the place to be searched is or was the location of the criminal activity itself,[18] but rather "only such facts as make wrongdoing or the *discovery of evidence thereof* probable."[19] Thus, a sufficient nexus between the alleged criminal activities and the place to be searched "does not require direct evidence and may be based on reasonable inference from the facts presented based on common sense and experience."[20]

Moreover, in reviewing the issuance of a warrant by a neutral and detached judicial officer, the Court is required to "accord substantial deference to the [officer's] finding."[21] Any "doubts should be resolved in favor of upholding the warrant."[22] The Court's review thus is limited to determining "whether the issuing judicial officer had a substantial basis for the finding of probable

---

[17]     *United States v. Wagner*, 989 F.2d 69, 72 (2d Cir. 1993) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)); *see also Walczyk v. Rio*, 496 F.3d 139, 156 (2d Cir. 2007).

[18]     *United States v. Harding*, 273 F. Supp. 2d 411, 417-18 (S.D.N.Y. 2003) (quoting *United States v. Burton*, 288 F.3d 91, 103 (3d Cir. 2002)); *United States v. Riley*, 906 F.2d 841, 845 (2d Cir. 1990)).

[19]     *Walczyk*, 496 F.3d at 157 (emphasis added).

[20]     *United States v. Singh*, 390 F.3d 168, 182 (2d Cir. 2004) (internal citations and quotation marks omitted).

[21]     *Wagner*, 989 F.2d at 72 (citing *United States v. Nichols*, 912 F.2d 598, 602 (2d Cir. 1990); *United States v. Travisano*, 724 F.2d 341, 345 (2d Cir. 1983)).

[22]     *United States v. Rosa*, 11 F.3d 315, 326 (2d Cir. 1993) (internal quotation marks omitted) (quoting *Travisano*, 724 F.2d at 345).

cause."[23]

The Court concludes without hesitation that the search warrant application here provided a substantial basis for finding probable cause that evidence of the charged crimes would be located at the target premises. Indeed, the relevant facts and statements in the agent's affidavit that linked the premises to evidence of the offenses are too numerous to list fully here — the Court instead directs interested persons to the government's opposition memorandum[24] and to the warrant application itself.[25] However, a few statements in particular are worth highlighting.

First, with respect to the La Madre residence address. As defendant does not contest that he resided at that address and that he committed the charged offenses, the warrant application merely had to connect evidence of the offenses to the address to show probable cause. Among other things, the agent's affidavit reported that interviews with defendant's employees and a co-conspirator revealed that defendant regularly worked remotely and conducted business by phone or encrypted messaging application.[26] In addition, a warrant issued for defendant's phone in another case revealed that phone to have been located in the vicinity of the La Madre address in August 2023, and records from Apple regarding the same time period showed the phone to have been connected to numerous

---

[23]

*Singh*, 390 F.3d at 181 (internal quotation marks omitted) (quoting *Wagner*, 989 F.2d at 72); *see also United States v. Raymonda*, 780 F.3d 105, 113 (2d Cir. 2015).

[24]

Dkt 50 (Gov. Opp.) at 5-10, 39-41.

[25]

Dkt 44-2 at 3-54.

[26]

*Id*. at 18.

other Apple devices, including other phones, iPads, desktop computers, and laptops.[27]  The agent

provided also a photograph from Zillow.com taken in 2022 of what appears to have been a home

office located at the La Madre residence with multiple electronic devices visible, as well as

photographs of defendant that appear to show him seated in that home office.[28]  Throughout 2023,

an email address associated with defendant conducted Google searches related to his legal issues and

to obstruction, including seeking to flee the U.S. while indicted.[29]  And the agent provided evidence

that defendant received business mailing related to his call center business at the La Madre address,[30]

in addition to providing her own expertise on how business owners and individuals engaged in

fraudulent schemes typically work, communicate, and store their electronic devices.[31]

       With respect to the Charleston address.  In view of defendant's admissions, the

warrant application, in order to show probable cause, simply needed to point to evidence of

wrongdoing associated with the address.  Among other things, the agent's affidavit revealed that

defendant owned the Charleston office, that it operated as the headquarters of his business from 1994

until 2018, overlapping with the alleged fraudulent conduct, and that it continued to conduct business

---

[27]
     *Id.* at 17-18.

[28]
     *Id.* at 19 & n.8, 32.

[29]
     *Id.* at 15-16, 20.

[30]
     *Id.* at 16-17.

[31]
     *Id.* at 12-15.

for defendant's call centers through 2023.[32]  In addition, two of the employees working out of the Charleston office in 2022 — one of whom had been working for defendant's business since 2012 — drafted call scripts for the defendant and maintained electronic and hard copy files relating to the calls in the office, which remained at the Charleston location after the employees left the business.[33] And again, the agent provided evidence that defendant himself conducted some business at the Charleston office[34] and provided her own expertise on how business owners and employees use electronic devices, store electronic communications, and maintain work product.[35]

Such specificity in the warrant application was more than sufficient to establish probable cause.  Defendant's protestation that the application did not show a nexus specifically "between the [searched premises] and any alleged criminal conduct"[36] simply rests on a misstated assumption of law.  The warrant application need not have shown that the crimes were committed at the searched premises, only that "there [wa]s a fair probability that *contraband or evidence* of a crime w[ould] be found."[37]  And here, the affidavit met that standard by establishing that (1) defendant worked from his La Madre residence using electronic devices that likely contained

---

[32]     *Id.* at 21, 24.

[33]     *Id.* at 23-24.

[34]     *Id.* at 18.

[35]     *Id.* at 25.

[36]     Dkt 43 (Def. Mot.) at 8; *see also id.* at 5.

[37]     *Gates*, 462 U.S. at 238 (emphasis added).

9

evidence of wrongdoing and frequently were kept at the residence; and (2) defendant's call center business operated out of the Charleston office from 1994 through 2023 and stored electronic devices, communications, and call script files at that location from 2022-2023.  Nothing more was required.

Defendant attempts to undermine the sufficiency of the facts presented in the application by claiming that there were "stale."  He specifically targets the 2022 photograph of the La Madre home office provided from Zillow.com and the work and storage located at the Charleston office in 2022.[38]  But the staleness doctrine requires simply that evidence supporting a warrant be sufficiently close in time to its issuance to support a finding of probable cause at the time of the search.

There is "no bright line rule" for determining when supporting evidence has gone stale.[39]  Courts tend to consider the age of the supporting facts in conjunction with the nature of the alleged offenses when evaluating staleness, though "when the supporting facts present a picture of continuing conduct or an ongoing activity, the passage of time . . . becomes less significant."[40]  Indeed, this is the point that defendant fails to grasp.  Not only was a year-old public photograph of the La Madre home office not "stale," but defendant's continued residence and use of his devices there through August 2023 constituted the sort of ongoing conduct that made it probable that relevant evidence still would be found there.  So too with the Charleston office.  While defendant's fraudulent conduct is alleged to have occurred only between 2017 and 2020, the location was used for call

---

[38]

Dkt 43 (Def. Mot.) at 6, 9.

[39]

*Wagner*, 989 F.2d at 75.

[40]

*United States v. Ortiz*, 143 F.3d 728, 732 (2d Cir. 1998) (internal quotation marks omitted) (cleaned up) (quoting *United States v. Martino*, 664 F.2d 860, 867 (2d Cir. 1981)).

center activity through at least July 2023 and continued to maintain the call scripts, records, and communications of at least one employee who had worked for the business from 2012 until September 2022. Such facts provided clear support for the continued existence of key evidence at both premises in August 2023.

Nor do defendant's attacks on the agent's experience, opinions, and expertise alter the probable cause analysis. Contrary to defendant's assertions, the agent laid sufficient foundation for her various characterizations of defendant — including as a "business executive" and a person engaged in telemarketing fraud — by incorporating the Indictment into the affidavit, as well as evidence from his employees and co-conspirators.[41] Moreover, the agent's affidavit robustly established her relevant expertise, including: (1) her eleven years of FBI experience, eight of which have been as a Special Agent; (2) her seven years on the FBI counter-intelligence squad and one year on its public corruption squad; (3) her participation in multiple public corruption investigations, including specifically for telemarketing and wire fraud; and (4) her extensive training and education in relevant subjects, including in executing search warrants.[42] In any event, many of the opinions she offered — such as that "cellphones are frequently kept at [their] owner's residence and/or on their owner's person"[43] — do not require a particularly groundbreaking level of expertise, but rather exhibit the sort of basic "common sense and experience" upon which a reasonable judicial officer

---

[41] See generally Dkt 44-2. Indeed, defendant himself admits that there is sufficient probable cause in the warrant application to find that he committed the charged offenses, Dkt 43 (Def. Mot.) at 4, and he never contests that he is an executive of the call centers at issue.

[42] Dkt 44-2 at 5-6.

[43] Id. at 15.

should base his or her decision.[44]  Magistrate Judge Ferenbach certainly was entitled to rely on the

opinions and expertise represented in the Agent's affidavit here.

### 2.    *Particularity*

The particularity requirement of the Fourth Amendment is designed to prevent "the

wide-ranging exploratory searches" characteristic of a general warrant.[45]  "To be sufficiently

particular under the Fourth Amendment, a warrant must satisfy three requirements."[46]  The warrant

must: (1) "identify the specific offense for which the police have established probable cause", (2)

"describe the place to be searched", and (3) "specify the items to be seized by their relation to

designated crimes."[47]  However, a perfect description of the authorized seizure is not required[48] —

rather, courts will accept a degree of ambiguity in the warrant "where law enforcement agents have

done the best that could reasonably be expected under the circumstances."[49]  Furthermore, broad

search warrants still may be found to be sufficiently particular.  Indeed, "in many cases, the volume

---

[44]

   *Singh*, 390 F.3d at 182 (internal citations and quotation marks omitted).

[45]

   *Maryland v. Garrison*, 480 U.S. 79, 84 (1987).

[46]

   *United States v. Ulbricht*, 858 F.3d 71, 99 (2d Cir. 2017).

[47]

   *United States v. Galpin*, 720 F.3d 436, 445-46 (2d Cir. 2013) (internal citations and quotation marks omitted); *see also Ulbricht*, 858 F.3d at 99.

[48]

   *Ulbricht*, 858 F.3d at 100.

[49]

   *United States v. Young*, 745 F.2d 733, 759 (2d Cir. 1984); *see also Galpin*, 720 F.3d at 446; *Ulbricht*, 858 F.3d at 100.

of records properly subject to seizure because of their evidentiary value may be vast."[50]

Defendant asserts that the La Madre and Charleston office warrants were facially invalid on the ground that they did not detail adequately the requisite offenses or the evidence to be seized.[51]  The former complaint is easily dismissed.  Defendant has cited no authority requiring a detailed, factual description of the subject offenses in the warrant beyond identifying the specific statutory crimes charged, which was done here.  Indeed, the only authority that defendant provides is *dicta* in a footnote discussing cases from other circuits, which hold that a simple recitation of statutory provisions, without more, do not satisfy the particularity requirement.[52]  But even if that were the law in this circuit, the warrants before this Court go beyond merely authorizing seizure of evidence related to particular statutory offenses, as they are accompanied by lists of the kind of evidence that might be related to those crimes.[53]  Defendant's argument is unpersuasive.

Second, defendant's characterization of the warrants' specifications of evidence to be seized is both inaccurate and incomplete.  For instance, he highlights the fact that the warrants authorize collection of evidence of occupancy or ownership and argues that "virtually anything in

---

[50]

   *Ulbricht*, 858 F.3d at 100.

[51]

   Dkt 43 (Def. Mot.) at 15-16.

[52]

   *Id*. at 16 (citing *Galpin*, 720 F.3d at 445 n.5).

   In addition, the case on which defendant most relies throughout his particularity argument, *United States v. Wey*, also does not support his position.  256 F. Supp. 3d 355, 384 (S.D.N.Y. 2017).  There, the Court concluded that the warrant was facially deficient because it provided no information at all as to the crimes being investigated — it did not create any more exacting standard than simple identification of the offenses.  *Id*.

[53]

   Dkt 44-2 at 55-61; Dkt 44-3 at 55-62.

the La Madre residence . . . would be evidence of its occupancy or ownership and therefore subject to seizure."[54]   Yet defendant fails to mention that the La Madre warrant specifies evidence of occupancy or ownership "*by Richard Zeitlin*,"[55] which presumably would exclude generic items of occupancy by others known or unknown from seizure — such as grass seed in the garage or a quart of milk in the fridge[56] — and require that any evidence of occupancy be tied specifically to defendant.  Further to that point, defendant's brief repeatedly omits the descriptive lists that instruct executing officers on what sorts of evidence fit appropriately into each authorized bucket.[57]   For example, in the provisions authorizing seizure of evidence of occupancy or ownership, the "various specified items" that defendant leaves out include targeted items like "utility and telephone bills," "addressed correspondence," and "identification documents," all of which add particularity to the warrants.[58]   And in the paragraph authorizing seizure of materials related to call center clients, defendant omits phrasing that specifies the particular types of clients that are most of interest — that is, "political action committees ("PACs") and charities, and their owners, treasurers, boards, and employees."[59]

---

[54]    Dkt 43 (Def. Mot.) at 18.

[55]    Dkt 44-3 at 60.

[56]    *See* Dkt 72 (Hearing Tr.) at 36:20-37:25.

[57]    Dkt 43 (Def. Mot.) at 17.

[58]    Dkt 44-2 at 59; Dkt 44-3 at 60.

[59]    *Id*.

14

Even with defendant's mischaracterizations and omissions, however, the evidentiary categories specified in the warrants do not constitute the sort of unspecific, catch-all licenses that violate the Fourth Amendment. Courts must take into account the nature of the alleged wrongdoing and the complexity of the alleged crimes and evidence when evaluating particularity.[60]  And here, the allegations of fraud are particularly wide-ranging, with evidence of wrongdoing likely touching numerous aspects of defendant's business, employees, personal life, and property. Moreover, the charges against defendant include allegations that he obstructed the government's investigation into his conduct, which certainly would make any search for evidence of criminality significantly more difficult and justify collection of a broader array of evidence. And in any event, it would be natural for any search pertaining to extensive criminal activity to involve "the exposure of records that are not the objects of the search to at least superficial examination in order to identify and seize those records that are,"[61] particularly where, as is the case here, relevant evidence will not be separated out neatly for agents to find easily. Given defendant's extensive business activity and use of personal communications, it is unrealistic for him to expect the warrants to "separate evidence of legal [conduct] from evidence of illegal [conduct]" or to specify the exact documents or devices that the

---

[60]

See, e.g., United States v. Regan, 706 F. Supp. 1102, 1113 (S.D.N.Y. 1989) ("The degree to which a warrant must state its terms with particularity varies inversely with complexity of the criminal activity investigated."); United States v. Gotti, 42 F. Supp. 2d 252, 274 (S.D.N.Y. 1999) ("[W]here a particularly complex scheme is alleged to exist, it may be appropriate to use more generic terms to describe what is to be seized."); United States v. Scully, 108 F. Supp. 3d 59, 90 (E.D.N.Y. 2015). Cf. United States v. George, 975 F.2d 72, 76 (2d Cir. 1992) ("[W]e have upheld warrants authorizing the seizure of 'evidence,' 'instrumentalities' or generic classes of items where a more precise description was not possible in the circumstances").

[61]

Ulbricht, 858 F.3d at 100.

officers were allowed to seize.[62]  Thus, in all the circumstances, the warrants were reasonably tailored to authorize seizure of evidence related to the crimes charged without sweeping in more than is necessary.[63]

Finally, defense counsel contends — principally at oral argument — that the "all records" exception to the particularity requirement cannot apply here, as the government concedes that aspects of defendant's business were legitimate and does not prove sufficiently that the business was permeated with fraud.[64]  While the Court need not reach the issue to find that the warrants were adequately particular, defendant in principle  likely is correct — most courts that have considered the issue have required a "substantial" showing that an entire operation was pervaded with fraud, particularly with regards to residential warrants.[65]  However, it is worth noting that defense counsel admitted, unprompted and apparently without recognition of its significance, that "there's no particular reason to think that [the fraudulent call center] records would be isolated from other business records."[66]  In other words, defense counsel articulates the essence of the challenge with the

---

[62]

       *Regan*, 706 F. Supp. at 1113-14; *see also Gotti*, 42 F. Supp. 2d at 274.

[63]

       Like defendant's argument about the identification of offenses, his contention that the warrants were insufficiently particular for failing to list specific victims, witnesses, investigation subjects, and time limitations has no basis in law.  *See* Dkt 50 (Gov. Opp.) at 48; *Gotti*, 42 F. Supp. 2d at 274 ("Nor . . . is the warrant defective because it contained no time limitations.").

[64]

       *See* Dkt 72 (Hearing Tr.) at 27:17-28:4; Dkt 43 (Def. Mot.) at 19.

[65]

       *See, e.g.*, *Wey*, 256 F.Supp.3d at 389; *United States v. Zemlyansky*, 945 F. Supp. 2d 438, 460-61 (S.D.N.Y. 2013); *United States v. Hickey*, 16 F. Supp. 2d 223, 240 (E.D.N.Y. 1998). *But see United States v. D'Amico*, 734 F. Supp. 2d 321, 360-61 (S.D.N.Y. 2010).

[66]

       Dkt 72 (Hearing Tr.) at 31:3-6.

particularity requirement: that "a greater degree of ambiguity" in a warrant is reasonable when evidence of criminality is of a sort that will not be separated out neatly from legitimate business or personal activity.[67]  While this does not bring the warrants at issue within the all-records exception, it is illustrative of the attention needed to the specific circumstances of each case, as well as of the need for greater flexibility in a warrant's authorizations, as the complexity of crimes and evidence increases.[68]

> Accordingly, defendant has not shown that either of the two search warrants violated the particularity requirement of the Fourth Amendment.

*3.      Overbreadth*

> A search warrant "is defective if it is broader than can be justified by the probable cause upon which the warrant is based."[69]  Defendant here claims that the two search warrants were overbroad because they authorized seizure of evidence beyond the scope of the criminality alleged

---

67

> *Young*, 745 F.2d at 759.
>
> For example, defendant complains that the warrants authorize seizure of "[m]aterials, including documents, records, and communications, concerning potential, former, and current clients of call centers associated with and/or operated by [defendant]." Dkt 43 (Def. Mot.) at 17.  Yet when evidence of fraud and criminality pertaining to client victims are muddled together with a defendant's "legitimate" business records, executing officers will need to sift through such information in order to fully understand the scope and extent of the fraud.  Such investigation is both expected and proper.  *Ulbricht*, 858 F.3d at 100.

68

> *See supra* note 60.

69

> *Galpin*, 720 F.3d at 446 (internal citation and quotation marks omitted); *see also United States v. Lustyik*, 57 F. Supp. 3d 213, 228 (S.D.N.Y. 2014) (quoting *Galpin*, 720 F.3d at 446)*; United States v. Tontisabo*, No. 21-cr-701, 2023 WL 411622, at *3 (S.D.N.Y. Jan. 25, 2023) (quoting *Galpin*, 720 F.3d at 446).

17

in this matter.[70]

At the outset, many of defendant's specific examples of claimed overbreadth really go instead to particularity, a requirement that the Court already has found was satisfied here.  For example, defendant contends again that the warrants' lack of temporal limitations or more specific statutory allegations renders them invalid.[71]  As discussed above, however, such contentions have no basis in law.  Regardless, there was sufficient probable cause to seize evidence of defendant's general telemarketing wire fraud, even from outside the Indictment's time horizon, as such evidence — including corporate creation documents, communications with and representations to clients, and evidence of motive, opportunity, intent, etc. — is relevant to any investigation of the alleged offenses.

Defendant's overbreadth arguments with respect to the seizure of electronic devices similarly fail.  The warrants did not "authorize[] the seizure of *any* electronic device found on the premises," as defendant claims.[72]  They were targeted specifically to devices that were used by defendant or his employees "in connection with the call centers" or that were associated with defendant's phone number and email address, for which evidence of criminality already existed.[73]  There was probable cause to believe that a device with these connections likely contained evidence of criminality, and thus the warrants were not overbroad.  And defendant's complaint that it was

---

[70]     Dkt 43 (Def. Mot.) at 20.

[71]     *Id*.

[72]     *Id*. at 21 (emphasis added).

[73]     Dkt 44-2 at 61; Dkt 44-3 at 62.

unrealistic for executing officers to make such distinctions among devices misses the point — again, any search of such complexity naturally will involve "the exposure of records that are not the objects of the search to at least superficial examination in order to identify and seize those records that are,"[74] yet such a necessity does not make a warrant overbroad.

In sum, all of the categories of evidence delineated in the warrants are rationally related to the underlying crimes upon which the warrants are based, and thus there is probable cause sufficient to authorize their seizure. Accordingly, defendant's overbreadth arguments fail.

### 4.    *Good Faith Exception*

Even if the search warrants were defective in some manner, which they are not, suppression would not be warranted because the law enforcement officers relied in good faith on the validity of the warrants. Evidence seized pursuant to a deficient warrant is admissible under the good faith exception unless "a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization."[75] In other words, exclusion of such evidence "has always been [the] last resort."[76]

The Supreme Court has articulated four circumstances in which the good faith exception does not apply and seized evidence must be excluded:

"(1) [W]here the issuing magistrate has been knowingly misled; (2) where the issuing

---

[74]
  *Ulbricht*, 858 F.3d at 100.

[75]
  *United States v. Leon*, 468 U.S. 897, 923 n.23 (1984).

[76]
  *United States v. Rosa*, 626 F.3d 56, 64 (2d Cir. 2010) (internal quotation marks omitted) (quoting *Herring v. United States*, 555 U.S. 135, 140 (2009)).

magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable."[77]

Notably, defendant provides no evidence or argument that any officer knowingly misled Magistrate Judge Ferenbach or that the magistrate judge "wholly abandoned" his judicial role, nor would any such argument be reasonable. And, contrary to his assertions, the search warrants were not "so facially deficient" or "so lacking in indicia of probable cause as to render reliance upon [them] unreasonable."[78] Indeed, not only have two federal judges now found the warrants to have been entirely sufficient,[79] but as detailed above, any careful and discerning officer would have seen that the warrants contained numerous specific facts tailoring the agents' search to evidence related to the particular offenses charged and premises searched. Defendant's arguments that reliance on the search warrants was unreasonable are simply rehashings of the same arguments he makes for why they were overbroad, insufficiently particular, and lacking in probable cause. Yet something more than mere deficiency is needed to justify the "last resort" of exclusion. Thus, the good faith exception to exclusion would apply here even if the warrants somehow were defective — which they are not.

---

[77] *United States v. Moore*, 968 F.2d 216, 222 (2d Cir. 1992) (citing *Leon*, 468 U.S. at 923).

[78] *Id*.

[79] Moreover, an executing officer is entitled to rely on the magistrate judge's determination that a warrant application was sufficient to justify their search — that is, the mere fact that a warrant was issued from a federal judge "normally suffices to establish" that an officer acted in good faith in executing a search. *United States v. Ross*, 456 U.S. 798, 823 n.32 (1982); *see also United States v. Clark*, 638 F.3d 89, 100 (2d Cir. 2011).

### *Conclusion*

For the foregoing reasons, defendant's motion to suppress (Dkt 42) is DENIED.

SO ORDERED.

Dated:      July 15, 2024

Lewis A. Kaplan
United States District Judge