

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

March 7, 2025

**BY ECF AND EMAIL**
The Honorable Lewis A. Kaplan
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

    Re:    <u>United States v. Richard Zeitlin</u>, 23 Cr. 419 (LAK)

Dear Judge Kaplan:

    The Government respectfully withdraws its adjournment request (Dkt. 112) and submits the attached Schedule of Victims, pursuant to the consent restitution order entered by the Court on December 10, 2024, the day the defendant was sentenced. (Dkt. 106 (the "Restitution Order")).

    Restitution in this case is mandatory, and the Court has already entered the Restitution Order, directing the defendant to pay $8,906,706. (*Id.*). Having now been sentenced, the defendant—after pleading guilty pursuant to a plea agreement and signing the Restitution Order—seeks to avoid his restitution obligation by objecting to the Government's Schedule of Victims. (Dkt. 113 (defense letter)). Tellingly, the defendant lodged his objection by email before even reviewing the Schedule of Victims, declined the Government's offer to explain the sources of information underlying the document, and even objected to an adjournment that would address his complaints. (*Id.*).

    In light of the defendant's opposition to an adjournment, and for the reasons set forth below, the Government respectfully requests that the Court accept the Government's Schedule of Victims, pursuant—and as an attachment—to the Restitution Order.[1]

---

[1] The Government respectfully submits three copies of the Schedule of Victims to the Court in excel format. The Government requests the following designations for the attached files, which are marked accordingly, in order to protect the privacy of the victims: (1) a redacted and publicly filed copy, which does not include any victim names or addresses, but includes amounts to be distributed to victims; (2) a redacted and sealed copy, which includes victim names, but does not include victim addresses; and (3) a full sealed copy, which includes victim names and addresses, which must remain in the possession of defense counsel (*i.e.*, attorneys' possession only) and not be distributed by email or otherwise to the defendant. Because the defendant committed a sprawling telemarketing fraud scheme, in order to protect the victims in this case, the Government requests that the defendant be prohibited from possessing a copy of the full sealed copy of the Schedule of Victims.

**Background**

For approximately 30 years, beginning in or about 1994, the defendant owned and operated a telemarketing call center business, which he used to orchestrate a years-long scheme to defraud thousands of victims of millions of dollars through false and misleading fundraising calls. (PSR ¶¶ 12, 16).[2] To conceal his massive fraud scheme and obstruct justice, the defendant created various business entities, communicated principally through phone calls and encrypted messaging applications, exploited his employees, directed his staff to destroy evidence, and lied over and over again, including while under oath, to government agencies, and to federal courts.

On August 15, 2023, Indictment 23 Cr. 419 (LAK) (the "Indictment") was unsealed, charging the defendant with (1) telemarketing wire fraud conspiracy, in violation of 18 U.S.C. §§ 1349 and 2326; (2) telemarketing wire fraud, in violation of 18 U.S.C. §§ 1343, 2326, and 2; (3) conspiracy to obstruct justice, in violation of 18 U.S.C. §§ 1512(c) and (k); and (4) obstruction of justice, in violation of §§ 1512(c) and 2. (Dkt. 1).

On September 10, 2024, the defendant pleaded guilty to Count One of the Indictment, pursuant to a plea agreement dated September 6, 2024. In the plea agreement, the parties agreed, among other things, that the offense involved a loss of approximately $8,906,760.00, and it warranted various enhancements under the U.S. Sentencing Guidelines ("U.S.S.G." or the "Guidelines"). (PSR ¶ 8). The parties agreed that the defendant's offense level was 32 and stipulated to an applicable Guidelines range of 121 to 151 months' imprisonment. (*Id.* ¶¶ 8(k)). The defendant agreed to pay forfeiture in the amount of $8,906,760.00. (*Id.* ¶ 8(n)). The defendant also agreed, as expressly stated in the plea agreement, "to make restitution in an amount up to $8,906,760.00 as determined by the Government and as ordered by the Court, in accordance with 18 U.S.C. § 3663A." (*Id.* ¶ 8(o)).

On December 10, 2024, the Court sentenced the defendant to a term of 121 months' imprisonment to be followed by a term of five years of supervised release. (Dkt. 107). The Court also entered the Restitution Order, which was signed by the Government, the defendant, and defense counsel. (Dkt. 106). The Restitution Order provides the following, among other things:

> RICHARD ZEITLIN, the defendant, shall pay restitution in the total amount of $8,906,760.00, pursuant to 18 U.S.C. § 3663A, to the victims of the offense charged in Count One. The names, addresses, and specific amounts owed to each victim, as set forth in a Schedule of Victims, shall [be] submitted to the Court by the United States Attorney's Office within 90 days of the defendant's sentencing.

(*Id.* ¶ 1). As to sealing, the Restitution Order provides as follows:

> Consistent with 18 U.S.C. §§ 3771(a)(8) & 3664(d)(4), and Federal Rule of Criminal Procedure 49.1, to protect the privacy interests of victim(s), the forthcoming Schedule of Victims, which shall be attached hereto as Schedule A,

---

[2] The defendant's offense conduct is described in detail in the Presentence Investigation Report ("PSR" (Dkt. 110)) and in the Government's sentencing submission (Dkt. 104), and is not repeated fully here.

> shall be filed under seal, except that copies may be retained and used by or disclosed to the listed victims, the Government, the investigating agency, the Clerk's Office, and the Probation Office, as needed to effect and enforce this Order, without further order of this Court.

(*Id.* ¶ 6).  At sentencing, the defendant did not object to the Restitution Order, which he signed, or to the Government's provision of the Schedule of Victims to the Court within 90 days of sentencing.

### The Schedule of Victims

Restitution is mandatory in this case under the Mandatory Victims' Restitution Act ("MVRA"), 18 U.S.C. § 3773A.  The restitution amount to be paid by the defendant has already been agreed upon and ordered by the Court. (Dkt. 106).  As set forth in the Restitution Order, the Government now submits the Schedule of Victims.[3]

In identifying victims entitled to restitution, the Court is permitted to distinguish victims based on the losses or harm they incurred.  *See, e.g.*, 18 U.S.C. § 3664(i) ("If the court finds that more than 1 victim has sustained a loss requiring restitution by a defendant, the court may provide for a different payment schedule for each victim based on the type and amount of each victim's loss and accounting for the economic circumstances of each victim.").  For practical purposes, the Court is also permitted to assign restitution payments to the Crime Victim's Fund ("CVF"),[4] which was established by the Victims of Crime Act of 1984, and is managed by the U.S. Department of Justice's Office for Victims of Crime.  *See United States v. Johnson*, 378 F.3d 230, 245 (2d Cir. 2004 ("[Section] 3664(g)(2) authorizes victims to assign restitution to the Crime Victim's Fund," and "does not preclude the Court from [also] doing so.").  Citing the mandatory nature of restitution, the Circuit held that such assignment is "consistent with [its] long-held understanding of the purposes of restitution, which include not only the compensation of victims, but also the punishment of offenders."  *Id.* at 244-45; *see also United States v. Hankins*, 858 F.3d 1273, 1278-79 (9th Cir. 2017) (citing *Johnson* and holding that courts "ha[ve] the flexibility under the MVRA" to "redirect[] payments to the [CVF]"); *United States v. Hamburger*, 414 F. Supp. 2d 219, 225-26 (E.D.N.Y. 2006) (reassigning unclaimed restitution interests to the CVF and highlighting the practical benefits of doing so); *United States v. Kerzhner*, No. 00 Cr. 1197, 2007 WL 29393, at *1-2 (E.D.N.Y. Jan. 4, 2007) (denying defendant's request to modify the restitution judgment because "[o]nce a district court has sentenced a defendant, it may not re-sentence [that] defendant," and directing restitution payments to the CVF).

In this case, the defendant defrauded thousands upon thousands of victims.  Many of these victims made "small-dollar donations," or donations of $5, $30, $50, or $100 (Dkt. 104 at 23), and many of the victims made larger donations either through one or many payments.  The Government

---

[3] The defendant appears to have the mistaken view that if he objects to the Schedule of Victims, he will not have to pay restitution.  Instead, it is the Government's understanding that the defendant must still pay restitution, but the payments will remain with the Clerk's Office without a Schedule of Victims.

[4] *See* https://ovc.ojp.gov/about/crime-victims-fund.

3

has divided the victims of the defendant's telemarketing fraud into three categories: (1) victims who suffered aggregate losses of $200 or more; (2) victims who contacted the Federal Bureau of Investigation or the Government seeking restitution;[5] and (3) victims who suffered losses of less than $200.

For victims falling into the first category, the Schedule of Victims lists their names, addresses, and the amount of restitution owed to each victim.  The Schedule of Victims is based on Federal Election Commission ("FEC") filings of certain of the political action committees ("PACs") through which the defendant carried out his telemarketing fraud.[6]  These publicly available FEC filings list the names and addresses of victims who made aggregate donations exceeding $200, and the Government understands that the donation information contained therein was submitted by each respective PAC and originated from the defendant's telemarketing entities.[7]

The Government has not identified any victims that fall into the second category.

For victims falling into the third category, the Schedule of Victims directs restitution payments to the CVF.  Such assignment is appropriate here because it is impracticable for the Clerk's Office to administer and disburse restitution to a large class of victims with relatively minimal losses, and such administration may delay the receipt of restitution by victims who have suffered larger losses.  More specifically, the Government understands that when there is a very large class of victims and the Government has not seized any of the defendant's assets, the Clerk's Office typically retains a defendant's restitution payments until they reach a certain amount, at which time the Clerk's Office begins disbursing a percentage of the restitution collected to each victim—or, in cases where the Clerk's Office cannot administer restitution disbursements because of the massive number of victims, it will assign an administrator to do so, and the costs of administration may be deducted from the restitution collected.  The Schedule of Victims, which currently includes 3,740 victims, seeks to increase the likelihood that victims who have incurred the greatest aggregate loss (approximately $200 to $6,074) will receive restitution, and also decrease the potential delay before restitution disbursements to victims begin.  As set forth in the Schedule of Victims, distribution to the CVF would occur only after victims with losses greater than $200 are fully compensated.

---

[5] On or about August 15, 2023, the date of the defendant's arrest, the Government issued a press release describing the allegations against the defendant and created a webpage that provided updates regarding the case's proceedings and contact information for victims and members of the public.  See https://www.justice.gov/usao-sdny/united-states-v-richard-zeitlin.

[6] The PACs are as follows: Americans For Police And Trooper Safety; Americans For The Cure Of Breast Cancer; Association For Emergency Responders And Firefighters; Autism Hear Us Now; Children's Leukemia Support Network; Cops And Kids Together; Firefighters Alliance Of America; Heart Disease Network Of America; Police Officers Defense Alliance; Standing By Veterans; Support Our Police; United American Veterans; United Veterans Alliance Of America; and US Veterans Assistance Foundation.

[7] See https://www.fec.gov/data/receipts/?data_type=processed.

Given the facts of this case—including the thousands upon thousands of victims defrauded by the defendant, the relatively small losses incurred by many of the victims (*i.e.*, $5 to $200), the comparatively larger aggregate losses incurred by other victims (*i.e*, $200 to $6,074), the low probability that the defendant will begin to make substantial restitution payments while in prison, the significant amount of time it will take before enough restitution will be collected, if at all, so that restitution can begin to be disbursed, the absence of victims who have suffered relatively small losses and have come forward to request restitution, the age of certain victims, and the administration costs of disbursing restitution, among other considerations—the Government respectfully submits that the Schedule of Victims is reasonable and appropriate here.

### The Defendant's Objection to the Schedule of Victims and to An Adjournment

The defense objected to the Schedule of Victims by email before reviewing it and declined the Government's offer to explain the sourcing for the Schedule of Victims, which includes publicly available FEC filings, as well as information the parties discussed in reaching the agreed-upon restitution amount. The defense also argues that the defendant is not in a position to review the Schedule of Victims because he is being transported to his designated Bureau of Prisons ("BOP") facility.[8] The defense references the defendant's "current unavailability," but fails to indicate whether the defense has attempted to contact the defendant at his current facility.

The defense's objections ring hollow because they can easily be addressed through an adjournment, which the Government requested and the defendant opposed. The adjournment would have afforded the defendant additional time to review the Schedule of Victims.

### Conclusion

The Government respectfully requests that the Court adopt the attached Schedule of Victims to the Restitution Order.

Respectfully submitted,

MATTHEW PODOLSKY
Acting United States Attorney

By: /s Jane Kim
Jane Kim / Rebecca Dell / Emily Deininger
Assistant United States Attorneys
(212) 637-2038

cc: Defense Counsel (by ECF and Email)

---

[8] The BOP website indicates that the defendant is currently located at Oklahoma City FTC. The Government asked the defense if the defendant should be produced for Monday's control date/appearance, and the defense waived the defendant's appearance.